# United States District Court
# Southern District of Texas

## Case Number: H-05- 3424

## ATTACHMENT

Description:

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __3__ of _____

☐ Exhibit to: __Vol I - Exh. 4 cont'd__
         number(s) / letter(s) _____

Other: __Petition For Writ of__

__Habeas Corpus__

__— Exhibits in Support of__
__Petition__

As noted above, Appellant was admittedly transported to the police homicide division's interrogation room, without probable cause and without a warrant, in the hope that police could expose Appellant's level of involvement in "either/or the murder or the robbery." ( C.R. 3, pp. 114-115). Appellant was arrested at approximately 11:00 p.m., May 24, 1998 and arrived at the Detective Division (homicide), 601 Lockwood, at 11:52 p.m. (R.R. 3, pp. 76, 116-117). Appellant was questioned until 12:32 a.m., May 25, 1998, and finally assented to provide Miller with an audiotaped confession or statement. The recording of Appellant's statement began at 12:32 a.m. and was completed at 12:52 a.m., May 25, 1998. (R.R. 3, pp. 87, 92). The record is clear that there were no intervening circumstances of any significance to break the connection between Appellant's unlawful arrest and his confession (first audiotaped statement).

The Texas courts have adopted the four-part analysis of Brown v. Illinois, 422 U.S. 590, 604-605, 95 S.Ct. 2254, 2261-2262, 45 L.Ed. 416 (1975), listed above, as a framework for deciding whether a confession was gained by exploitation of the illegal arrest or whether there were sufficient intervening circumstances between the two events to attenuate the connection. See, Bell v. State, 724 S.W.2d 780, 787 fn.3 (Tex. Crim. App. 1986.), Self v. State, 709 S.W.2d 662 (Tex. Crim. App. 1986), Maixner v. State, 753 S.W.2d 151 (Tex. Crim. App. 1988), Stanton v. State, 750 S.W.2d 375 (Tex. App. -Amarillo 1988) opinion on remand.

The State in this case failed to prove that Appellant's first custodial statement had been purged of the taint of Appellant's arrest. The Courts in Taylor v. Alabama, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed2d 314 (1982) and Green v. State, 615 S.W.2d 700 (Tex. Crim. App. 1980) cert. denied, 102 S.Ct. 490 (1981), placed this burden upon the State.

Applying the Brown analysis to Appellant's case, there were no intervening circumstances of any significance to break the connection between Appellant's unlawful arrest and his confession (first audiotaped statement). As noted by the Court in Bell, 724 S.W.2d at 789, citing Taylor v. Alabama, supra, the giving of repeated Miranda warnings, **alone**, which are almost always routinely given, are not enough to purge the taint of an otherwise illegal arrest.

The second element, the temporal proximity of the arrest and Appellant's first custodial confession, within one and a half hours of arrest, however, in the instant case, is also not enough to purge the taint of Appellant's otherwise illegal arrest. Bell, supra, Brown v. Illinois, supra, Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248 (1979), Taylor v. Alabama, supra.

With regard to the third factor, intervening circumstances, in this case there were no events intervening between Appellant's arrest and the making of his audiotaped confession. Intervening circumstances would have included termination of illegal custody, consultation with counsel, a volunteered statement not made in response to police interrogation, an appearance before a

29

magistrate. See, <u>Bell v. State</u>, 724 S.W.2d at 789, fn.5. In this case, there was certainly no appearance before a magistrate to break the causal connection between Appellant's unlawful arrest and confession.

The fourth factor, police conduct, is one of the most important factors in the <u>Brown</u> analysis. As noted by the Court in <u>Bell</u>: "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." <u>Id</u>. (quoting <u>Michigan v. Tucker</u>, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974)). Thus, this Court held that the clearest indications of attenuation should be required where the police conduct is the most flagrantly abusive, including "an arrest, effectuated as a pretext for collateral objectives." <u>Bell</u>, 724 S.W.2d at 791.

In Appellant's case, the detective's conduct, undertaken with the knowledge that there was insufficient probable cause to arrest Appellant, and in the absence of any statutory exception, was purposeful. As stated: "it was my opinion that this defendant ... very well **could have been involved** in the murder of Sergeant Kincaid." (R.R. 3, p. 73).

Miller intended from the start not to get a warrant and never tried to do so. Additionally, he chose not to take Appellant before a magistrate to receive the proper admonishments and Miranda warnings because "he wanted to investigate Appellant's level of involvement in 'either/or a murder or

30

robbery'." (C.R. 3, pp. 114-115). Miller's actions (as those of the other arresting officers) were flagrant because as Texas peace officers, they knew they needed probable cause to arrest and they knew that they needed a warrant. Appellant's illegal arrest in this case had a quality of purposefulness that this Court and the Supreme Court have condemned.

In the instant case, every one of the four factors above, militates in favor of excluding Appellant's first audiotaped statement or confession. Bell, supra, Brown v. Illinois, supra, Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248 (1979), Taylor v. Alabama, supra. Under any reading of the caselaw, the State did not meet its burden of proving that the taint of Appellant's illegal arrest did not affect his confession. The immediate fruit of Appellant's arrest - his audiotaped custodial confession - was tainted and should not have been admitted into evidence at trial. The trial court resolved the issue of the legality of Appellant's arrest against Appellant. (R.R. 3, p. 144). As trier of fact, the trial court was entitled to believe or disbelieve any or all of the testimony and evidence. Daniels v. State, 718 S.W.2d 702, 704 (Tex. Crim. App. 1986); Walker v. State, 588 S.W.2d 920, 924 (Tex. Crim. App. 1979).

However, this Court is under a duty to independently weigh the officer's actions and inferences for itself and to draw its own conclusions regarding the existence of probable cause. Johnson v. State, 722 S.W.2d 417 (Tex. Crim. App. 1986). Stated differently, the determination of whether an arrest or search and

31

seizure is reasonable under the Fourth Amendment is an issue of law, to be reviewed de novo by the appellate court. <u>Higbie v. State</u>, 780 S.W.2d 228 (Tex. Crim. App. 1989).

As noted above, Appellant filed two pretrial motions asking the trial court to conduct a hearing and suppress all evidence tainted by Appellant's illegal warrantless arrest, including Appellant's first (and second) audiotaped custodial statements or confessions. (C.R.I, pp. 131, 169). After a full and complete hearing on August 16, 1999, the trial court denied the motions. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144).  Appellant renewed his objections at trial, and was again overruled. (R.R. 25, p. 200). Thereafter, Appellant's first audiotaped custodial statement was introduced at trial. (R.R. 25, p. 200). Appellant has properly preserved this error for appeal. TEX. CODE CRIM. PROC. ANN. art. 28.01 (V.A.C.C.P.); TEX. R. EVID. 103(a)(1) and 103(a)(2); TEX. R. APP. 33.1(a); <u>Moraguez v. State</u>, 701 S.W.2d 902 (Tex. Crim. App. 1986); <u>Riojas v. State</u>, 530 S.W.2d 298 (Tex. Crim. App. 1975); <u>Bosley v. State</u>, 414 S.W.2d 468 (Tex. Crim. App. 1967).

Appellant complains of constitutional error subject to harmless error review.  This Court must reverse Appellant's judgment of conviction unless the error can be characterized as harmless beyond a reasonable doubt. TEX. R. APP. P. ANN.. 44.2(a) (Vernon Pamph. 2000); <u>Chapman v. California</u>, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); <u>Turner v. State</u>, 754 S.W.2d 668 (Tex. Crim. App. 1988).

32

The State introduced Appellant's first custodial audiotaped statement at trial. Appellant's audiotaped statements were necessary in order to secure his conviction where the complainant's wife never identified Appellant as the same person who had shot the complainant on May 22, 1998. Instead, Kincaid admitted in open court only that Appellant resembled the composite sketch prepared by the police in this case. (R.R. 23, pp. 129, 132). Similarly, Appellant's taped statements also assisted the State during the punishment phase of trial as Appellant admitted his involvement in three other robbery offenses. (R.R. 28, p. 8).

The Court cannot find, beyond a reasonable doubt, that the introduction of this confession did not contribute to the finding of Appellant's guilt or assessment of the death penalty. <u>Clark v. State</u>, 726 S.W.2d 120 (Tex. Crim. App. 1987).

Based upon the foregoing authorities, Appellant has established the illegality of his arrest and the violation in admitting the fruit of that illegality. The State has not shown that Appellant's confession, the first audiotaped custodial statement, (S.X. 52A), was not the product of his illegal arrest. Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

POINT OF ERROR FIVE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL STATEMENT OBTAINED WHILE APPELLANT WAS UNLAWFULLY ARRESTED, IN VIOLATION OF U.S. CONSTITUTION, AMENDMENTS FOUR AND FOURTEEN.

POINT OF ERROR SIX (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT OBTAINED WHILE APPELLANT WAS UNLAWFULLY ARRESTED, IN
VIOLATION OF TEXAS CONSTITUTION, ART. I, SEC. 9.

POINT OF ERROR SEVEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT OBTAINED WHILE APPELLANT WAS UNLAWFULLY ARRESTED, IN
VIOLATION OF TEXAS STATUTORY LAW, CHAPTER 14, V.A.C.C.P.

POINT OF ERROR EIGHT (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT OBTAINED WHILE APPELLANT WAS UNLAWFULLY ARRESTED, IN
VIOLATION OF TEXAS STATUTORY LAW, ARTICLE 38.23, V.A.C.C.P.

STATEMENT OF FACTS

As noted in the Statement of Facts, Points of Error One

through Four, (Restated), above, Appellant filed two pretrial

motions asking the trial court to conduct a hearing and suppress

all evidence obtained as a result of Appellant's warrantless

arrest, including his first and second audiotaped custodial

statements or confessions. (C.R.I, pp. 131-134, 169).

A hearing of these motions was conducted on August 16, 1999.

(C.R. III, pp. 547-548; R.R. 3, pp. 65, 68). Following the

hearing on these suppression requests, the trial court denied the

motions. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144).

**Todd William Miller,** testified that after he had recorded

Appellant's (first audiotaped) statement, Appellant was taken

before a magistrate whereupon he received further Miranda

warnings. (R.R. 26, p. 23). Thereafter, Appellant was returned to

601 Lockwood.

34

After additional questioning by Miller, Appellant confessed that he had left out some details in his first audiotaped custodial statement. (R.R. 3, p. 91). Appellant provided a second audiotaped statement.

Miller began to record this second statement at 1:50 a.m., May 25, 1998, within one hour after completing Appellant's first audiotaped custodial statement. (R.R. 3, p. 91; R.R. 26, p. 27). Miller identified State's Exhibit No. No. 2H as Appellant's second audiotaped custodial statement. (R.R. 3, p. 92). (See also, State's Exhibit No. 54A (S.X. 54A) (R.R. 26, p. 27).

As noted above, the trial court denied Appellant's motions to suppress. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144). Appellant renewed his objections at trial, and was again overruled. (R.R. 25, p. 200). Thereafter, Appellant's second audiotaped custodial statement was introduced at trial. (R.R. 26, p. 27). Appellant has properly preserved this error for appeal. TEX. CODE CRIM. PROC. ANN. art. 28.01 (V.A.C.C.P.); TEX. R. EVID. 103(a)(1) and 103(a)(2); TEX. R. APP. 33.1(a); <u>Moraguez v. State</u>, 701 S.W.2d 902 (Tex. Crim. App. 1986); <u>Riojas v. State</u>, 530 S.W.2d 298 (Tex. Crim. App. 1975); <u>Bosley v. State</u>, 414 S.W.2d 468 (Tex. Crim. App. 1967).

<u>ARGUMENT AND AUTHORITIES</u>

Appellant directs the Court to the issues and arguments presented in Points of Error, One through Four, above, and incorporates the arguments by reference herein. Appellant briefs these issues separately to avoid any question of

35

multifariousness. TEX. R. APP. 38.1(e) (Vernon Pamph. 2000). See also, Stone v. State, 823 S.W.2d 375, 377 (Tex. App.-Austin 1992, pet. ref'd.) (legal and factual sufficiency of the evidence in a criminal case should be briefed in different points of error). See also, Heitman v. State, 815 S.W.2d 681, 690 n.23 (Tex. Crim. App. 1991) (federal and state constitutional search and seizure issues should be briefed in different points of error)).

The trial court committed reversible error in failing to grant Appellant's motion to suppress his second audiotaped custodial statement, (State's Exhibit No. 2H, State's Exhibit No. 54A), as it was obtained as a result of Appellant's unlawful and warrantless arrest, in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sec. 9 of the Texas Constitution. Dunaway v. New York, supra; Wong Sun v. United States, supra.

The trial court committed reversible error in failing to grant Appellant's motion to suppress his second audiotaped custodial statement as it was obtained as a result of Appellant's unlawful and warrantless arrest, in violation of TEX. CODE CRIM. PROC. ANN.. Chapter 14, arts. 14.01, 14.02, 14.03, 14.04, 14.06 (V.A.C.C.P.)

Further, the trial court committed reversible error in failing to grant Appellant's motion to suppress his second audiotaped custodial statement, as it too was the tainted fruit of his initial unlawful arrest, derived directly from Appellant's unlawful arrest. See, TEX. CODE CRIM. PROC. ANN. art. 38.23(a)

(V.A.C.C.P.).

Additionally, the trial court committed reversible error in failing to grant Appellant's motion to suppress his second audiotaped custodial statement, as the State in this case failed to prove that Appellant's second custodial statement had been purged of the taint of his initial unlawful arrest. Taylor v. Alabama, supra, 457 U.S. 687; Green v. State, supra, 615 S.W.2d at 700.

Appellant complains of constitutional error subject to harmless error review. This Court must reverse Appellant's judgment of conviction unless the error can be characterized as harmless beyond a reasonable doubt. TEX. R. APP. P. ANN.. 44.2(a) (Vernon Pamph. 2000); Chapman v. California, 386 U.S. 18; Turner v. State, 754 S.W.2d 668.

The State introduced Appellant's second custodial audiotaped statement at trial. Appellant's audiotaped statements were necessary in order to secure his conviction where the complainant's wife never identified Appellant as the same person who had shot the complainant on May 22, 1998. Instead, Kincaid admitted in open court only that Appellant resembled the composite sketch prepared by the police in this case. (R.R. 23, pp. 129, 132). Similarly, Appellant's taped statements also assisted the State during the punishment phase of trial as Appellant admitted his involvement in three other robbery offenses. (R.R. 28, p. 8).

The Court cannot find, beyond a reasonable doubt, that the

37

introduction of Appellant's second custodial statement or confession did not contribute to the finding of Appellant's guilt or assessment of the death penalty. <u>Clark v. State</u>, 726 S.W.2d 120.

For all the reasons urged in Appellant's Points of Error One through Four, above, and based upon the foregoing authorities, Appellant has established the illegality of his arrest and the violation in admitting the fruits of that illegality. The State has not shown that Appellant's confession, the second audiotaped custodial statement, (S.X. 54A), was not the product of his illegal arrest. Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

### POINT OF ERROR NINE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, U.S. CONSTITUTION, AMENDMENTS FIVE AND FOURTEEN.

### POINT OF ERROR TEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S STATE CONSTITUTIONAL RIGHTS, ART. I., SEC. 10.

### POINT OF ERROR ELEVEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S STATE CONSTITUTIONAL RIGHTS TO DUE COURSE OF LAW, ART. I., SEC. 19.

### POINT OF ERROR TWELVE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT

APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF Tex. Code Crim.
Proc. Ann. art. 38.21 (V.A.C.C.P.).

### POINT OF ERROR THIRTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF Tex. Code Crim.
Proc. Ann. art. 38.23 (V.A.C.C.P.).

### POINT OF ERROR FOURTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS FIRST AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF Tex. Code Crim.
Proc. Ann. art. 14.06 (V.A.C.C.P.).

STATEMENT OF FACTS (POINTS OF ERROR NINE THROUGH FOURTEEN):

As noted in the Statement of Facts (Points of Error One
Through Four (Restated), above, a hearing of Appellant's Motions
to Suppress was conducted pretrial on August 16, 1999. (C.R. III,
pp. 547-548; R.R. 3, pp. 65, 68). Following the hearing on these
suppression requests, the trial court denied the motions found
that Appellant's statements were voluntary. (C.R. I, pp. 169-173;
R.R. 3, pp. 143-144). Appellant renewed his objections at trial
and was again overruled. (R.R. 25, p. 200). Thereafter,
Appellant's first audiotaped custodial statement was admitted and
published to the jury. (R.R. 25, p. 200).

**Todd William Miller,** testified that upon the
police-initiated traffic stop on May 24, 1998, at 11:00 p.m.,
Appellant was immediately handcuffed and arrested, placed in a
police vehicle, and transported to the Harris County Sheriff's
Department's homicide headquarters, located at 601 Lockwood.
(R.R. 3, pp. 70, 83, 85, 106). Appellant's vehicle was impounded

39

and towed away. (R.R. 3, p.111).  Miller and Appellant,

handcuffed, arrived in the homicide offices, Detective Division,

601 Lockwood, at 11:52 p.m. (R.R. 3, pp. 76, 116-117).

Miller noted that prior to escorting Appellant into the

homicide offices, he chose **not** to take Appellant before a

magistrate to receive the proper admonishments and Miranda

warnings because he wanted to investigate Appellant's level of

involvement in "either/or the murder or the robbery." (C.R. 3,

pp. 114-115). Miller asserted that upon arrival at homicide's

headquarters, Appellant was escorted to an interview room. (R.R.

3, p. 77).  Miller gave Appellant Miranda warnings, and informed

him that he was a suspect in both a robbery and the death of

Officer Kincaid. (R.R. 3 pp. 78, 84). Appellant initially denied

any involvement in a robbery or a shooting of a police officer.

(R.R. 3, p. 84).

Miller noted that Appellant became very nervous when he

subsequently informed him that Reese, also arrested and

interrogated in a separate room, had implicated Appellant in the

underlying offense. (R.R. 3, p. 84). When Miller informed

Appellant that other officers were en route to arrest a juvenile

suspect, Michael Tunson, Appellant asked what would happen to him

if he gave a statement. (R.R. 3, p. 85). Miller answered that it

depended upon Appellant's statement. (R.R. 3, p. 85).  Appellant

then asked Miller whether there were any witnesses to the alleged

robbery and shooting death of Kincaid. (R.R. 3, p. 86).  Miller

asserted that there were witnesses and that Appellant would be

40

placed in a lineup for identification. (R.R. 3, p. 86).

Miller testified that at this time, Appellant said: "all right, I'll tell you about it." (R.R. 3, p. 86). Thereafter, Appellant finally agreed to provide a formal statement and assented to the creation of an audiotaped recording. (R.R. 3, p. 87). Miller identified State's Exhibit No. 1H (S.X. 1H) as the recording of Appellant's statement; the process of recording Appellant's first custodial statement began at 12:32 a.m., May 25, 1998 and concluded at 12:52 a.m., May 25, 1998. (R.R. 3, pp. 87-88). At approximately 1:18 a.m., Miller escorted Appellant to 49 San Jacinto in order to receive his magistrate's warnings. (R.R. 3, pp. 88-89).

As noted above, the trial court denied Appellant's Motions to Suppress and found that Appellant's statements were voluntary. (C.R.I, pp. 169-173; R.R. 3, pp. 143-144).

During trial before the jury, Miller denied threatening or coercing Appellant to give a recorded statement (S.X. 52A), (R.R. 25, pp. 191-192, 193-194; R.R. 26, ). Miller, however, noted that Appellant was not paying attention, did not comprehend the admonishments given, and asked him to repeat the warnings prior to the making of his first audiotaped custodial statement. (R.R. 25, pp. 197).

During the trial before the jury, Appellant renewed his earlier objections to the admission of his first custodial statement at trial and was again overruled. (R.R. 25, p. 200). Thereafter, Appellant's first audiotaped custodial statement was

41

admitted and published to the jury. (R.R. 25, p. 200; R.R. 26. pp.20-21).

<u>ARGUMENT AND AUTHORITIES</u> (POINTS OF ERROR NINE THROUGH FOURTEEN):

An accused's custodial statement is inadmissible against him at trial where the statement has been coerced and is the product of an unlawful custodial interrogation. U.S. CONST., Amends. V and XIV.  Stated otherwise, an involuntary statement is inadmissible as a matter of federal constitutional law. <u>Jackson v. Denno</u>, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); <u>Wong Sun v. United States</u>, 371 U.S. at 471.

An involuntary custodial statement is also inadmissible as a matter of state constitutional and statutory law. TEX. CONST. Art. I, §§ 10, 19; TEX. CODE CRIM. PROC. ANN. arts. 38.21 and 38.23 (V.A.C.C.P.). In the instant case, the trial court erred in overruling Appellant's objections to the admissibility of his first audiotaped custodial statement as it was involuntary, in violation of Appellant's federal constitutional rights against coerced self-incrimination and in violation of his rights to due process of law. U.S. CONST., Amends. V and XIV.

Similarly, in the instant case, the trial court erred in overruling Appellant's objections to the admissibility of his first audiotaped custodial statement as it was involuntary, in violation of Appellant's state constitutional rights against coerced self-incrimination, TEX. CONST. Art. I, §10, and in violation of his state constitutional rights to due course of law. TEX. CONST. Art. I, §19.

42

Last, the trial court erred in overruling Appellant's objections to the admissibility of his first audiotaped custodial statement as it was involuntary, in violation of Appellant's statutory rights, TEX. CODE CRIM. PROC. ANN. arts. 14.06, 38.21 and 38.23 (V.A.C.C.P.).

As noted above, the issue of the voluntariness of Appellant's first audiotaped custodial statement was addressed by the court during the pretrial hearing of his motions to suppress evidence, including his first and second audiotaped statements. (R.R. 3, p. 68). Based upon the facts of the hearing, it is clear that Appellant was continuously questioned by Miller from the time of his arrest at 11:00 p.m., May 24, 1998, until 12:32 a.m., on May 25, 1998.

It is clear that Appellant finally assented during the early morning hours of May 25, 1998, to provide Miller with an audiotaped confession or statement. (S.X. 52A). The recording of Appellant's statement began at 12:32 a.m. and was completed at 12:52 a.m., May 25, 1998. (R.R. 3, pp. 87, 92).

Based upon the facts of the hearing, it is clear that Appellant, aged eighteen years of age, did not eat anything during the course or prior to his interrogation, was not offered an opportunity to use the restroom, and was not provided with the opportunity to telephone his father, as requested. (R.R. 26, pp. 12-13). It is clear that Appellant was extremely fatigued (C.R. 26, p.48), had been awake more than twelve hours, yawned throughout the interrogation process, (C.R. 26, p.48), was not

43

paying attention, (R.R. 25, p. 197), and was unable to knowingly and voluntarily waive his rights against self-incrimination.

Additionally, the record reflects that Appellant was deliberately not taken before a magistrate as required, TEX. CODE CRIM. PROC. ANN. arts. 14.06 and 15.17 (V.A.C.C.P.), **prior** to his interrogation and the making of his first audiotaped statement. Miller conceded that prior to escorting Appellant upon his arrest into the interrogation offices of the Sheriff's Department, he chose **not** to take Appellant before a magistrate to receive the proper admonishments and Miranda warnings because **he wanted to investigate Appellant's level of involvement** in "either/or the murder or the robbery." (C.R. 3, pp. 114-115). Miller anticipated Appellant's statement and to this end brought his own tape recording device into the interview room. (R.R. 25, p. 195).[5]

---

[5] **Judge Carol Carrier** testified during the case in chief and told the jury that she gave Appellant his magistrates' warnings pursuant to TEX. CODE CRIM. PROC. ANN. art. 15.17 (V.A.C.C.P.) in the early morning hours of May 25, 1998 at approximately 1:30 a.m. (R.R. 26, pp. 7-8, 16). Carrier stated that at the time that Appellant first appeared before her, the officers who escorted him, Miller and Wedgeworth, had advised her that Appellant had been arrested but had not been formally charged with an offense. (R.R. 26, pp. 9-10).
Carrier agreed that it was statutorily required that "persons making [an] arrest shall without unnecessary delay take a person arrested or have him taken before some magistrate of the county." TEX. CODE CRIM. PROC. ANN. art. 15.17 (V.A.C.C.P.). (R.R. 26, pp. 10-11). Carrier also agreed that it was statutorily required that "the magistrate shall allow the person arrested reasonable time, an opportunity to consult counsel, and shall admit the person arrested to bail is [sic] allowed." TEX. CODE CRIM. PROC. ANN. art. 15.17 (V.A.C.C.P.). (R.R. 26, p. 12).
Carrier asserted that during the course of her admonishing Appellant, aged eighteen, he had repeatedly requested to use a telephone to speak with his father. Carrier told Appellant that

During trial, Judge Carrier verified that Appellant first received his statutory magistrate's warnings at approximately 1:30 a.m., May 25, 1998, (approximately two and a half hours after his warrantless arrest and interrogation). Additionally, Appellant repeatedly requested permission to use a telephone to speak with his father. He was not permitted to do so.

A confession must be suppressed where the arresting officer's conduct is such as to overbear an accused's will to resist and bring about a confession which would not otherwise be freely given. Rogers v. Richmond, 335 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). A reviewing court must examine the totality of the circumstances in determining whether a confession was voluntarily made. Penry v. State, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995). See also, McCoy v. State, 713 S.W.2d 940 (Tex. Crim. App. 1986). In the instant case, Miller's actions were coercive and calculated to overbear Appellant's will to resist the giving of a confession. Miller purposely delayed escorting Appellant before a magistrate, as required, until after Appellant had made his first audiotaped statement in violation of Art. 14.06 (V.A.C.C.P.) (C.R. 3, pp. 114-115; R.R. 26, p.51). Miller repeatedly refused to permit Appellant to telephone his father

---

he could use a telephone only after he had received his statutory warnings. (R.R. 26, p.13). Carrier conceded that there was a telephone available in her courtroom and that it was her understanding that the officers would permit Appellant to use the telephone prior to any additional questioning. (R.R. 26, p. 13). Carrier was not aware that Appellant had previously been questioned for several hours and had provided officers with a statement. (R.R. 26, p.14).

45

(an arson investigator employed by the Houston Fire Department) (R.R. 3, pp. 125-129; R.R. 26, pp. 49-50). Miller took advantage of Appellant's youth, fatigue and inability to understand the Miranda warnings when Appellant made it clear that he did not understand the warnings. (R.R. 25, pp. 197). Miller sabotaged Appellant's ability to exercise free will and resist the giving of a statement. (R.R. 26, pp. 43-44).

Appellant's first audiotaped statement was directly and causally related to Miller's actions in this case. Walker v. State, 842 S.W.2d 301, 303 (Tex. Crim App. 1986) (citing Colorado v. Connelly, 479 U.S. 157, 164, 107 S.Ct. 515, 520, 93 L.Ed.2d 473 (1986)). The record in Appellant's case clearly shows that Appellant's first custodial statement was not the product of his free will.

As noted above, Appellant filed two pretrial motions asking the trial court to conduct a hearing and suppress evidence derived from Appellant's arrest, including Appellant's first (and second) audiotaped custodial statements or confessions. (C.R.I, pp. 131, 169). After a full and complete hearing on August 16, 1999, the trial court denied the motions. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144).

Appellant renewed his objections at trial, and was again overruled. (R.R. 25, p. 200). Thereafter, Appellant's first audiotaped custodial statement was introduced at trial. (R.R. 25, p. 200). Appellant has properly preserved this error for appeal. TEX. CODE CRIM. PROC. ANN. art. 28.01 (V.A.C.C.P.); TEX. R. EVID.

46

103(a)(1) and 103(a)(2); TEX. R. APP. 33.1(a); Moraguez v. State, 701 S.W.2d 902; Riojas v. State, 530 S.W.2d 298; Bosley v. State, 414 S.W.2d 468.

Appellant complains of constitutional error subject to harmless error review.  This Court must reverse Appellant's judgment of conviction unless the error can be characterized as harmless beyond a reasonable doubt. TEX. R. APP. P. ANN.. 44.2(a) (Vernon Pamph. 2000); Chapman v. California, 386 U.S. 18; Turner v. State, 754 S.W.2d 668.

The State introduced Appellant's first custodial audiotaped statement at trial. Appellant's audiotaped statements were necessary in order to secure his conviction where the complainant's wife never identified Appellant as the same person who had shot the complainant on May 22, 1998.  Instead, Kincaid admitted in open court only that Appellant resembled the composite sketch prepared by the police in this case. (R.R. 23, pp. 129, 132). Similarly, Appellant's taped statements also assisted the State during the punishment phase of trial as Appellant admitted his involvement in three other robbery offenses. (R.R. 28, p. 8).

The Court cannot find, beyond a reasonable doubt, that the introduction of this confession did not contribute to the finding of Appellant's guilt or assessment of the death penalty. Clark v. State, 726 S.W.2d 120.

Based upon the foregoing authorities, Appellant has established that his first audiotaped statement was involuntary.

47

The State has not shown that Appellant's confession, the first audiotaped custodial statement, (S.X. 52A), was not coerced by the actions of the police, Officer Miller. The trial court committed reversible error in failing to grant Appellant's motion to suppress his first audiotaped custodial statement, in violation of Appellant's federal constitutional rights against self-incrimination and due process of law, U.S. CONST., Amends. V and XIV; in violation of Appellant's state constitutional rights against self-incrimination and due course of law, TEX. CONST. Art. I, §§10 and 19; in violation of Appellant's statutory rights. TEX. CODE CRIM. PROC. ANN. arts. 14.06, 38.21 and 38.23 (V.A.C.C.P).

Appellant presents these issues separately to avoid any question of multifariousness. TEX. R. APP. 38.1(e). See also, Stone v. State, 823 S.W.2d at 377; See also, Heitman v. State, 815 S.W.2d at 690, (federal and state constitutional search and seizure issues should be briefed in different points of error).

Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

### POINT OF ERROR FIFTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S FEDERAL CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, U.S. CONSTITUTION, AMENDMENTS FIVE AND FOURTEEN.

### POINT OF ERROR SIXTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL

48

STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S
STATE CONSTITUTIONAL RIGHTS, ART. I., SEC. 10.

### POINT OF ERROR SEVENTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF APPELLANT'S
STATE CONSTITUTIONAL RIGHTS TO DUE COURSE OF LAW, ART. I., SEC.
19.

### POINT OF ERROR EIGHTEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF TEX. CODE CRIM.
PROC. ANN. art. 38.21 (V.A.C.C.P.).

### POINT OF ERROR NINETEEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT
APPELLANT'S MOTION TO SUPPRESS HIS SECOND AUDIOTAPED CUSTODIAL
STATEMENT AS IT WAS INVOLUNTARY, IN VIOLATION OF TEX. CODE CRIM.
PROC. ANN. art. 38.23 (V.A.C.C.P.).

<u>STATEMENT OF FACTS</u>

Appellant refers the reader to the Statement of Facts, and
Arguments and Authorities (Points of Error Nine through
Fourteen), above, and incorporates these sections by reference
herein.

Following the hearing of Appellant's motions to suppress,
the trial court denied the motions and found that Appellant's
statements were voluntary. (C.R. I, pp. 169-173; R.R. 3, pp.
143-144). Appellant renewed his objections at trial and was again
overruled. (R.R. 25, p. 200). Thereafter, Appellant's second
audiotaped custodial statement was admitted and published to the
jury. (R.R. 25, p. 200).

**Todd William Miller**, testified that after he had recorded
Appellant's (first audiotaped) statement, at approximately 1:20

49

a.m., he escorted Appellant before a magistrate and Appellant received the magistrate's warnings. (R.R. 3 p. 89). (See, footnote 5, <u>supra</u>, incorporated by reference herein.). Thereafter, at approximately 1:45 a.m., Appellant was returned to 601 Lockwood for additional questioning. (R.R. 3, p 90).

Miller stated that after additional questioning, Appellant indicated that he had left out some details in his first audiotaped custodial statement. (R.R. 3, p. 91). Whereupon at 1:50 a.m., May 25, 1998, Appellant provided Miller with a second audiotaped statement . (R.R. 3, p. 91). The second audiotaped custodial statement was completed at approximately 2:00 a.m. (R.R. 3, p. 142). Miller identified State's Exhibit No. No. 2H as Appellant's second audiotaped custodial statement. (R.R. 3, p. 92). (See also, State's Exhibit No. 54A (S.X. 54A) (R.R. 26, p. 27).

As stated, the trial court denied Appellant's motions to suppress and found that Appellant's first and second custodial audiotaped statements were voluntary. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144).

During the trial before the jury, Miller denied threatening or coercing Appellant to procure the recorded statement (S.X. 54A) (R.R. 26, p. 29 ). Appellant renewed his earlier objections to the admission of his second audiotaped statement at trial and was once again, overruled. (R.R. 26, p. 28). Thereafter, Appellant's second audiotaped custodial statement (S.X. 54A) was admitted and published to the jury. (R.R. 26, p. 28).

## ARGUMENT AND AUTHORITIES

An accused's custodial statement is inadmissible against him at trial where the statement has been coerced and is the product of an unlawful custodial interrogation. U.S. CONST., Amends. V and XIV.  Stated otherwise, an involuntary statement is inadmissible as a matter of federal constitutional law. Jackson v. Denno, 378 U.S. at 368; Wong Sun v. United States, 371 U.S. at 471.  An involuntary custodial statement is also inadmissible as a matter of state constitutional and statutory law. TEX. CONST. Art. I, §§ 10, 19; TEX. CODE CRIM. PROC. ANN. arts. 38.21 and 38.23 (V.A.C.C.P.).

In the instant case, the trial court erred in overruling Appellant's objections to the admissibility of his second audiotaped custodial statement as it was involuntary, in violation of Appellant's federal constitutional rights against coerced self-incrimination and in violation of his rights to due process of law. U.S. CONST., Amends. V and XIV. Similarly, in the instant case, the trial court erred in overruling Appellant's objections to the admissibility of his second audiotaped custodial statement as it was involuntary, in violation of Appellant's state constitutional rights against coerced self-incrimination, TEX. CONST. Art. I, §10, and in violation of his state constitutional rights to due course of law. TEX. CONST. Art. I, §19.

Last, the trial court erred in overruling Appellant's objections to the admissibility of his second audiotaped

custodial statement as it was involuntary, in violation of Appellant's statutory rights, TEX. CODE CRIM. PROC. ANN. arts. 38.21 and 38.23 (V.A.C.C.P.).

As stated above, the issue of the voluntariness of Appellant's second audiotaped custodial statement was addressed by the court during the pretrial hearing of his motions to suppress evidence. (R.R. 3, pp.67-68). Based upon the facts of the hearing, it is clear that Appellant was **continuously** questioned by Miller from the time of his arrest at 11:00 p.m., May 24, 1998, until 1:50 a.m., on May 25, 1998. (R.R. 3, pp. 125-130). It is clear that Appellant finally assented to provide Miller with audiotaped confessions or statements, (S.X. 52A and 54A), during the early morning hours of May 25, 1998.

The recording of Appellant's second custodial statement, for "anything left out of his first statement," (R.R. 3, p. 91), began at 1:50 a.m. within half an hour of completion of the first audiotaped custodial statement and was itself completed before 2:00 a.m., May 25, 1998. (R.R. 3, pp. 92-93). It is clear that the momentary pause for magistrate's warnings in the instant case did not break or attenuate the taint of the involuntariness of Appellant's first coerced audiotaped statement.

Based upon the facts of the hearing, Appellant's second custodial statement was essentially a continuation of his earlier coerced confession (S.X. 52A), procured by Miller in his continued and overreaching efforts to force Appellant to inculpate himself in the death of Kincaid or in the commission of

52

an aggravated robbery. (R.R. 3, p. 112).

The record is clear that the momentary pause for magistrate's warnings in this case could not attenuate the taint of Appellant's first unlawful audiotaped confession. Thus, the admission of Appellant's second audiotaped statement (S.X. 54A), within thirty minutes of the completion of Appellant's first involuntary custodial statement, constituted a violation of Appellant's federal constitutional rights against self-incrimination and due process of law, U.S. CONST., Amends. V and XIV; a violation of Appellant's state constitutional rights against self-incrimination and due course of law, TEX. CONST. Art. I, §§10 and 19; and a violation of Appellant's statutory rights. TEX. CODE CRIM. PROC. ANN. arts. 38.21 and 38.23 (V.A.C.C.P).

Additionally, as noted, Appellant, aged eighteen years of age, did not eat anything during the course or prior to his continued interrogation by Miller, was not offered an opportunity to sleep, to rest, to gather his thoughts, to use the restroom, to telephone his father, as he requested repeatedly throughout the night and early morning of May 24-25, 1998. (R.R. 3, pp. 125-130; R.R. 26, pp. 12-13). It is also clear from the record that Appellant was extremely fatigued during the course of his continued interrogation by Miller (R.R. 3, p. 130), had been awake for more than twelve hours, yawned throughout the interrogation process, (R.R. 3, p. 123; R.R. 26, p.48), and was not able to concentrate or pay proper attention. (R.R. 25, p.

197). Thus Appellant was unable to knowingly and voluntarily waive his rights against compelled self-incrimination.

Appellant's second audiotaped statement was directly and causally related to Miller's actions in this case. Walker v. State, 842 S.W.2d at 303 (citing Colorado v. Connelly, 479 U.S. at 164. The record clearly demonstrates that Appellant's second custodial statement was not the product of his free will.

As noted, after a full and complete hearing of Appellant's motions to suppress, on August 16, 1999, the trial court denied the motions. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144). Appellant renewed his objections at trial, and was again overruled. (R.R. 26, p. 28). Thereafter, Appellant's second audiotaped custodial statement was introduced at trial. (R.R. 26, p. 28). Appellant has properly preserved this error for appeal. TEX. CODE CRIM. PROC. ANN. art. 28.01 (V.A.C.C.P.); TEX. R. EVID. 103(a)(1) and 103(a)(2); TEX. R. APP. 33.1(a); Moraquez v. State, 701 S.W.2d 902; Riojas v. State, 530 S.W.2d 298; Bosley v. State, 414 S.W.2d 468.

Appellant complains of constitutional error subject to harmless error review.  This Court must reverse Appellant's judgment of conviction unless the error can be characterized as harmless beyond a reasonable doubt. TEX. R. APP. P. ANN.. 44.2(a) (Vernon Pamph. 2000); Chapman v. California, 386 U.S. 18; Turner v. State, 754 S.W.2d 668.

The State introduced Appellant's second custodial audiotaped statement at trial. Appellant's audiotaped statements were

necessary in order to secure his conviction where the complainant's wife never identified Appellant as the same person who had shot the complainant on May 22, 1998. Instead, Kincaid admitted in open court only that Appellant resembled the composite sketch prepared by the police in this case. (R.R. 23, pp. 129, 132). Similarly, Appellant's taped statements also assisted the State during the punishment phase of trial as Appellant admitted his involvement in three other robbery offenses. (R.R. 28, p. 8).

The Court cannot find, beyond a reasonable doubt, that the introduction of this confession did not contribute to the finding of Appellant's guilt or assessment of the death penalty. Clark v. State, 726 S.W.2d 120.

Based upon the foregoing authorities, Appellant has established that his second audiotaped statement was involuntary. The State has not shown that Appellant's confession, the second audiotaped custodial statement, (S.X. 54A), was not coerced by the actions of the police, Officer Miller. The trial court committed reversible error in failing to grant Appellant's motion to suppress his second audiotaped custodial statement, in violation of Appellant's federal constitutional rights against self-incrimination and due process of law, U.S. CONST., Amends. V and XIV; in violation of Appellant's state constitutional rights against self-incrimination and due course of law, TEX. CONST. Art. I, §§10 and 19; in violation of Appellant's statutory rights. TEX. CODE CRIM. PROC. ANN. arts. 38.21 and 38.23

(V.A.C.C.P).

Appellant presents these issues separately to avoid any question of multifariousness. TEX. R. APP. 38.1(e).

Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

POINT OF ERROR TWENTY (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO FILE WRITTEN FINDINGS REGARDING THE VOLUNTARINESS OF APPELLANT'S FIRST AUDIOTAPED CUSTODIAL STATEMENTS, IN VIOLATION OF TEX. CODE CRIM. PROC. ANN. art. 38.22 §6 (V.A.C.C.P.).

POINT OF ERROR TWENTY-ONE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO FILE WRITTEN FINDINGS REGARDING THE VOLUNTARINESS OF APPELLANT'S SECOND AUDIOTAPED CUSTODIAL STATEMENTS, IN VIOLATION OF TEX. CODE CRIM. PROC. ANN. art. 38.22 §6 (V.A.C.C.P.).

<u>STATEMENT OF FACTS</u> (POINTS OF ERROR TWENTY AND TWENTY-ONE):

Following the hearing of Appellant's Motions to Suppress, on August 16, 1999, the trial court denied the motions and found that Appellant's statements, (S.X. 52A and S.X. 54A) were voluntary. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144). As stated:

> "... All right, it's the Court's -- it's the ruling of the Court that the arrest was legal, that the defendant's statement [sic] was voluntary.
>
> The Defendant's Motion to Suppress the Confession is denied, as well as the corollary motion which also addresses some, not all, of the same issues."

(R.R. 3, pp. 143-144).

Appellant's trial counsel immediately requested that the court issue written findings of fact and conclusions of law. (R.R. 3, p. 144). The court acknowledged its statutory duty in this matter and ordered the State to submit proposed findings of

56

fact and conclusions of law for the court's consideration. (R.R. 3, p. 144). The attorney for the State agreed to provide the court with proposed findings of facts and conclusions of law. (R.R. 3, p. 144). The record in this case does not contain any written findings of fact and conclusions of law regarding the voluntariness of Appellant's audiotaped statements in this case. (C.R. I, II, III).

ARGUMENT AND AUTHORITIES:

The trial court erred by not filing written findings of fact and conclusions of law regarding the voluntariness of Appellant's first and second audiotaped custodial statements. The trial court violated the mandatory provisions of TEX. CODE CRIM. PROC. ANN. art. 38.22 §6 (V.A.C.C.P.), and compromised Appellant's rights to a full and fair review of this issue on appeal. Garcia v. State, ___ S.W.3d ___, (Tex. Crim. App., No. 064-99, delivered March 29, 2000).

TEX. CODE CRIM. PROC. ANN. art. 38.22, entitled "When statements may be used," addresses the procedures to be employed by the courts in determining the issue of the voluntariness of a defendant's statement, sought to be introduced against him at trial. Section 6 of the article states, provides in relevant part:

> Sec. 6.  In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. **If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order**

> stating its conclusion as to whether or not the
> statement was voluntarily made, along with the specific
> finding of facts upon which the conclusion was based,
> which order shall be filed among the papers of the
> cause...

TEX. CODE CRIM. PROC. ANN. art. 38.22 §6 (V.A.C.C.P.) (emphasis

added).

This Court has previously held that a "determination by the

trial judge of the defendant's confession prior to its admission

in evidence is a constitutional and statutory requirement, and

such determination must distinctly appear in the record."

McKittrick v. State, 535 S.W.2d 873, 875 (Tex. Crim. App. 1976)

(citing Jackson v. Denno, 378 U.S. 368; Sims v. Georgia, 385 U.S.

538, 87 S.Ct. 639, 17 L.Ed 2d 593 (1967). See also, Wicker v.

State, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987) (Article 38.22

§6 is mandatory in its language.); Green v. State, 906 S.W.2d

937, 939 (Tex. Crim. App. 1995)( "the requirements of Article

38.22 ... are mandatory and require the trial court to file its

findings regardless of whether the defendant does or does not

object"); Davis v. State, 499 S.W.2d 303 (Tex. Crim. App. 1973).

The reasoning of the courts above is based upon the

principle that the procedures used in the trial court to

determine the voluntariness of a defendant's confession must be

"fully adequate to insure a reliable and clear-cut determination

of the voluntariness of the confession, including the resolution

of the disputed facts upon which the voluntariness may depend."

Jackson v. Denno, 378 U.S. at 391. The court's fact-findings are

essential to provide an appellate court as well as the parties

with a basis upon which to review the trial court's application of the law to the facts. <u>Nicholas v. State</u>, 810 S.W.2d 829, 831 (Tex. App. -Dallas), pet. ref'd., 815 S.W.2d 732 (Tex. Crim. App. 1991)).

Absent findings of fact and conclusions of law reflecting the trial court's application of the law to the facts of the *Jackson-Denno* hearing in the instant case, this Court cannot determine the basis, if any, of the trial court's conclusions. <u>Nicholas v. State</u>, 810 S.W.2d at 833. Additionally, absent findings of fact and conclusions of law, Appellant's right to a fair review of these matter by this Court is compromised. <u>Garcia v. State</u>, ___ S.W.3d _____, (Tex. Crim. App., No. 064-99, delivered March 29, 2000).

Generally, upon a trial court's failure to file its findings of fact and conclusions of law regarding the voluntariness of a confession, the appellate court is authorized to abate the appeal and remand to the trial court for such findings of fact and conclusions of law. <u>Cerda v. State</u>, 10 S.W.3d 748, 752 (Tex. App. --Corpus Christi, 2000, no pet.); <u>Garza v. State</u>, 915 S.W.2d 204, 211 (Tex. App. --Corpus Christi, 1996, pet. ref'd.); <u>Mayfield v. State</u>, 821 S.W.2d 357 (Tex. App. --Houston [14th Dist.] 1991, no pet.).

As noted above, a *Jackson-Denno* hearing was conducted on August 16, 1999. (C.R. III, pp. 547-548; R.R. 3, pp. 65, 68). Following the hearing, the court denied Appellant's motions and found that Appellant's statements, (S.X. 52A and S.X. 54A) were

voluntary. (C.R. I, pp. 169-173; R.R. 3, pp. 143-144).

Appellant's trial counsel immediately requested that the trial court issue its written findings of fact and conclusions of law. (R.R. 3, p. 144). The court acknowledged its statutory duty in this matter and ordered the State to submit proposed findings of fact and conclusions of law for the court's consideration. (R.R. 3, p. 144). The attorney for the State agreed to provide the court with proposed findings of facts and conclusions of law. (R.R. 3, p. 144). The record in this case does not contain any written findings of fact and conclusions of law regarding the voluntariness of Appellant's audiotaped statements in this case. (C.R. I, II, III).

Appellant has properly preserved this error for appeal. TEX. CODE CRIM. PROC. ANN. art. 28.01 (V.A.C.C.P.); TEX. R. EVID. 103(a)(1) and 103(a)(2); TEX. R. APP. 33.1(a); Moraquez v. State, 701 S.W.2d 902; Riojas v. State, 530 S.W.2d 298; Bosley v. State, 414 S.W.2d 468.

Thus, Appellant respectfully requests that this Court abate the appeal in the instant case for the trial court's findings of fact and conclusions of law regarding the voluntariness of Appellant's first and second audiotaped statements, respectively. Cerda v. State, 10 S.W.3d at 752.

Additionally, Appellant respectfully requests that upon the filing of Article 38.22 §6 fact-findings by the court, that this Court permit Appellant to supplement this Appellate Brief to include issues raised therein. Rochelle v. State, 791 S.W.2d 121,

124 (Tex. Crim. App. 1990); <u>Allen v. State</u>, 795 S.W.2d 15, 16

(Tex. App. --Houston [14th Dist.] 1990, no pet.).

POINT OF ERROR TWENTY-TWO (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING
APPELLANT'S MOTION TO STRIKE VENIREMAN MELBA LYNET WHITE WILLIAMS
FOR CAUSE, AS THE VENIREMAN WAS BIASED AGAINST A LAW THAT
APPELLANT WAS ENTITLED TO RELY UPON, IN VIOLATION OF APPELLANT'S
FEDERAL CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY, U.S.
CONSTITUTION, AMENDMENTS SIX AND FOURTEEN.

An accused is entitled to be tried before a fair and

impartial jury. U.S. CONST., Amends. VI and XIV; <u>Duncan v.</u>

<u>Louisiana</u>, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

See also, <u>Nethery v. State</u>, 692 S.W.2d. 686, 691 (Tex. Crim. App.

1985). The United States Supreme Court has recognized that

capital sentencing decisions are unique; a prospective juror must

meet the standards set forth in <u>Wainwright v. Witt</u>, 469 U.S. 412,

105 S.Ct. 844, 83 L.Ed.2d 841 (1985).[6]

The Court insists that the jury be provided with a vehicle

for expressing its "reasoned moral response" to the evidence

presented at the sentencing phase of trial. <u>Penry v. Lynaugh</u>, 492

U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In <u>Morgan v.</u>

<u>Illinois</u>, 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992),

the Court made it clear that "life-qualifying" prospective jurors

is constitutionally required. Thus, a prospective juror who would

automatically answer a special issue in the affirmative whenever

---

[6] In <u>Witt</u>, the United States Supreme Court ruled that the
"standard for determining when a prospective juror may be
excluded for cause because of his or her view on capital
punishment ... is whether the juror's views would prevent or
substantially impair the performance of his duties as a juror in
accordance with his instructions and his oath."

61

a defendant is guilty of capital murder, is not qualified. <u>Id</u>.
See also <u>Banda v. State</u>, 890 S.W.2d 53 (Tex. Crim. App. 1994),
<u>cert</u>. <u>denied</u> 115 S.Ct. 2253 (1995).

In general, a defendant is entitled to strike for cause a
prospective juror who has a bias or prejudice against any of the
law applicable to the case upon which the defendant is entitled
to rely, including punishment. TEX. CODE CRIM. PROC. ANN. art.
35.16(c)(2) (V.A.C.C.P.). This article, which sets forth the
Texas statutory provisions for excluding venireman, was designed
to insure that an accused receives a fair and impartial trial.
<u>Jones v. State</u>, 982 S.W.2d 386 (Tex. Crim. App. 1998) (Baird, J.,
Dissenting).

A prospective juror in a capital case is thus also subject
to a challenge for cause if he or she would answer "yes" when
there is  "possibility" as opposed to the statutory required term
of "probability" that a defendant would commit criminal acts of
violence. <u>Patrick v. State</u>, 906 S.W.2d 481 (Tex. Crim. App.
1995).

In the instant case, the trial court committed reversible
error in overruling Appellant's motion to strike venireman Melba
Lynet White Williams for cause, where the venireman was biased
against a law upon which Appellant was entitled to rely, TEX. CODE
CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.), in violation of
Appellant's federal constitutional right to a fair and impartial
jury. U.S. CONST., Amends. VI and XIV.

The particular law at issue in Point of Error Twenty-two

pertains to Special Issue One. TEX. CODE CRIM. PROC. ANN. art.

37.071 § 2(b) (V.A.C.C.P.). The statute states in pertinent part:

> Sec. 2. (a) If a defendant is tried for a capital
> offense in which the state seeks the death penalty, on
> a finding that the defendant is guilty of a capital
> offense, the court shall conduct a separate sentencing
> proceeding to determine whether the defendant shall be
> sentenced to death or life imprisonment. ...
>
> (b) On conclusion of the presentation of the evidence,
> the court shall submit the following issues to the
> jury:
>
> (1) whether there is a probability that the defendant
> would commit criminal acts of violence that would
> constitute a continuing threat to society; ...

ID.

This Court in <u>Smith v. State</u>, 779 S.W.2d 417, 421 (Tex.

Crim. App. 1989) opined that "probability" is something more than

a bare chance that the defendant would be violent in the future.

See also, <u>Ellason v. State</u>, 815 S.W.2d 656, 659 (Tex. Crim. App.

1991). Venireperson Melba Lynet White Williams was examined by

the parties on August 19, 1999. (R.R. 6, p. 6). Upon examination

by Appellant, Ms. Williams was asked:

> Q: Now, Special Issue No. 1 asks you: Do you find
> from the evidence beyond a reasonable doubt that there
> is a probability that the defendant commit criminal
> acts of violence that would constitute a continuing
> threat to society?
>
> Okay. First of all, let me reread the question.
> And I'm going to change a word. I'm going to ask you,
> does it affect [sic] it's meaning to you.
>
> Do you find from the evidence beyond a reasonable
> doubt that there is a chance that the defendant will
> commit criminal acts of violence that would constitute
> a continuing threat to society?
>
> Does the word probability and chance mean or say
> the same thing to you?

A:    Yes.

Q:    Okay.   They have no -- there is no distinction in your thought process between the word probability and chance?

A:    No.

(R.R. 6, pp. 54-55).

Thus, it is clear from the venireperson's response that she would apply the law, as charged, in such a manner to answer Special Issue One, "yes," if the evidence showed that there was any chance that Appellant would commit acts of violence in the future. Stated in other words, it is clear from the venireperson's response that she would apply the law, as charged, in such a manner that Appellant would receive a death sentence if the evidence showed that there was any chance that Appellant would commit acts of violence in the future.

Ms. Williams was subject to a proper challenge for cause. Smith v. State, supra, Ellason v. State, supra. Appellant's counsel challenged Ms. Williams for cause, "[s]he said that probability and chance meant the exact same thing to her." (R.R. 6, p. 64). Appellant's challenge was overruled. (R.R. 6, p. 64). Appellant employed a peremptory strike against Ms. Williams, exhausted all of his peremptory strikes, and was forced to accept an objectionable juror, Wilcox. (R.R. 22, pp. 10-12). Long v. State, 823 S.W.2d 259 (Tex. Crim. App. 1991).

An objection to a juror is timely if it is made during voir dire or before the venireman is dismissed and the objection is not otherwise abandoned. Zimmerman v. State, 860 S.W.2d 89, 94-95

64

(Tex. Crim. App. 1993). In the instant case, Appellant properly preserved the error for appeal. TEX. R. APP. P. 33.1(a). Cannaday v. State, 11 S.W.3d 205, 208 (Tex. Crim. App. 2000).

Under the record before this Court, the error cannot be assumed to be harmless. Appellant asserts that the error in the instant Point of Error is not harmless. The right to a fair and impartial jury is a cornerstone of federal constitutional trial law. Duncan v. Louisiana, supra. The court's denial of a proper challenge for cause against venireperson Williams violated Appellant's constitutional rights to a fair and impartial jury. U.S. CONST., Amends. VI and XIV.

For the reasons asserted above, this Court should characterize the error in this Point of Error as constitutional. Jones v. State, 982 S.W.2d 386. This Court must reverse Appellant's conviction unless the error can be characterized as harmless beyond a reasonable doubt. TEX. R. APP. 44.2(a) (Vernon Pamph. 2000); Chapman v. California, 386 U.S. 18; Turner v. State, 754 S.W.2d 668.

Appellant complains of the trial court's erroneous application of TEX. CODE CRIM. PROC. ANN. art. 35.16(b)(3) (V.A.C.C.P.). Alternatively, this Court might characterize the error as nonconstitutional. Appellant's conviction must be reversed if it is shown that Appellant's substantial rights have been affected. TEX. R. APP. P. 44.2(b).

Generally, a substantial right is affected when the error had a substantial and injurious effect or influence in

65

determining the jury's verdict. <u>King v. State</u>, 953 S.W.2d 266 (Tex. Crim. App. 1997). However, the application of this standard to jury selection error (voir dire error) is simply impossible. <u>Jones v. State</u>, 982 S.W.2d 386. Under the record before this Court, the error cannot be assumed to be harmless.

The trial court committed reversible error in overruling Appellant's motion to strike venireperson Melba Lynet White Williams for cause, where the venireperson was biased against a law that Appellant was entitled to rely upon, in violation of Appellant's federal constitutional right to a fair and impartial jury. Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

### POINT OF ERROR TWENTY-THREE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO STRIKE VENIREMAN JOHN RUBEN MUNOZ FOR CAUSE, AS THE VENIREMAN WAS BIASED AGAINST A LAW THAT APPELLANT WAS ENTITLED TO RELY UPON, IN VIOLATION OF APPELLANT'S FEDERAL CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY, U.S. CONSTITUTION, AMENDMENTS SIX AND FOURTEEN.

An accused is entitled to be tried before a fair and impartial jury. U.S. CONST., Amends. VI and XIV; <u>Duncan v. Louisiana</u>, <u>supra</u>, 391 U.S. at 145). The United States Supreme Court has recognized that capital sentencing decisions are unique; a prospective juror must meet the standards set forth in <u>Wainwright v. Witt</u>, <u>supra</u>, 469 U.S. at 412.

The Court insists that the jury be provided with a vehicle for expressing its "reasoned moral response" to the evidence presented at the sentencing phase of trial. <u>Penry v. Lynaugh</u>,

66

_supra_, 492 U.S. 302. In _Morgan v. Illinois_, _supra_, 504 U.S. 719, the Court made it clear that "life-qualifying" prospective jurors is constitutionally required. Thus, a prospective juror who would automatically answer a special issue in the affirmative whenever a defendant is guilty of capital murder, is not qualified. _Id_. See also _Banda v. State_, _supra_, 890 S.W.2d 53.

In general, a defendant is entitled to strike for cause a prospective juror who has a bias or prejudice against any of the law applicable to the case upon which the defendant is entitled to rely, including punishment. TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.). This article, which sets forth the Texas statutory provisions for excluding venireman, was designed to insure that an accused receives a fair and impartial trial. _Jones v. State_, _supra_, 982 S.W.2d 386 (Baird, J., Dissenting).

A prospective juror in a capital case is thus also subject to a challenge for cause if he or she would answer "yes" when there is "possibility" as opposed to the statutorily required term of "probability" that a defendant would commit criminal acts of violence. _Patrick v. State_, _supra_, 906 S.W.2d 481.

In the instant case, the trial court committed reversible error in overruling Appellant's motion to strike venireman John Ruben Munoz for cause, where the venireman was biased against a law that Appellant was entitled to rely upon, TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.), in violation of Appellant's federal constitutional right to a fair and impartial jury. U.S. CONST., Amends. VI and XIV.

67