# United States District Court
# Southern District of Texas

## Case Number: ___H-05- 3424___

## ATTACHMENT

Description:

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __4__ of _____

☐ Exhibit to: ___Vol I - Exch 4 cont'd___
   number(s) / letter(s) _____

Other: ___Petition For Writ of___

___Habeas Corpus___

___— Exh.bits in Support to of___
___Petition___

The particular law at issue in Point of Error Twenty-Three pertains to statutory Special Issue One. TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b) (V.A.C.C.P.). (See, Point of Error Twenty-Two), above.

As noted, this Court in Smith v. State, 779 S.W.2d at 421, opined that "probability" is something more than a bare chance that the defendant would be violent in the future. See also, Ellason v. State, supra, 815 S.W.2d at 659.

Venireman, John Ruben Munoz was examined by the parties on August 20, 1999. (R.R. 7, p. 126). Upon examination by Appellant, the venireman was asked:

> Q:   Okay. Let me ask you this. And I'll reread Special Issue No. 1. And I'm going to make a substitution. I'm going to ask you to look at it again. Okay?
>
> Do you find from the evidence beyond a reasonable doubt that there is a chance that the defendant will commit criminal acts of violence that will constitute a continuing threat to society?
>
> Okay. I substituted the word chance for probability. Does probability and chance means the same thing to you?
>
> A:   I think probability is more reassuring than chance is.
>
> Q:   Okay.  So it means more to you than a mere chance?
>
> A:   Right.
>
> Q:   Is that correct?
>
> How about: Do you find from the evidence beyond a reasonable doubt that there is a possibility that the defendant will commit criminal acts of violence that will constitute a continuing threat to society?
>
> Just [sic] possibility mean the same thing as probability?

68

A:    Yes.

Q:    Possibility does mean the same thing?

A:    That would be a little closer, yes.

(R.R. 7, pp. 184-185).

Thus, it is clear from the venireperson's response that he would apply the law, as charged, in such a manner to answer Special Issue One, "yes," if the evidence showed that there was any chance that Appellant would commit acts of violence in the future. Stated in other words, it is clear from the venireperson's response that he would apply the law, as charged, in such a manner that Appellant would receive a death sentence if the evidence showed that there was any chance that Appellant would commit acts of violence in the future.

Mr. Munoz was subject to a proper challenge for cause. Smith v. State, supra; Ellason v. State, supra. Appellant's counsel challenged Mr. Munoz for cause, "he equates possibility and probability as meaning one in the same thing." (R.R. 7, pp. 185-186). Appellant's challenge was overruled. (R.R. 7, p. 186).

For all the reasons developed in Point of Error Twenty- Two, above, Appellant properly preserved the error for appeal. TEX. R. APP.   P. 33.1(a). Long v. State, 823 S.W.2d at 259; Zimmerman v. State, 860 S.W.2d at 94-95; Cannaday v. State, 11 S.W.3d at 208. For all the reasons urged in Point of Error Twenty-Two, above, the error cannot be considered harmless. TEX. R. APP. 44.2(a) (Vernon Pamph. 2000). See, Jones v. State, 982 S.W.2d 386.

69

The trial court committed reversible error in overruling Appellant's motion to strike venireperson John Ruben Munoz for cause, where the venireperson was biased against a law that Appellant was entitled to rely upon, in violation of Appellant's federal constitutional right to a fair and impartial jury. U.S. CONST., Amends. VI and XIV. Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

### POINT OF ERROR TWENTY-FOUR (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING APPELLANT'S MOTION TO STRIKE VENIREMAN JACQUELINE EMHOFF NELSON FOR CAUSE, WHERE THE VENIREMAN WAS BIASED AGAINST A LAW THAT APPELLANT WAS ENTITLED TO RELY UPON, IN VIOLATION OF APPELLANT'S FEDERAL CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY, U.S. CONSTITUTION, AMENDMENTS SIX AND FOURTEEN.

An accused is entitled to be tried before a fair and impartial jury. U.S. CONST., Amends. VI and XIV; Duncan v. Louisiana, supra, 391 U.S. at 145. The United States Supreme Court has recognized that capital sentencing decisions are unique; a prospective juror must meet the standards set forth in Wainwright v. Witt, supra, 469 U.S. at 412.

The Court insists that the jury be provided with a vehicle for expressing its "reasoned moral response" to the evidence presented at the sentencing phase of trial. Penry v. Lynaugh, supra, 492 U.S. at 302. In Morgan v. Illinois, supra, 504 U.S. at 719, the Court asserted that "life-qualifying" prospective jurors is constitutionally required. Thus, a prospective juror who would automatically answer a special issue in the affirmative whenever

70

a defendant is guilty of capital murder, is not qualified.  <u>Id</u>.
See also, <u>Banda v. State</u>, <u>supra</u>, 890 S.W.2d 53.

In general, a defendant is entitled to strike for cause a
prospective juror who has a bias or prejudice against any of the
law applicable to the case upon which the defendant is entitled
to rely, including punishment. TEX. CODE CRIM. PROC. ANN. art.
35.16(c)(2) (V.A.C.C.P.).  This article, which sets forth the
Texas statutory provisions for excluding venireman, was designed
to insure that an accused receives a fair and impartial trial.
<u>Jones v. State</u>, 982 S.W.2d 386 (Baird, J., Dissenting).

A prospective juror in a capital case is thus also subject
to a challenge for cause if he or she would answer "yes" when
there is  "possibility" as opposed to the statutory required term
of "probability" that a defendant would commit criminal acts of
violence. <u>Patrick v. State</u>, <u>supra</u>, 906 S.W.2d 481.

In the instant case, the trial court committed reversible
error in overruling Appellant's motion to strike venireperson
Jacqueline Emhoff Nelson for cause, where the venireperson was
biased against a law upon which Appellant was entitled to rely,
TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.), in
violation of Appellant's federal constitutional right to a fair
and impartial jury. U.S. CONST., Amends. VI and XIV.

The particular law at issue in Point of Error Twenty-Four
pertains to Special Issue One. TEX. CODE CRIM. PROC. ANN. art.
37.071 § 2(b) (V.A.C.C.P.). (See, Point of Error Twenty-Two,
above). As noted above, this Court in <u>Smith v. State</u>, 779 S.W.2d

71

at 421, opined that "probability" is something more than a mere a

bare chance that the defendant would be violent in the future.

See also, <u>Ellason v. State</u>, 815 S.W.2d at 659.

Venireperson Jacqueline Emhoff Nelson was examined by the

parties on August 24, 1999. (R.R. 10, p. 147). Upon examination

by Appellant, the venireperson was asked:

> Q:   Okay. Now, Mrs. Nelson, when you look at that word
> probability in that first special issue, does
> probability seem to say the same thing as possibility
> or chance? Or do you think probability requires them
> to show you more?
>
> A:   I associate probability with possible.
>
> Q:   Okay. You think probability means the same
> thing as possibility?
>
> A:   Yes.
>
> Q:   Okay. You don't see any distinction between the
> two? Okay.
>
> A:   No.

(R.R. 10, p. 191).

Thus, it is clear from the venireperson's response that she

would apply the law, as charged, in such a manner to answer

Special Issue One, "yes," if the evidence showed that there was

<u>any</u> chance that Appellant would commit acts of violence in the

future. Stated in other words, it is clear from the

venireperson's response that she would apply the law, as charged,

in such a manner that Appellant would receive a death sentence if

the evidence showed that there was <u>any</u> chance that Appellant

would commit acts of violence in the future.

Ms. Nelson was subject to a proper challenge for cause.

72

Smith v. State, supra, Ellason v. State, supra. Appellant's
counsel challenged Ms. Nelson for cause, "... her equating
possibility and probability." (R.R. 10, p. 200). Appellant's
challenge was overruled. (R.R. 10, p. 200). For all the reasons
developed in Point of Error Twenty-Two, above, Appellant properly
preserved the error for appeal. TEX. R. APP. P. 33.1(a). Long v.
State, 823 S.W.2d at 259; Zimmerman v. State, 860 S.W.2d at
94-95; Cannaday v. State, 11 S.W.3d at 208.

    For all the reasons urged in Point of Error Twenty-Two,
above, the error cannot be considered harmless. TEX. R. APP.
44.2(a) (Vernon Pamph. 2000). See, Jones v. State, supra. The
right to a fair and impartial jury is a cornerstone of federal
constitutional trial law. Duncan v. Louisiana, supra. The
court's denial of a proper challenge for cause against
venireperson Williams violated Appellant's constitutional rights
to a fair and impartial jury. U.S. CONST., Amends. VI and XIV.

    The trial court committed reversible error in overruling
Appellant's motion to strike venireperson Nelson for cause, where
the venireperson was biased against a law upon which Appellant
was entitled to rely, in violation of Appellant's federal
constitutional right to a fair and impartial jury. Accordingly,
Appellant prays that the judgment and sentence be reversed and
the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

### POINT OF ERROR TWENTY-FIVE

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING
APPELLANT'S MOTION TO STRIKE VENIREMAN HORACE B. SNYDER FOR
CAUSE, AS THE VENIREMAN WAS BIASED AGAINST A LAW THAT APPELLANT
WAS ENTITLED TO RELY UPON, IN VIOLATION OF APPELLANT'S FEDERAL

CONSTITUTIONAL RIGHT TO A FAIR AND IMPARTIAL JURY, U.S. CONSTITUTION, AMENDMENTS SIX AND FOURTEEN.

An accused is entitled to be tried before a fair and impartial jury. U.S. CONST., Amends. VI and XIV; <u>Duncan v. Louisiana</u>, <u>supra</u>, 391 U.S. at 145. The United States Supreme Court has recognized that capital sentencing decisions are unique; a prospective juror must meet the standards set forth in <u>Wainwright v. Witt</u>, <u>supra</u>, 469 U.S. at 412.

As noted above, the Court insists that the jury be provided with a vehicle for expressing its "reasoned moral response" to the evidence presented at the sentencing phase of trial. <u>Penry v. Lynaugh</u>, <u>supra</u>, 492 U.S. 302. In <u>Morgan v. Illinois</u>, 504 U.S. 719, the Court made it clear that "life-qualifying" prospective jurors is constitutionally required. Thus, a prospective juror who would automatically answer a special issue in the affirmative whenever a defendant is guilty of capital murder, is not qualified. <u>Id</u>. See also <u>Banda v. State</u>, <u>supra</u>, 890 S.W.2d 53.

In general, a defendant is entitled to strike for cause a prospective juror who has a bias or prejudice against any of the law applicable to the case upon which the defendant is entitled to rely, including punishment. TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.). This article, which sets forth the Texas statutory provisions for excluding venireman, was designed to insure that an accused receives a fair and impartial trial. <u>Jones v. State</u>, 982 S.W.2d 386.

Appellant was entitled to be tried by jurors who could consider the full range of punishment applicable to the offense,

74

that is, the full range of punishment in a capital case. TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.); Cumbo v. State, 760 S.W.2d 251 (Tex. Crim. App. 1988); Trevino v. State, 572 S.W.2d 336, 337 (Tex. Crim. App. 1978).

TEX. PENAL CODE ANN, art. 12.31(a) (Vernon 1994) authorizes punishment, upon conviction for the offense of capital murder, of death by lethal injection or incarceration for life.

In the instant case, the trial court committed reversible error in overruling Appellant's motion to strike venireperson Horace B. Snyder for cause, where the venireperson was biased against a law upon which Appellant was entitled to rely, TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.), in violation of Appellant's federal constitutional right to a fair and impartial jury. U.S. CONST., Amends. VI and XIV.

Venireperson Snyder was examined by the parties on August 26, 1999. (R.R. 12, p. 216). Upon examination by Appellant, the venireperson was asked:

> Q: Okay. Would it be fair to say, before you even heard any evidence as to mitigation, you already have a built-in bias against the existence and/or weighing of it? Is that a fair --
>
> A: Of mitigation?
>
> Q: Yes, sir.
>
> A: To a certain extent, I guess more than others. More than what I heard others discuss, yes.

(R.R. 12, p. 264).

Thus, it is clear from the venireperson's response that he could not consider the full range of punishment in this case. Mr.

Snyder was subject to a proper challenge for cause. <u>Cumbo v. State</u>, 760 S.W.2d at 253; <u>Trevino v. State</u>, 572 S.W.2d at 337.

Appellant's counsel challenged Mr. Snyder for cause based upon the venireperson's bias against the applicable law. As stated: "Specifically, based upon his answers, his demeanor, and everything that he said ... He indicated that he has a bias against Special Issue No. 2. That it's clear that he has a leaning against it. And that he just couldn't be fair on the issue of mitigation." (R.R. 12, p. 268). Appellant's challenge was overruled. (R.R. 12, p. 269). For all the reasons developed in Point of Error Twenty-Two, above, Appellant properly preserved the error for appeal. TEX. R. APP. P. 33.1(a). <u>Long v. State</u>, 823 S.W.2d at 259; <u>Zimmerman v. State</u>, 860 S.W.2d at 94-95.

For all the reasons urged in Point of Error Twenty-Two, above, the error cannot be considered harmless. TEX. R. APP. 44.2(a) (Vernon Pamph. 2000). See, <u>Jones v. State</u>, 982 S.W.2d 386

The trial court committed reversible error in overruling Appellant's motion to strike venireperson Snyder for cause, where the venireperson was biased against a law upon which Appellant was entitled to rely, TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2) (V.A.C.C.P.), in violation of Appellant's federal constitutional right to a fair and impartial jury. U.S. CONST., Amends. VI and XIV. Accordingly, Appellant prays that the judgment and sentence be reversed and the cause remanded. TEX. CODE CRIM. PROC. ANN. art. 44.29(a).

## POINT OF ERROR TWENTY-SIX (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO
DISCHARGE THE JURY PANEL WHERE THE STATE EXERCISED ITS PEREMPTORY
STRIKES AGAINST VENIREMEMBER, TWANNA KIRKLING, IN A RACIALLY
DISCRIMINATORY MANNER IN VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT. U.S. CONST., AMEND. XIV.

## POINT OF ERROR TWENTY-SEVEN (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO
DISCHARGE THE JURY PANEL WHERE THE STATE EXERCISED ITS PEREMPTORY
STRIKES AGAINST VENIREMEMBER, MELBA H. GOODMAN, IN A RACIALLY
DISCRIMINATORY MANNER IN VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT. U.S. CONST., AMEND. XIV.

## POINT OF ERROR TWENTY-EIGHT (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO
DISCHARGE THE JURY PANEL WHERE THE STATE EXERCISED ITS PEREMPTORY
STRIKES AGAINST VENIREMEMBER, BETTY OWENS, IN A RACIALLY
DISCRIMINATORY MANNER IN VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT. U.S. CONST., AMEND. XIV.

## POINT OF ERROR TWENTY-NINE (RESTATED)

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO
DISCHARGE THE JURY PANEL WHERE THE STATE EXERCISED ITS PEREMPTORY
STRIKES AGAINST VENIREMEMBER, L.V. MCQUEEN, IN A RACIALLY
DISCRIMINATORY MANNER IN VIOLATION OF THE EQUAL PROTECTION CLAUSE
OF THE FOURTEENTH AMENDMENT. U.S. CONST., AMEND. XIV.

SUMMARY OF FACTS (POINTS OF ERROR TWENTY-SIX THROUGH TWENTY-
NINE):

On September 13, 1999, upon completion of voir dire and

prior to impaneling the jury, Appellant's counsel asserted a

Batson challenge to the State's exercise of peremptory strikes.

(R.R. 22, pp.12-13).  The following exchange transpired:

> NUNNERY: Your Honor, first of all, for the record, I
> would ask that the Court to take judicial notice that
> the defendant in this cause, Anthony Cardell Haynes, is
> a black American.  I'd ask the record to further take
> notice of the fact that of the 50 jurors in the pool --
> one, two, three, four, five, six, seven -- seven that
> qualified are African American origin.  That with the

exception of Mr. Alton Moore, juror number 47, who we were not able to reach, all the other jurors of African American descent were reached.

I would ask the record to further reflect that juror ... Twanna Kirkling, a black female, was struck by the State of Texas.

...

THE COURT: That's number 11.

NUNNERY: Black female was struck by the State, ... Melba Goodman.

...

NUNNERY: Juror number 15, Melba H. Goodman, is a black female that the State struck.

Juror, ... L.V. McQueen --

THE COURT: Yes.

NUNNERY: -- is a black male the State struck, and juror number 40, Betty Owens.

THE COURT: 41

NUNNERY: 41 is a black female and the State struck.

And, Judge, what were the total number of strikes that the State used?

THE COURT: Not counting the alternates, 15 -- I'm sorry. 13 strikes.

NUNNERY: Well, they used one, two, -- four of their 13 strikes which is roughly 30 percent of -- 33 percent of their strikes, Your Honor, to eliminate roughly 80 percent of those blacks in the veniremen. We think just the sheer numbers raise a presumption of a racial motive for the strikes, and we would ask the Judge to order that they articulate on the record why those black jurors were excluded.

THE COURT: All right. Number 11, Ms. Kirkling, from the State.

...

THE STATE: First of all, I would like to make the record clear on the list before I proceed. We accepted Melba Williams [sic] [Melba Lynett White].

THE COURT: Let's talk about numbers.  Number 8.

78

THE STATE: Number 8 was a black female. We accepted her. The defense struck.

...

**Twanna Kirkling**, number 11, the State exercised a strike for Ms. Kirkling because, during her interview, she said capital punishment was a last resort, meaning **several times she hesitated in responding to the questions about the death penalty.** She never would give a firm conviction, Your Honor. For that purpose, I did not trust her. I would strike her again if I had another strike.

THE COURT: I find that to be a reasonable race neutral reason.

NUNNERY: **Your Honor, just for the record, two things I would like to at this point assert: The [sic] record needs to reflect in this matter that with respect to the individuals voir dired, that this Judge, namely, Judge Wallace, was not present but Judge Harper so the Court does not have the benefit of having participated in the individual voir dire.**

Let the record further reflect with respect to juror number 8, Melba Williams White [sic], the defense during individual voir dire made a motion to challenge her for cause and the State obviously knew that I would strike her and, if so, I'm just not impressed with the fact that they found her acceptable. They had to know that I was going to strike her.

THE COURT: Mr. Vinson.

THE STATE: With respect to Ms. Kirkling, again, I want to put some more on, Your Honor, that as she looked at capital punishment, she said she sees it as a necessary evil. I feel it meant indication that there is something impermissible about having such punishment available to the State. She further avoided giving any direct position on capital punishment that it was a viable object for the State, and, furthermore, she stated that life, 40, is a justifiable punishment. And for that, since she had a preconceived notion toward capital punishment, we exercised our strike.

NUNNERY: For the record, we believe that is a mischaracterization of her voir dire ... those reasons exercised by the State with respect to that juror are pretext and simply does not equate with what some of the jurors in the pool said that have already been accepted.

79

THE COURT: Very well.  Number 15.

THE STATE: **Ms. Goodman**, number 15.  Ms. Goodman during
-- again, these are my impressions of the interview.   I
think I have the right to have that impression.  We
opposed [sic] death punishment.  She refused to answer
questions about capital punishment.  She reluctantly
agrees [sic] that capital punishment for police
officers should be available.  **She also demonstrated
through her demeanor that she was very anti-capital
punishment** and I have picked a number of capital jurors
and I did not trust this juror.

THE COURT: I find it to be race neutral.  Number 30.

THE STATE: And where Ms. **McQueen** [sic], again, when
questioned, Ms. McQueen [sic] would give me all the
indications that **in responses to my questions by the
language of demeanor** [sic] that he was very weak on the
death punishment and did not -- and stated that there
were some cases that I could not give a death sentence
even if the law permitted such and again I struck him
as well.

NUNNERY: Your Honor, for the record, they have a
challenge of [sic] cause if, in fact, he said that they
could challenged [sic] her for cause and, furthermore,
the questionnaire will reflect that he checked four
that he was in favor of capital punishment on his
questionnaire.

                           . . .

     Again Judge, it's pretext for an obvious racial
reason to eliminate that juror.

THE COURT: It's race neutral.  Number 41 [**Betty Owens**]
please.

THE STATE: **During the interview, this lady's demeanor
was one, I guess, best I can describe it, somewhat
humorous.  She never did really take on a serious
attitude during the interview.  She would say one thing
but her body language would indicate that this is not
her true feeling.**  And I'm sure that Mr. Jones
reasonably expected us to strike this lady after she
was interviewed because I think Mr. Jones voir dired
her and he only talked to her for a very short time
because he was very pleased with the things she said,
more as she was leaning toward them.  If the defendant
was found guilty, she would certainly be leaning toward
a life sentence.  And with that, I drew a conclusion in
my mind, based on my observation, that she already had

a predisposition and would not look at it in a neutral fashion.

JONES: ... -- in regard to that juror, her questionnaire certainly shows that she was a juror who had a leaning toward the State's case in a capital case.  As a matter of fact ... she indicated she understood the law and she would apply the law and she would not be biased to either side.  I think it is a misconception that I had a feeling that she was friendly towards me and she was responsive to the questions.

NUNNERY: Let me indicate, for the record, having tried a number of capital cases, that it's always been my feeling that the State does not want educated blacks on their jury. This particular juror is a nurse and she has a college degree and, therefore, she would probably bring thought processes and that's something the State has consistently shown not to be interested in.

. . .

THE COURT: It's race neutral.

(R.R. 22, pp. 13-20; C.R. II, p. 435).

## ARGUMENT AND AUTHORITIES [7]

A state cannot challenge potential jurors solely on account of their race.  The State's purposeful or deliberate denial of jury participation to African American veniremembers, Kirkling, Goodman,  McQueen, and Owens, respectively, solely because of their race, violated Appellant's constitutional rights to a jury

---

[7] In each of these points of error, Appellant illustrates how the State violated his rights in the exercise of peremptory challenges against veniremembers, Twanna Kirkling, Melba Goodman, L.V. McQueen, and Betty Owens, respectively, under the Equal Protection Clause of the U.S. Constitution as well as the application of Batson and its progeny.  Appellant has included one "Statement of Facts" in support of these errors. The errors are presented separately to avoid a claim of multifariousness. In reality, however, they are all part of the same challenge: that the State exercised its peremptory strikes in a racially motivated and unconstitutional manner without justification.

81

selection process free of racial discrimination. U.S. CONST. AMEND. XIV; <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); <u>Henry v. State</u>, 729 S.W.2d 732 (Tex. Crim. App. 1987). The court's finding that the State's exercise of its peremptory strikes against these venire members was based upon race-neutral reasons was clearly erroneous and unsupported by the record.

<u>STANDARD OF REVIEW</u>

A trial court's findings at a <u>Batson</u> hearing are not to be disturbed on appeal if they are supported by the record and are not "clearly erroneous." <u>Yarborough v. State</u>, 947 S.W.2d 892, 898 (Tex. Crim. App. 1997) (Mansfield, J., concurring); <u>Satterwhite v. State</u>, 858 S.W.2d 412 (Tex. Crim. App.), <u>cert. denied</u>, 114 S.Ct. 455 (1993); <u>Tennard v. State</u>, 802 S.W.2d 678, 680 (Tex. Crim. App. 1990), <u>cert. denied</u>, 111 S.Ct. 2914 (1991). See also <u>Whitsey v. State</u>, 796 S.W.2d 707, 716 (Tex. Crim. App. 1989).

The role of the reviewing court is to determine whether the trial court's ruling on the <u>Batson</u> motion was **supported by the record** and therefore not clearly erroneous. <u>Vargas v. State</u>, 838 S.W.2d 552 (Tex. Crim. App. 1992) (emphasis added). An appellate court will not disturb a trial court's ruling unless it is "left with a definite and firm conviction that a mistake has been committed." <u>Rhoades v. State</u>, 934 S.W.2d 113, 123 (Tex. Crim. App 1996).

The Equal Protection Clause provides that "[n]o state shall

82

... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. Under this clause, "whether the trial is civil or criminal, potential jurors, as well as litigants, have [a] right to jury selection procedures that are free from state-sponsored group stereotypes rooted in and reflective of historic prejudice." Fritz v. State, 946 S.W.2d 844, 849 (Tex. Crim. App. 1997) (quoting J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 128, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994)).

Thus the Equal Protection Clause prohibits purposeful discrimination in jury selection on the basis of race, Batson v. Kentucky, 476 U.S. at 85-86, or gender, J.E.B. v. Alabama, 511 U.S. at 145-146, or on the assumption that an individual will be biased in a particular case for no reason other than her race, Batson, 476 U.S. at 97-98, or gender J.E.B., 511 U.S. at 145-146. The Batson and J.E.B. opinions were "grounded on the need to address our Nation's historical and uniquely painful and destructive patterns of race and sex discrimination." Casarez v. State, 913 S.W.2d 468, 498 (Tex. Crim. App. 1994) (Mansfield, J., concurring on reh'g.) (quoting with approval, Fritz, 946 S.W.2d at 849-850).

In Powers v. Ohio, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), the Court stated:

> For over a century, this Court has been unyielding in its position that a defendant is denied equal protection of the laws when tried before a jury from which members of his or her race have been excluded by the State's purposeful conduct. . . Although a defendant has no right to a petit jury composed in

whole or in part of persons of the defendant's own
race, he or she does have the right to be tried by a
jury whose members are selected by nondiscriminatory
criteria.

<u>Id</u>., 111 S.Ct. at 1367. Thus, a State's use of peremptory strikes
to exclude minority veniremen from serving on a jury is subject
to judicial review.

Either party in a criminal trial has standing to object to
the other party's use of a peremptory challenge on the basis of
race or gender. <u>Georgia v. McCollum</u>, 505 U.S. 42, 55-56, 112
S.Ct. 2348, 2357, 120 L.Ed.2d 33 (1992).  The objecting party
must timely raise a <u>Batson</u> challenge at the trial level by
objecting to the composition of the jury before the panel is
sworn. <u>Hill v. State</u>, 827 S.W.2d 860, 864 (Tex. Crim. App. 1992);
<u>Matthews v. State</u>, 768 S.W.2d 731, 733 (Tex. Crim. App. 1989).

While <u>Batson</u> clearly held that the State was prohibited from
exercising its peremptory strikes in a racially discriminatory
manner, the procedure and remedy for enforcing the rule was
expressly left open. <u>Batson v. Kentucky, supra</u>, 476 U.S. at 100,
106 S.Ct. at 1725 n.24; <u>Cooper v. State</u>, 791 S.W.2d 80, 81 n.3
(Tex. Crim. App. 1990). (The Texas Legislature subsequently
codified <u>Batson</u> in TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon
1989). <u>State v. Oliver</u>, 808 S.W.2d 492, 495 (Tex. Crim. App.
1991).  This statute controls as the remedy for cases tried after
its effective date. <u>Hill v. State</u>, 827 S.W.2d at 864.

In this case, Appellant's counsel clearly challenged the
composition of the jury in a timely manner, before it had been
sworn. (R.R. 22, pp. 12-13). Appellant timely raised a prima

facie case of purposeful discrimination under <u>Batson</u>. <u>Tennard v.</u>
<u>State</u>, 802 S.W.2d at 680.[8]  Appellant's counsel made a prima
facie showing that Appellant was of African American descent and
that the State had used four of its thirteen peremptory strikes
to remove potential jurors, Goodman, Kirkling, McQueen and Owens,
also of African American descent, solely because of their race.
See, <u>Purkett v. Elem</u>, 514 U.S. 765, 115 S.Ct. 1769, 131 L.Ed.2d
834 (1995).[9]

A defendant has both the burden of production and the burden
of persuasion at a <u>Batson</u> hearing. <u>Williams v. State</u>, 804 S.W.2d
95, 97 (Tex. Crim. App. 1991). The general procedure for
enforcing a <u>Batson</u> claim was asserted by the Court in <u>Hernandez</u>
<u>v. New York</u>, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395
(1991), as follows:

---

[8]  The Court of Criminal Appeals in <u>Tennard</u> held that a defendant establishes a
prima facie case of purposeful discrimination by showing:

> 1. that he is a member of a cognizable racial group;
>
> 2. that the prosecutor has exercised peremptory challenges
> to remove members of the defendant's race from the venire;
> and
>
> 3. that these facts and any other relevant circumstances
> raise an inference that the prosecutor used peremptory
> challenges to exclude the veniremembers on account of their
> race.

<u>Id</u>., 802 S.W.2d at 680.

[9]  Regardless of his race, Appellant has standing to complain
of the unlawful exclusion of minorities from jury service in this
case. <u>Powers v. Ohio</u>, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d
411 (1991); <u>Mead v. State</u>, 819 S.W.2d 869 (Tex. Crim. App.
1991); <u>State v. Oliver</u>, 808 S.W.2d 492 (Tex. Crim. App.1991).

85

> In Batson we outlined a three-step process for
> evaluating claims that a prosecutor has used peremptory
> challenges in a manner violating the Equal Protection
> Clause ... First, the defendant must make a prima facie
> showing that the prosecutor has exercised peremptory
> challenges on the basis of race.  Second, if the
> requisite showing has been made, the burden shifts to
> the prosecutor to articulate a race-neutral explanation
> for striking the jurors in question.  Finally, the
> trial court must determine whether the defendant has
> carried his burden proving purposeful discrimination.
> This three-step inquiry delimits our consideration of
> the arguments raised by petitioners.

Id., 500 U.S. at 356, Ill S.Ct. at 1866.

This procedure was stated in a slightly different format by

this Honorable Court in Williams v. State, 804 S.W.2d 95 (Tex.

Crim. App. 1991), as follows:

> The complexity of this review is revealed when we
> realize that Batson, and the cases cited therein, formulated
> a three part seriatim criterion by which to measure the
> conduct of the prosecutor in the exercise of his peremptory
> challenges: (1) Did the appellant at the Batson hearing
> introduce sufficient evidence to establish a prima facie
> case that the State has engaged in purposeful racial
> discrimination by the use of peremptory challenges? (2) if
> so, has the prosecution come forward with a neutral
> explanation for challenging black jurors?; and, (3) if the
> prosecution has sustained his burden of production, as
> specified, has appellant continued to sustain his burden of
> persuasion in establishing purposeful racial discrimination
> by the State's use of peremptory challenges, thus rebutting
> any race neutral explanation given at the Batson hearing?

Id., at 101.

Under either formulation, the burden is on the appellant to

demonstrate to the trial court a prima facie case of purposeful

discrimination by the prosecutor before the State is under any

obligation to respond. Dewberry v. State, 776 S.W.2d 589, 590 n.1

(Tex. Crim. App. 1989).  A prima facie case represents the

minimum quantum of evidence necessary to support a rational

86

inference that the allegation of fact is true. <u>Robinson v. State</u>, 851 S.W.2d 216, 226, n.10 (Tex. Crim. App. 1991); <u>Tennard v. State</u>, 802 S.W.2d at 681.

As a practical matter, very little evidence is required to establish a *prima facie* case of purposeful racial discrimination. <u>Linscomb v. State</u>, 829 *S.W.2d* 164, 167, n.14 (Tex. Crim. App. 1992). Once a *prima facie* case is made, discrimination must be found unless it is contradicted, impeached, or rebutted by other evidence. <u>Robinson v. State</u>, <u>supra</u>, 851 S.W.2d at 226, n.10; <u>Thompkins v. State</u>, 774 S.W.2d 195, 201 (Tex. Crim. App. 1987).

Under the original Batson decision, a defendant established a *prima facie* case by showing: (1) he is a member of a cognizable racial group; (2) the prosecutor exercised peremptory challenges to remove from the venire members of the defendant's race (relying on the principle that peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and (3) these facts and any other relevant circumstances raise an inference the prosecutor used peremptory challenges to exclude the venire members on account of their race. <u>Salazar v. State</u>, 795 S.W.2d 187, 193 (Tex. Crim. App. 1990). See also, <u>Batson v. Kentucky</u>, 476 U.S. at 96, 106 S.Ct. at 1723; <u>Williams</u>, 804 S.W.2d at 97, n.1. However, this formulation fails to take into account subsequent decisions which hold that a criminal defendant's race is immaterial to his standing to raise the Batson issue. <u>See</u>, footnote 9, supra.

Nevertheless, the fact that Appellant in the instant case is

87

a minority, may be relevant to establish a *prima facie* case that

the State unlawfully discriminated in the making of it peremptory

challenges. <u>Rousseau v. State</u>, 824 S.W.2d 579, 584 n.9 (Tex.

Crim. App. 1992).

Since the holding of <u>Powers</u>, <u>supra</u>, the criteria for

establishing a *prima facie* case of the State's purposeful and

unlawful racial discrimination in the jury selection process were

enumerated as follows by this Court in <u>Robinson v. State</u>, 851

S.W.2d at 216:

> The equal protection clause of the Fourteenth
> Amendment prohibits purposeful discrimination by the
> State in its use of peremptory strikes. A criminal
> defendant may object to race-based exclusion of jurors
> effected through peremptory challenges whether or not
> the defendant and the excluded juror share the same
> race. To establish a prima facie case of purposeful
> discrimination under <u>Powers</u> and <u>Batson</u>, the defendant
> is entitled to rely on the fact, as to which there can
> be no dispute, that peremptory challenges constitute a
> jury selection practice that permits those to
> discriminate who are of a mind to discriminate. Next,
> the defendant must show that this fact and any other
> relevant circumstances raise an inference that the
> prosecutor used that practice to exclude the veniremen
> from the petit jury on account of their race . . . .
>
> In deciding whether the defendant has made the
> requisite showing, the trial court should consider all
> relevant circumstances. For example, a "pattern" of
> strikes against black jurors included in the particular
> venire might give rise to an inference of
> discrimination . . .
>
> Once the defendant makes a prima facie showing,
> the burden shifts to the State to come forward with a
> neutral explanation for challenging the jurors in
> question. Though this requirement imposes a limitation
> in some cases on the full peremptory character of the
> historic challenge, we emphasize that the prosecutor's
> explanation need not rise to the level justifying
> exercise of a challenge for cause . . . The prosecutor
> must . . . articulate a neutral explanation related to
> the particular case to be tried. The trial court then

will have the duty to determine if the defendant has established purposeful discrimination.

Id., at 226. The criteria and procedures presented in Robinson, appear to comprise the most up-to-date blueprint to establish a Batson violation on appeal. See also, Batson, 476 U.S. at 97; Tennard, 802 S.W.2d at 680; Gaines v. State, 811 S.W.2d 245, 247 (Tex. App.--Dallas 1991, pet. ref'd).

A trial court must then examine each of the prosecutor's reasons for striking a potential juror within the circumstances of the particular case to determine whether the "neutral explanation" for the strike is really a pretext for a racially or gender-motivated peremptory challenge. Id. See also Whitsey v. State, 796 S.W.2d at 70, ("... we are not limited to reviewing constitutionally precluded strikes, ... but we are required to review the rationale for each strike which an appellant prima facially establishes is racially-motivated in spite of the seemingly neutral rationale offered by the prosecutor.").

As noted, the State informed the court that it had struck veniremember Goodman because she had refused to answer questions about capital punishment. (R.R. 22, p. 18). However, the record reflects that this venireperson had stated that she did not "have a problem" with capital punishment involving the murder of a police officer. (R.R. 9 p. 184). Additionally, the record clearly reflects that Ms. Goodman answered a number of specific questions about capital punishment. (R.R. 9, pp. 182-185).

Similarly, while in the instant case, the State informed the trial court that they had struck veniremember McQueen because he

89

had stated that while there were circumstances where the law permitted the imposition of the death penalty, he would not vote for it, (R.R. 22, p. 18), during questioning the venireman stated unequivocally that he believed the death penalty served a purpose. (R.R. 14 p. 71). Thus, McQueen's responses failed completely to backup the State's claim that there were circumstances where the venireman would not vote for the imposition of the death penalty. (R.R. 14, pp. 53-82).

Additionally, while the State explained that it employed a peremptory strike against veniremember Kirkling because she appeared hesitant regarding the imposition of the death penalty, that death "was a last resort," and that she did not "state a firm conviction," Kirkling indicated that she believed that the death penalty is "a necessary evil" and "something that we have to do." (R.R. 7, p. 33).

Appellant argues that the State's excuse for striking veniremember Owens (humorous) is also unsupported by the record. Notably, it was refuted outrightly by Appellant's counsel, Jones, above. (See Statement of Facts, supra).

In summary, a review of the actual voir dire of the prospective minority veniremembers, Kirkling, Goodman, McQueen and Owens, fails to support the State's "racially neutral" explanations for the exercise of peremptory strikes against them. It is apparent that the State's explanations for striking each of these prospective veniremembers were, in fact, pretextual.

90

"When the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court, the basis must be substantiated by something other than the prosecutor's statement and that something must be on the record." Yarborough, 947 S.W.2d at 905 (citing Roberson v. State, 860 S.W.2d 162, 165 (Tex. App. --Fort Worth 1993, no pet)). In the instant case, the record is silent; devoid of any testimony or facts which support the prosecutor's bald assertions of racial neutrality in the exercise of peremptory strikes.  The trial court's findings of racial neutrality in each case are clearly erroneous.

The Court of Appeals in Daniels v. State, 768 S.W.2d 314, 317 (Tex. App.--Tyler 1988, pet. ref'd), considered the responsibility of the trial court vis a vis the constitutional guarantees of Batson and opined:

> Although we are unwilling to say that a juror's demeanor cannot ever be a racially neutral motive for a prosecutor's peremptory challenge, the protection of the constitutional guarantees that Batson recognizes requires the court to scrutinize such elusive, intangible, and easily contrived explanations with a healthy skepticism."  Otherwise, 'inattentiveness' will inevitably serve as a convenient talisman transforming Batson's protection against racial discrimination in jury selection into an illusion and the Batson hearing into an empty ceremony.

It is apparent that the trial court in the instant case failed to scrutinize the State's "race-neutral" explanations for the exercise of peremptory challenges against veniremembers Kirkling, Goodman, McQuuen, and Owens. Had the court properly analyzed these "explanations," it would have concluded that the

91

facts ascribed to the veniremembers by the State were unfounded and unsubstantiated by the record.

The standard for appellate review of a <u>Batson</u> claim is whether the trial court's findings that the State did not engage in purposeful racial discrimination are clearly erroneous. <u>Hernandez</u>, <u>supra</u>, 111 S.Ct. at 1871; <u>Vargas v. State</u>, 838 S.W.2d at 554; <u>Hill v. State</u>, 827 S.W.2d at 865.

This Court defined "clearly erroneous" as follows:

> To determine whether the factfinder's decision is "clearly erroneous," appellate courts look to the record to see if they are left with the definite and firm conviction that a mistake has been committed."

<u>Id</u>.[10]

In applying the "clearly erroneous" standard, an appellate court should reject a trial court's acceptance of the State's explanation for a challenged peremptory strike or strikes when said explanation is "simply too incredible to be accepted" by the reviewing Court. <u>Hernandez</u>, <u>supra</u>, 111 S.Ct. at 1871.

The record in the instant case necessarily militates against any finding by the trial court of the legitimacy of the State's "race-neutral" explanations. The State clearly failed to rebut Appellant's *prima facie* case of purposeful racial discrimination in the exercise of peremptory strikes against prospective minority veniremembers, Goodman, Owens, McQueen, and Kirkling,

---

[10] This standard is analytically the same as that "supported by the evidence," in Texas criminal appellate law. <u>Vargas</u>, 838 S.W.2d at 554; <u>Hill</u>, 827 S.W.2d at 866. The Court of Criminal Appeals has expressed a preference for using the term "clearly erroneous" in its appellate review of Batson issues. <u>Id.</u>

respectively.

When a State's "race-neutral explanations" appear to be pre-
textual and are not supported by the record, the appellate courts
must reverse.  Juries which are selected in a racially
discriminatory manner harm not only the defendants and the
excluded jurors, but also the community-at-large.  Juries which
are selected in a racially discriminatory manner undermine the
public's confidence in the criminal justice system. Batson, 476
U.S. at 87.

The record demonstrates that Appellant timely objected to
the State's use of its racially-motivated peremptory strikes
prior to the court's impaneling and swearing of the jury. (R.R.
22, pp. 12-13).  The trial court considered Appellant's
objections and overruled the same. (R.R. 22, pp.18-20).
Appellant has properly preserved this error for appeal. TEX. CODE
CRIM. PROC. ANN. art. 35.261(a) (Vernon 1989);  Hill v. State, 827
S.W.2d at 864; Cooper v. State, 791 S.W.2d 80.

Where the State has exercised its peremptory strikes in a
racially discriminatory manner, a harm analysis under TEX. R. APP.
44.2(b) is not appropriate. The unlawful exclusion of even one
member of a minority from the jury invalidates the entire jury
selection process. Linscomb v. State, 829 S.W.2d at 166; Whitsey
v. State, 796 S.W.2d at 716.

The State's purposeful exclusion of minority veniremembers
from the jury in this case solely because of race, violated the
Equal Protection Clause of the Constitution. U.S. CONST. Amend.

93

XIV. Appellant is entitled to a new trial. This Court should reverse Appellant's conviction, and order a new trial. <u>Batson v. Kentucky</u>, 476 U.S. at 100; TEX. CODE CRIM. PROC. ANN. art. 35.261(b) (V.A.C.C.P.); <u>Hill v. State</u>, 827 S.W.2d at 864; <u>Whitsey v. State</u>, 796 S.W.2d at 716.

### POINT OF ERROR THIRTY (RESTATED)

THE TRIAL COURT ERRED IN PRESIDING OVER APPELLANT'S <u>BATSON</u> MOTION WHERE THE COURT HAD NOT BEEN PRESENT DURING INDIVIDUAL VOIR DIRE OF THE PROSPECTIVE VENIREMEMBERS.

<u>STATEMENT OF FACTS</u>

Appellant refers the reader to the Statement of Facts, Points of Error Twenty-Six through Twenty-Nine (Restated), above, and incorporates this Statement of Facts, by reference, herein. Appellant further notes that, as indicated in the Statement of Facts, above, Appellant objected to Judge Wallace's presiding over the Batson hearing in the instant case as he was absent during the earlier individual voir dire of the prospective venire.

Additionally, as indicated in the Statement of Facts, above, Appellant respectfully reminds the reader that during the Batson hearing, the State repeatedly referred to the demeanor, attitudes, and "body language," of the prospective minority veniremembers Goodman, Kirkling, McQuuen, and Owens, in order to justify the exercise of peremptory strikes against them. (R.R. 22, pp. 13-20; C.R. II, p. 435).

<u>ARGUMENT AND AUTHORITIES</u>:

In Points of Error Twenty-Six through Twenty-Nine

94

(Restated), above, Appellant argues that the trial court erred in concluding that the State exercised its peremptory challenges against minority veniremembers Goodman, Kirkling, McQuuen, and Owens, respectively in a racially neutral manner where these findings are unsupported by the record. In Point of Error Thirty, Appellant argues that the trial court's findings of racial neutrality are invalid as the trial judge abdicated his constitutional responsibilities to scrutinize the State's "race-neutral explanations." Appellant argues that the trial judge, having not presided over the individual voir dire process of the prospective venire, abdicated his position of judicial impartiality by fully accepting the State's explanations for their strikes against the prospective minority veniremembers.

Appellant argues that in this case, deference cannot be given to the trial court's findings of racial neutrality in the State's exercise of peremptory strikes as the trial judge was not qualified to preside over the <u>Batson</u> hearing with "healthy skepticism." <u>Daniels v. State</u>, 768 S.W.2d at 317. Stated otherwise, Judge Wallace, having not observed the voir dire of the individual veniremembers, having not observed their demeanor, body language, responses, attitudes, and characteristics, could not assess or scrutinize the veracity of the prosecutor's explanations and observations regarding the reasons for striking these prospective minority veniremembers. Thus the trial court in this instant appears to have "considered itself bound to accept all of the prosecutor's explanations at face value." See, <u>People</u>

95

v. Hall, 672 P.2d 854 (1983) (cited by this Court, with approval,

Keeton v. State, 749 S.W.2d 861, 866 (Tex. Crim. App. 1988)).

A trial court's determination of a Batson challenge must

necessarily be based upon the facial validity of the prosecutor's

explanation **in light of the trial court's direct evaluation of**

**the venire**, their respective statements, responses and demeanor.

Young v. State, 848 S.W.2d 203, 205 (Tex. App. --Dallas, 1993,

pet. ref'd.). In Keeton v. State, supra, this Court opined:

> We read Batson to require the trial judge to assess the
> entire milieu of the voir dire objectively and
> subjectively. **The judge must consider his personal**
> **lifetime experiences with voir dire, comparing his**
> **[own] observations and assessments of veniremen with**
> **those explained by the State. . .** Ultimately, however,
> the trial judge must focus all of the information and
> intuitive perceptions he has gathered to determine
> whether the prosecutor's use of his peremptory
> challenges proceeds from a racially discriminatory
> motive.

Id., at 866 (emphasis added). Thus, the Court in Keeton, quoted

from the opinion of the Missouri Supreme Court in State v.

Antwine, 743 S.W.2d 51 (Mo. 1987), regarding the trial court's

role, as follows:

> The trial judge's task is extremely difficult. *One*
> *doubts that a prosecutor will admit that his decision*
> *to challenge a particular member of the venire was*
> *based on race. The court is left with determining from*
> *the totality of the circumstances whether an*
> *articulated neutral explanation is but an excuse for*
> *improper discrimination.* **Batson thus requires the trial**
> **judge to embrace a participatory role in voir dire,**
> **noting the subtle nuance of both verbal and nonverbal**
> **communication from each member of the venire and from**
> **the prosecutor himself.**

Keeton, 749 S.W.2d at 865 (emphasis added).

The appellate courts have recognized both implicitly and

96

explicitly that the trial judge must have witnessed the actual voir dire in order to judge the validity and credibility of the prosecutor's "race-neutral" explanations upon a Batson challenge. See, <u>Ramirez v. State</u>, 862 S.W.2d 648 (Tex. App.-Dallas, 1993, no pet.) (the trial judge was required to assess both objectively and subjectively the entire voir dire in determining whether the prosecutor's exercise of a peremptory strike was racially motivated); <u>Moss v. State</u>, 877 S.W.2d 895 (Tex. App.-Waco, 1994, no pet.).

Where a trial court accepts all of a prosecutor's explanations at face value, and cannot scrutinize their veracity, independently, a trial court abdicates its judicial responsibilities and violates a defendant's rights to due process. The trial court's actions in this case, its decision to preside over the <u>Batson</u> hearing constituted an abdication of its constitutional responsibilities and obligations. The findings of the trial court that the State's exercise of peremptory strikes was racially neutral was invalid, unconstitutional, and a violation of due process. <u>Keeton</u>, 749 S.W.2d at 865 (citing <u>People v. Hall</u>, 672 P.2d 854 (1983).

As noted above, "when the State strikes a juror on a basis that cannot easily or objectively be determined by the reviewing court, the basis must be substantiated by something other than the prosecutor's statement and that something must be on the record." <u>Yarborough</u>, 947 S.W.2d at 905 (citing <u>Roberson v. State</u>, 860 S.W.2d at 165.

97

In the instant case, the record is silent regarding the demeanor and body language and attitudes of the individual prospective veniremembers.  The record is devoid of any testimony or facts which support the prosecutor's bald assertions of racial neutrality in the exercise of peremptory strikes.  The trial court's finding of racial neutrality in each case, above, is clearly erroneous, unsupported by the record and unsupported by any of the trial court's own observations.

Based upon its earlier absence from the individual voir dire proceedings of the prospective veniremembers, the court in the instant case failed to scrutinize the State's "race-neutral" explanations for the exercise of peremptory challenges against prospective veniremembers Kirkling, Goodman, McQuuen, and Owens. Moreover, the trial court's "inattentiveness," to the State's explanations in the instant case served to "transform <u>Batson</u>'s protection against racial discrimination in jury selection into an illusion and the <u>Batson</u> hearing into an empty ceremony." <u>Daniels</u>, <u>supra</u>, 768 S.W.2d at 317.

The record reflects that Appellant timely objected to Judge Wallace's hearing of Appellant's <u>Batson</u> motion when Judge Wallace had not been present during the individual voir dire of the prospective minority veniremembers. (R.R. 22, pp. 12-13).  The trial court considered Appellant's objections and overruled the same. (R.R. 22, p 13).  Appellant has properly preserved this error. TEX. R. APP. P. 33.1(a).

The trial court erred by presiding over Appellant's <u>Batson</u>

98

motion when the trial judge had not presided over the individual voir dire of the prospective venire and could not independently ascertain the veracity or credibility of the prosecutor's explanations. The trial court's actions deprived Appellant of due process of law. U.S. CONST., Amends. V and XIV.

Appellant is entitled to a new trial. This Court should reverse Appellant's conviction, and order a new trial. U.S. CONST., Amends. V and XIV; <u>Batson v. Kentucky</u>, 476 U.S. at 100; <u>Hill v. State</u>, 827 S.W.2d at 864; <u>Whitsey v. State</u>, 796 S.W.2d at 716.

### POINT OF ERROR THIRTY-ONE (RESTATED)

THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF LAW, TO SUPPORT APPELLANT'S CONVICTION FOR CAPITAL MURDER WHERE THE RECORD FAILS TO SHOW THAT THE COMPLAINANT WAS ACTING IN HIS OFFICIAL DUTY AS A PEACE OFFICER AT THE TIME OF HIS HOMICIDE, AS ALLEGED IN THE INDICTMENT.

A person commits the offense of capital murder where, inter alia, he commits murder as defined under TEX. PENAL CODE ANN. § 19.02 (b) (1), **and** the person murders a peace officer or fireman who is acting in the lawful discharge of an official duty and who the person knows is a peace officer or fireman. TEX. PENAL CODE ANN. § 19.03 (a) (1) (Vernon 1994). The evidence in the instant case was insufficient, as a matter of law, to support Appellant's conviction for capital murder where the State failed to prove that the complainant was killed while acting in his official duty as a peace officer, as alleged in the indictment.

The State is required to prove each essential averment or element of an offense, as alleged in an indictment. <u>Doyle v.</u>

State, 661 S.W.2d 726 (Tex. Crim. App. 1983); Tew v. State, 551
S.W.2d 375 (Tex. Crim. App. 1977); Roberts v. State, 513 S.W.2d
870 (Tex. Crim. App. 1974); Romay v. State, 442 S.W.2d 399 (Tex.
Crim. App. 1969). The indictment returned against Appellant
alleged, in part, that he:

> " in Harris County, Texas, ANTHONY CARDELL HAYNES,
> hereafter styled the Defendant, on or about May 22,
> 1998, did then and there unlawfully, intentionally and
> knowingly cause the death of KENT KINCAID, hereinafter
> styled the Complainant, a PEACE OFFICER in the lawful
> discharge of an official duty, by SHOOTING COMPLAINANT
> WITH A DEADLY WEAPON, NAMELY, A FIREARM, knowing at the
> time that the Complainant was a PEACE OFFICER.

(C.R. I, p. 7).

The indictment properly stated a legal offense. TEX. PENAL
CODE ANN. § 19.03 (a)(1) (Vernon 1994); Hafdahl v. State, 805
S.W.2d 396 (Tex. Crim. App. 1990).  Thus, the State was required
to prove not only that the complainant was a peace officer, but
that the complainant was killed while discharging an official
duty.

In the instant case, the only evidence presented by the
State that the complainant was acting in his official capacity as
a peace officer at the time that he was killed was advanced via
two principal sources: testimony by the complainant's wife that
the complainant had identified himself as a police officer
shortly before he was shot, (R.R. 23, p. 118); and via the
testimony of Jeraldine Stewart that an off-duty Houston Police
Officer would be required to investigate a breach of the peace
such as the circumstances or events surrounding the damage to
complainant's windshield which allegedly occurred in the

100

underlying case immediately prior to the death of Kincaid. (R.R.
23. pp. 58-62).[11]

The probative nature of the evidence above, the testimony of
Mrs. Kincaid and Stewart, respectively, derives from the fact
that at first blush there could have been no other logical
explanation for the complainant's actions, immediately preceding
his death.  Thus, it would appear that the only reason that the
complainant stopped Appellant's vehicle immediately prior to his
death was to conduct a police investigation of the facts and
circumstances which resulted in the damage to complainant's
windshield.

However, Appellant notes that another equally plausible
inference from the evidence is raised via the application of TEX.
TRANSP. CODE ANN. §§ 550.022 and 550.023 (Vernon 1999). Thus when a
motorist is involved in a traffic incident wherein property
damage occurs, a motorist is required to stop and exchange
certain information. Id.  While the statute obviously applies to
the motorist causing the damage, the literal text of the statute
does not distinguish between a motorist who has caused an
accident and a motorist whose vehicle has been damaged by
another. In the instant case, the record fails to refute any
reasonable inference that the complainant, while identifying

---

[11] Mrs. Kincaid further stated that the complainant was
reaching into his back pocket at the time of the shooting. (R.R.
23, p. 119).  Thus, an inference was made that the complainant
was reaching into his pocket for his badge in order to display it
and properly identify himself to Appellant.

101

himself as a police officer, was not merely obeying the statutory requirements of Tex. Transp. Code Ann. §§ 550.022 and 550.023 following an accident involving damage to his vehicle.

In the instant case, Appellant asserts that there is some evidence that the complainant was not acting in his official capacity as a peace officer at the time of the shooting: Jeraldine Stewart testified that under the general orders of HPD, off-duty officers such as the complainant were directed not to effect arrests unless a breach of the peace was imminent. (R.R. 25, pp. 100-102).  There is nothing in the record of the instant case to suggest that the complainant believed that a breach of the peace was imminent. The record, at best, supports a finding that the complainant was attempting to exchange information with Appellant, as required by law.

The State bears the burden of proof regarding each and every element of an offense, beyond a reasonable doubt. Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); Wright v. State, 603 S.W.2d 838 (Tex. Crim. App. 1980). See also, Tex. Penal Code Ann. § 2.01 (Vernon 1994).

Proof beyond a reasonable doubt requires that the State produce evidence showing something more than a strong suspicion of the guilt of an accused. Humason v.State, 728 S.W.2d 363 (Tex. Crim. App. 1987); Oaks v. State, 642 S.W.2d 174 (Tex. Crim. App. 1982). A conviction can be sustained only by proof constituting a high degree of certainty. Urbano v. State, 837 S.W.2d 114 (Tex.

Crim. App. 1992).

This standard of "proof beyond a reasonable doubt" is a constitutional one, guaranteed by a citizen's federal constitutional right to due process of law. U.S. CONST., amends. V & XIV; <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

In reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See, <u>Emery v. State</u>, 881 S.W.2d 702, 705 (Tex. Crim. App. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); <u>Turner v. State</u>, 805 S.W.2d 423, 427 (Tex. Crim. App.), <u>cert</u>. <u>denied</u>, 502 U.S. 870, 112 S.Ct. 202, 116 L.Ed.2d 162 (1991); <u>Fluornoy v. State</u>, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. <u>Jackson v. Virginia</u>, <u>supra</u>, 443 U.S. at 319.

Stated otherwise, the standard of review on appeal is whether a rational trier of fact could have found each element of the offense beyond a reasonable doubt. <u>Id</u>.; <u>Geesa v. State</u>, 820 S.W.2d 154 (Tex. Crim. App. 1991); <u>McGoldrick  v. State</u>, 682 S.W.2d 573 (Tex. Crim. App. 1985); <u>Jackson v. State</u>, 672 S.W.2d 801 (Tex. Crim. App. 1984).

The legal sufficiency of the evidence is a question of law. The appellate court must review the entire record to determine whether the State has proven every element of the alleged crime beyond a reasonable doubt and not just provided a plausible explanation of the crime.  See Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989), overruled in part on other grounds, Geesa v. State, 820 S.W.2d at 161.

The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). A mere modicum of evidence is insufficient to uphold the finding of the trier of fact. Moreno v. State, 755 S.W.2d 866 (Tex. Crim. App. 1988).

The Jackson standard was established to ensure that innocent persons would not be convicted. "The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence." Jackson, 443 U.S. at 323, 99 S.Ct. at 2791 (quoted with approval in Malik v. State, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997)).

In the instant case, a rational trier of fact could not have found, beyond a reasonable doubt that the complainant was killed while discharging an official duty as a peace officer, as alleged in the indictment. Appellant challenges the legal sufficiency of the evidence in this point of error.  This Court should consider and dispose of this point of error even though reversible error may be based upon another point of error. Dunn v. State, 721 S.W.2d 325, 327 (Tex. Crim. App. 1986); Selman v. State, 663

104

S.W.2d 838 (Tex. Crim. App. 1984).

Where the evidence is legally insufficient to support a conviction, the proper remedy is for this Court to enter a judgment of acquittal, rather than a remand to the trial court. <u>Burkholder v. State</u>, 660 S.W.2d 540, 542 (Tex. Crim. App. 1983). Where the evidence is insufficient to sustain a conviction on appeal, double jeopardy bars a retrial.  <u>Burks v. United States</u>, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); <u>Greene v. Massey</u>, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

However, where the trial court's charge to the jury authorizes a conviction for a lesser included offenses upon which the evidence is sufficient to sustain a conviction, the appellate court may reform the judgment to reflect a conviction for the lesser included offense and must remand the cause for a new punishment trial. <u>Shute v. State</u>, 877 S.W.2d 314 (Tex. Crim. App. 1994); <u>Granger v. State</u>, 850 S.W.2d 513 (Tex. Crim. App. 1993).

The trial court's charge to the jury in this case authorized a conviction for the lesser included offense of murder. (C.R. III, p. 443). Thus, Appellant's remedy is for this Court to reverse his judgment of conviction for capital murder, to reform the judgment to reflect a conviction for the offense of murder, and to remand the cause to the trial court for a new punishment trial. <u>Shute</u>, <u>supra</u>; <u>Granger</u>, <u>supra</u>.

The evidence was insufficient to support Appellant's conviction for capital murder, as matter of law, where the State

105

failed to prove that the complainant was acting in his official
duty as a peace officer at the time that he was killed, as
alleged in the indictment.  This Court should reverse Appellant's
judgment of conviction, enter a judgment of guilt for the offense
of murder, and remand the cause for a new punishment trial. TEX.
CODE CRIM. PROC. ANN. art. 44.29(a) (Vernon Supp. 2000); TEX. R.
APP. ANN. 43.2(c) (Vernon Pamph. 2000); <u>Ortiz v. State</u>, 577
S.W.2d 246 (Tex. Crim. App. 1979).

POINT OF ERROR THIRTY-TWO (RESTATED)

**THE EVIDENCE IS INSUFFICIENT, AS A MATTER OF FACT, TO SUPPORT
APPELLANT'S CONVICTION FOR CAPITAL MURDER WHERE THE RECORD FAILS
TO SHOW THAT THE COMPLAINANT WAS ACTING IN HIS OFFICIAL DUTY AS A
PEACE OFFICER AT THE TIME OF HIS HOMICIDE, AS ALLEGED IN THE
INDICTMENT.**

A criminal conviction should be reversed where the evidence
is factually insufficient to support the trial court's judgment
of guilt. TEX. CODE CRIM. PROC. ANN. art. 44.25 (V.A.C.C.P.);
<u>Clewis v. State</u>, 922 S.W.2d 126 (Tex. Crim. App. 1996); <u>Bigby v.
State</u>, 892 S.W.2d 864 (Tex. Crim. App. 1994). In the instant
case, the evidence was factually insufficient to support
Appellant's conviction for capital murder where the State failed
to prove that the complainant was acting in his official duty as
a peace officer at the time that he was killed, as alleged in the
indictment.

In Point of Error Thirty-One, above, Appellant challenges
the legal sufficiency of the evidence to prove beyond a
reasonable doubt that the complainant was acting in his official
duty as a peace officer at the time that he was killed.  Under

106

Point of Error Thirty-Two, Appellant urges this Court to review the factual sufficiency of the evidence under the "greater weight and preponderance of the evidence standard, set forth by the Court in Clewis, above.

In Bigby v. State, supra, 892 S.W.2d at 872, this Court decided that it had jurisdiction to consider the factual sufficiency of evidence. This jurisdiction was similar to that vested in the courts of appeals. See, TEX. CONST. art. V § 6. Concerning this constitutional provision, this Court held in Clewis v. State, supra, 922 S.W.2d at 129, that the standard for review of the factual sufficiency of evidence to support a conviction was correctly set forth by the Court of Appeals in Stone v. State, supra, 823 S.W.2d 375. As stated:

> We hold that the proper standard of review for factual sufficiency of the elements of the offense is the one articulated by the Third Court of Appeals in Stone v. State. The Court of Appeals views all the evidence without the prism of in the light most favorable to the prosecution and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

Clewis v. State, supra, (citations omitted). Such a standard is said to harmonize both the criminal and civil jurisprudence of this State with regard to appellate review of questions of factual sufficiency. Id.

The Court in Clewis also opined:

> The Stone standard correctly imports the beyond-a-reasonable-doubt burden of proof. Implicit in the Stone analysis is that court's consideration of the higher burden of proof required for a criminal conviction. We interpret the Stone opinion as an attempt to apply the civil factual sufficiency standard of review to the evidence of the elements of a criminal

107