# United States District Court
# Southern District of Texas

## Case Number: H-05-3424

## ATTACHMENT

Description:

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __5__ of __6__

☐ Exhibit to: ____Vol I - Exh 4 cont'd____
number(s) / letter(s) _____

Other: ____Petition For Writ of____

____Habeas Corpus____

____— Exhibits in Support of____
____Petition____

offense by adapting it for the different burden of
proof at trial.  Accordingly, the <u>Stone</u> standard
assesses all the evidence impartially to determine if
it is factually sufficient for a factfinder to have
found appellant guilty beyond a reasonable doubt.

<u>Clewis</u>, <u>id.</u>, at 134.

This standard of appellate review is different than the
constitutional measure of the sufficiency of the evidence under
<u>Jackson v. Virginia</u>, <u>supra</u>, 443 U.S. 307.  Under <u>Jackson</u>, the
issue of sufficiency of the evidence is a question of law.
<u>Clewis,</u> 922 S.W.2d at 132.  Thus a determination that the
evidence is legally insufficient means that the case should never
have been submitted to the jury.  <u>Id.</u>, at 132-133.  This Court in
<u>Clewis</u> thus further wrote:

> In contrast, the issue of factual sufficiency is a
> question of fact.  A <u>Jackson</u> review, viewing the
> evidence in the light most favorable to the
> prosecution, is not a factual sufficiency review;
> rather it is an analytical tool used to determine
> whether there is a factual issue at all.  The <u>Jackson</u>
> standard gives full play to the responsibility of the
> trier of fact fairly to resolve conflicts in the
> testimony, to weigh the evidence, and to draw
> reasonable inferences from basic facts to ultimate
> facts.

<u>Id.</u>, at 133 (citations omitted).

As developed more fully in Point of Thirty-One, above, the
evidence fails to demonstrate that the complainant was acting in
his official capacity as a peace officer at the time that he was
killed. The record, at best, supports the inference that the
complainant was attempting to exchange information with
Appellant, as required of all citizens, by law.

Thus, the jury's finding of Appellant's guilt of the offense

of capital murder was against the greater weight and preponderance of the evidence, and was manifestly unjust. Appellant's remedy is for this Court to reverse his judgment of conviction upon this point of error, and remand for a new trial. Where a reviewing court has decided that the jury's verdict is against the greater weight and preponderance of the evidence, federal constitutional double jeopardy does not bar a retrial. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 653 (1982); Clewis, supra, at 126; Meraz v. State, 785 S.W.2d 146 (Tex. Crim. App. 1990).

The evidence in the instant case is factually insufficient to support Appellant's judgment of conviction for the offense of capital murder  where the State failed to prove that the complainant was acting in his official duty as a peace officer at the time he was killed, as alleged in the indictment.  This Court should reverse Appellant's judgment of conviction and order a new trial.  TEX. CODE CRIM. PROC. ANN. art. 44.29(a) (Vernon Supp. 2000); TEX. R. APP. ANN. 43.2(c) (Vernon Pamph. 2000).

### POINT OF ERROR THIRTY-THREE (RESTATED)

THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT THE JURY'S ANSWER TO SPECIAL ISSUE ONE WHERE THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WOULD CONSTITUTE A CONTINUING THREAT TO SOCIETY.

The evidence in this case is legally insufficient to support the jury's answer to Special Issue Number One (Special Issue No. 1) where the State failed to prove beyond a reasonable doubt that there is a probability that Appellant would commit criminal acts of violence and would constitute a continuing threat to society.

109

TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b)(1) (V.A.C.C.P.).
Thus, Appellant's sentence of death is not authorized as a
violation of his constitutional right to due process of law. U.S.
CONST., amends. V & XIV.

The trial court at the punishment phase of Appellant's trial
submitted a jury charge which contained the "continuing threat,"
Special Issue No. 1, and the mitigation special issue, Special
Issue No. 2, found in TEX. CODE CRIM. PROC. ANN. art. 37.071 §§
2(b)(1) and 2(e) (V.A.C.C.P.). (C.R. III, p. 450). The jury
answered the two Special Issues submitted to them (C.R. III, p.
458; R.R. 32, p. 3). Thereafter, the court pronounced
Appellant's sentence at death by lethal injection based upon
these two answers. Appellant's sentence of death violated
Appellant's federal constitutional right to due process of law.

While this Court has previously opined that TEX. CODE CRIM.
PROC. ANN. art. 44.251 does not require the Court to undertake a
sufficiency review of the jury answers to the special issue of
mitigation, see Prystash v. State, 3 S.W.3d 522, 536 (Tex. Crim.
App. 1999); McFarland v. State, 928 S.W.2d 482, 498-99 (Tex.
Crim. App. 1996); Eldridge v. State, 940 S.W.2d 646, 652-53,
(Tex. Crim. App. 1996), Appellant asserts that the future
dangerousness special aggravating issue is not excluded from a
sufficiency review. Soria v. State, 933 S.W.2d 46 (Tex. Crim.
App. 1996).

As the State failed to prove beyond a reasonable doubt that
there was a probability that Appellant would commit criminal acts

110

of violence and would constitute a continuing threat to society, under the mandate of TEX. CODE CRIM. PROC. ANN. art. 44.251 (V.A.C.C.P.), Appellant asks this Court to vacate his death sentence and remand to the trial court for further proceedings in accordance with TEX. CODE CRIM. PROC. ANN. art. 44.29(c) (V.A.C.C.P.).

The standard of review on appeal for legal sufficiency, specifically for the issue of future dangerousness, is whether a rational trier of fact could have concluded beyond a reasonable doubt that the defendant would commit criminal acts of violence that would constitute a continuing threat to society. Jackson v. Virginia, supra,2 443 U.S. 307; Soria v. State, 933 S.W.2d at 49; Moreno v. State, supra, 755 S.W.2d 866. Thus, as stated by the Court:

> [A]s an appellate court, our task is to consider all of the record evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict and to determine whether, based on that evidence and those inferences, a rational jury could have found beyond a reasonable doubt [the elements of the offense or the special issues under consideration].

Soria v. State, 933 S.W.2d at 46 (citing Jackson v. Virginia, 443 U.S. 307).

This Court opined further:

> Thus our review is a very limited one. We do not act as a thirteenth juror re-evaluating the weight and credibility of the evidence. Rather, we act only "as a final, due process safeguard ensuring ... the rationality of the factfinder."

Soria, id. (quoting Moreno v. State, 755 S.W.2d at 867). See also, Chambers v. State, 903 S.W.2d 21, 24-25 (Tex. Crim. App.

111

1995).

The standard of review set forth above is required to ensure that due process is safeguarded. See, Jackson v. Virginia, supra; Mullaney v. Wilbur, supra; In re Winship, supra. In the instant case, the record fails to support such a finding.

In this case, the State failed to prove beyond a reasonable doubt that Appellant would commit future acts of violence that would constitute a continuing threat to society.  The State's key witness at Appellant's punishment trial, Todd Miller, asserted that during the course of his interrogation of Appellant, immediately after Appellant's arrest, Appellant admitted his participation in three aggravated robberies. (R.R. 28, p. 8).

Chris Dickens testified during the punishment phase of Appellant's trial that during the evening of the underlying offense, as he stood in his driveway, a truck drove up. (R.R. 28, pp. 18-20).  The driver produced a chrome-plated 25 caliber handgun and took Dicken's wallet. (R.R. 28, p. 20).

While Dickens was never asked to identify Appellant in open court as the driver or robber, above, Dickens identified a tattoo on Appellant's arm and stated that it was similar to one he had observed on the driver's arm. (R.R. 28, pp. 19, 23).

Alexandro Aglesis testified during the punishment phase of Appellant's trial that he was visiting a friend in the complainant's neighborhood during the evening of the offense, (R.R. 28, p. 34), and as he approached his friend's home, a truck pulled up, and the driver demanded all of Aglesis' money. (R.R.

112

28, p. 35). Aglesis did not identify Appellant as the driver or as the robber. (R.R. 28, p. 38).

Thus, at best, the State's evidence at punishment regarding Special Issue One consisted solely of extraneous unadjudicated offenses loosely attributed to Appellant, that on the night of the alleged offense, Appellant attempted and/or robbed two individuals. Additionally, the evidence revealed that Appellant, born on January 22, 1979, (C.R. I, p. 7), was only nineteen years of age at the time of the alleged offense.

Given Appellant's youth and age at the time of the underlying offense, and given the lack of any verifiable evidence of Appellant's alleged commission of extraneous unadjudicated and uncharged offenses of robbery, it is not rational to conclude that he would constitute a continuing threat to society if sentenced to imprisonment for life.

Proof beyond a reasonable doubt requires that the State produce evidence constituting a high degree of certainty. Urbano v. State, supra, 837 S.W.2d 114. In this case, the punishment evidence admitted against Appellant at trial simply fails to rise to the level required so that a rational trier of fact could conclude, beyond a reasonable doubt, that Appellant would commit criminal acts of violence and would constitute a continuing threat to society.

The evidence in this case is legally insufficient to support the jury's affirmative answer to Special Issue 1 where the State failed to prove beyond a reasonable doubt that Appellant would

113

constitute a continuing threat to society, in violation of
Appellant's federal constitutional right to due process of law.
U.S. CONST., amends. V & XIV. Under the mandate of TEX. CODE CRIM.
PROC. ANN. art. 44.251 (V.A.C.C.P.), Appellant asks this Court to
vacate his death sentence and remand this case to the trial court
for further proceedings in accordance with TEX. CODE CRIM. PROC.
ANN. art. 44.29(c) (V.A.C.C.P.).

### POINT OF ERROR THIRTY-FOUR (RESTATED)

THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL CONSTITUTIONAL
RIGHTS TO DUE COURSE OF LAW BY SENTENCING APPELLANT TO DEATH
WHERE THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE JURY'S
ANSWER TO SPECIAL ISSUE ONE.

As discussed in Point of Error Thirty-Three, above, the
evidence in this case is legally insufficient to support the
jury's answer to Special Issue Number One (Special Issue No. 1)
where the State failed to prove beyond a reasonable doubt that
there is a probability that Appellant would commit criminal acts
of violence and would constitute a continuing threat to society.
TEX. CODE CRIM. PROC. ANN. art. 37.071 § 2(b)(1) (V.A.C.C.P.).
Appellant's sentence of death is not statutorily authorized.  The
trial court's pronouncement of Appellant's sentence at death
violated Appellant's constitutional rights to due process of law.
U.S. CONST., amends. V & XIV.

Appellant argues this Point of Error as an additional and
alternative argument to the Error presented in Point of Error
Thirty-Three, above. Appellant briefs this issue separately to
avoid and any question of multifariousness. TEX. R. APP. ANN.
38.1(e) (Vernon Pamph. 2000).

114

As discussed in Point of Error Thirty-Three, above, the trial court at the punishment phase of Appellant's trial submitted a jury charge which contained the "continuing threat," Special Issue No. 1, and the mitigation special issue, Special Issue No. 2, found in TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ 2(b)(1) and 2(e) (Vernon Supp. 2000). (C.R. II, pp. 458-459). The jury answered the two Special Issues submitted to them (C.R. II, pp. 458-459). Thereafter, the court pronounced Appellant's sentence at death by lethal injection based upon these two answers.

For the same reasons previously presented to show that the evidence was legally insufficient to support the jury's affirmative answer to Special Issue One, (Point of Error Thirty-Three, above), the trial court was not authorized to pronounce Appellant's punishment at death by lethal injection. As the State failed to prove beyond a reasonable doubt that there was a probability that Appellant would commit criminal acts of violence and would constitute a continuing threat to society, the jury's affirmative finding of Special Issue Number 1 was unsupported by the evidence. Consequently, the trial court's pronouncement of Appellant's punishment at death by lethal injection was also unauthorized and violated his federal due process rights. U.S. CONST., amends. V & XIV; see also, Jackson v. Virginia, 443 U.S. at 307; Mullaney v. Wilbur, 421 U.S. 684; In re Winship, 397 U.S. 358; Soria v. State, 933 S.W.2d at 46; Moreno v. State, 755 S.W.2d at 867; Chambers v. State, 903 S.W.2d at 24-25.

For all the reasons urged in Point of Error Thirty-Three, above, and under the mandate of TEX. CODE CRIM. PROC. ANN. art. 44.251 (V.A.C.C.P.), Appellant asks this Court to vacate his death sentence and remand the cause to the trial court for further proceedings in accordance with TEX. CODE CRIM. PROC. ANN. art. 44.29(c) (V.A.C.C.P.).

POINT OF ERROR THIRTY-FIVE (RESTATED)

THE 12-10 TEXAS CAPITAL PUNISHMENT SCHEME IS UNCONSTITUTIONAL, WHERE THE STATUTE CLEARLY SUBJECTS JURORS INCLINED TO ANSWER THE MITIGATION ISSUES FAVORABLY TO THE APPELLANT TO COMPROMISE THEIR VOTE IN FAVOR OF A DEATH SENTENCE, IN VIOLATION OF APPELLANT'S FEDERAL CONSTITUTIONAL RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT.

Appellant submits that the statutory jury charge at punishment which requires ten votes for the jury to return a negative answer to the first special issue and an affirmative answer to the mitigation issue violates the Eighth Amendment. This is so because the majority of the jury could improperly pressure an individual juror who is inclined to vote for life, to vote for death instead.

Thus Appellant argues in the instant Point of Error that a state may not establish a capital punishment scheme as that employed in the instant case, that runs the risk that jurors are required to agree unanimously upon the existence of <u>particular</u> mitigating circumstances before they can consider them in passing sentence. U.S. CONST., amends. VIII & XIV; <u>Mills v. Maryland</u>, 486 U.S. 367, 108 S.Ct. 1860, 100 L.Ed.2d 384 (1988); <u>McKoy v. North Carolina</u>, 494 U.S. 294, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990).

Recognizing that this Court has upheld the constitutionality

116

of the "10-12" rule in the face of several challenges, <u>Prystash</u> <u>v. State</u>, 3 S.W.3d at 536; <u>McFarland v. State</u>, 928 S.W.2d at 519; <u>Lawton v. State</u>, 913 S.W.2d 542, 558 (Tex. Crim. App. 1995); Appellant asks this Court to reconsider its position and find that the instructions on answering the special issues mislead the jury into believing that an affirmative answer should be given unless ten or more jurors agree to give a negative on.

Appellant asks this Court to reconsider its position in <u>Davis v. State</u>, <u>supra</u>, 782 S.W.2d at 221-222, and hold that the "10-12" rule is unconstitutional where the statute clearly subjects jurors, inclined to answer the mitigation issues favorably to Appellant, to compromise their votes in favor of a death sentence, in violation of Appellant's federal constitutional rights against cruel and unusual punishment. U.S. CONST., amends. VIII & XIV.

Appellant submits that whereas under Texas law, a capital murder juror undertakes no obligation to agree or disagree with his fellow jurors in order to fulfill his or her responsibility to reach a verdict, there is no such thing as a "deadlocked jury" or a "holdout juror" in a Texas capital murder prosecution. The law attaches a consequence of punishment immediately to every distinct combination of twelve individual verdicts. Thus, there is no justifiable reason to retain the "10-12 rule" or to inform the jury of only two of the three possible punishment results: (1) life imprisonment; (2) death; or (3) a mistrial resulting in an automatic sentence of life.  See, TEX. CODE CRIM. PROC. ANN.

117

art. 37.071 § 2(d),(e),(f), and (g) (V.A.C.C.P.).

The statutory "10-12 rule" or instruction violates the constitutional principles set out in <u>Mills v. Maryland</u>, <u>supra</u>, because in order for the jury to return answers to the special issues that would result in a life sentence: (1) at least ten jurors must vote "no" in answering the first special issue, (2) at least ten jurors must vote "no" in answering the second special issue, <u>or</u> (3) at least ten jurors must vote "yes" in answering the mitigation special issue. Appellant would urge that this statutory scheme violates the Eighth and Fourteenth Amendments to the United States Constitution because there is a reasonable probability that, under the present Texas capital sentencing scheme, all twelve jurors in a capital case could believe that a life sentence would be appropriate under state law, but because at least ten jurors could not collectively agree on their answers to any one of the special issues and because the jurors are not informed that their failure to answer any question would result in defendant's sentence of life, there is a constitutionally unacceptable risk that jurors would change their individual answers to return a verdict.

In the instant case, Appellant's counsel did not object to the constitutionality of the statutory "10-12 " instruction or the governing statute at trial. However, the error is not waived. As noted, the unconstitutionality of a statute is never waived and may be challenged at any time. <u>Rabb v. State</u>, 730 S.W.2d 751 (Tex. Crim. App. 1987).

The "10-12" Texas capital punishment scheme is unconstitutional where the statute clearly subjects jurors inclined to answer the mitigation issues favorably to Appellant to compromise their votes in favor of a death sentence, in violation of Appellant's federal constitutional rights against cruel and unusual punishment.  This Court should reverse Appellant's the sentence of death and order a new trial on punishment or enter a judgment and sentence for life, as required by law. TEX. CODE CRIM. PROC. ANN. art. 44.29(c) (V.A.C.C.P.).

POINT OF ERROR THIRTY-SIX (RESTATED)

THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO EFFECTIVE
ASSISTANCE OF COUNSEL AT TRIAL.

POINT OF ERROR THIRTY-SEVEN (RESTATED)

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR NEW TRIAL
WHERE THE TRIAL COURT VIOLATED APPELLANT'S RIGHTS TO EFFECTIVE
ASSISTANCE OF COUNSEL AT TRIAL.

The trial court committing reversible error during the punishment phase of Appellant's trial by forbidding Appellant's counsel to timely assert proper objections to the State's improper arguments.  The trial court's actions effectively denied Appellant effective assistance of counsel at trial, in violation of Appellant's constitutional rights. U.S. CONST., amends. VI & XIV; TEX. CONST. Art. I, § 10.

STATEMENT OF FACTS (POINTS OF ERROR THIRTY-SIX AND THIRTY-SEVEN):

At the conclusion of the punishment phase of Appellant's trial, and during the State's closing arguments to the jury, the prosecutor argued:

SMYTH: I'll bet the next time somebody comes or hollers

119

at you to give directions, you are going to think about
him, look at him.  He looks so innocent he couldn't
hurt anybody.  And that is what those three people that
. night thought.

        And before you ever walk up to another car --
I know, I would.  I'm not going to walk up.  I'm going to step
back and maybe I'll tell them the directions but I'm not
going --

NUNNERY: Your Honor, I'm going to go ahead and object
at this time to what he would do.  It is improper.  He
is testifying, giving his opinion.

(R.R. 30, p. 17).

    The trial court sustained Appellant's objection, instructed

the jury to disregard the State's comments and denied Appellant's

motion for a mistrial.  (R.R. 30, pp. 17-18).  The State

continued:

SMYTH: You know your whole life is going to change
because of this trial.  You know --

NUNNERY: I'm going to object to that comment, too, Your
Honor, that their whole life is going to change.  That's
improper jury argument.  That's him personalizing with
the jury, which is outside the record and improper jury
argument.

THE COURT: That's overruled.

(R.R. 30, p. 18).

    Immediately thereafter, the State informed the Court:

SMYTH: Thank you, Judge.  **Could I have additional time
to continue due to argument?**

NUNNERY: Your Honor, I'm going to object to his sidebar
remarks.

THE COURT: Have a seat!  Have a seat!  Have a seat!

NUNNERY: **Your Honor, can I have a ruling on my
objection?**

THE COURT: I said, sit down, Mr. Nunnery.

> **NUNNERY: Your Honor, I'm required by law to ask for a ruling for objection [sic].**
>
> **THE COURT: You have one second to sit down or I'll remove you from the courtroom.  Do we understand each other?**

(R.R. 30, pp. 18-19) (emphasis added).  Thereupon, Appellant's counsel resumed his seat.

Counsel for the State continued his argument and suggested that Appellant's counsel's repeated interruptions had caused the State to require additional time in which to argue; (R.R. 30, p.18); that Appellant's counsel's had attempted to hide and exclude evidence from the jury of the complainant's personality; (R.R. 30, pp. 53-54); encouraged the jury to speculate that Appellant had participated in other "extraneous" robberies, not introduced into evidence during Appellant's trial; (R.R. 30, p.59); and attempted to inflame the minds of the jurors with repeated references to the difficulties the widow of the complainant and her children, would face in the future without him. (R.R. 30, p. 64).

Upon completion of final arguments, and immediately upon the retiring of the jury, Appellant's counsel made an informal bill of exceptions. TEX. R. APP. P. 33.1(a) (Vernon Pamph. 2000). Appellant's counsel stated that he had been intimidated by the judge's threats during arguments to have him physically removed from the courtroom. (R.R. 30, pp. 66-67). Appellant's counsel reiterated that the State had presented numerous improper and highly prejudicial arguments and that he had failed to object to any of these arguments, as required, for fear that he would, in

121

fact, be removed from the courtroom and would not be permitted to plead for his client's life. (R.R. 30, pp. 66-67).

Appellant addressed this issue, once again, in a motion for new trial. (C.R. III, p. 522). During the hearing of Appellant' motion, Appellant's counsel at trial, Alvin Nunnery, testified that when he had attempted to assert timely objections, above, to the State's improper arguments and sidebar comments, that he was shocked and offended by the reaction of the trial court. As stated:

> " At the very moment the Court said, 'Have a seat, have a seat, have a seat,' I had no initial reaction or feeling. I was quite frankly flabbergasted and in a state of shock. In the 15 or 17 years when I practiced in Harris County, Texas, I have never, not on the county law [sic], not at the district level or in federal court ever had a judge talk to me as rudely as the Judge of the 263rd did at that moment."

(R.R. 34, p. 14).

Nunnery testified that when the Court announced, 'You have one second to sit down or I'll remove you from the courtroom,' and 'Do we understand each other?' that Nunnery felt "degraded, humiliated, threatened," numbed; he completely lost his composure. Thus, Nunnery failed to pursue any further objections for the duration of the trial. (R.R. 34, pp. 16-18).

Co-counsel for Appellant at trial, Robert A. Jones, also testified during the motion for new trial hearing and asserted that he believed that Nunnery had been intimidated and silenced by the trial court during the prosecutors' arguments. (R.R. 33, p. 29). Jones added that he also did not object to the State's improper arguments and comments during the closing arguments at

122

punishment, pursuant to the court earlier ruling of "one lawyer, one objection." Thus, Jones believed that only Nunnery could raise objections and pursue the court's rulings thereon during the instant phase of the trial. (R.R. 33, pp. 16, 27).

At the conclusion of the motion for new trial hearing, the court overruled Appellant's motion. (C.R. III, p. 542; R.R. 34, p. 62). (As a television news crew had videotaped the courtroom proceedings during the closing arguments of the punishment phase of Appellant's trial, (R.R. 33, pp. 21-23), a copy of the videotape was admitted into the appellate record as Defense Exhibit No. 7 (Motion for New Trial) (R.R. 33, p. 25)).

ARGUMENT AND AUTHORITIES

It is axiomatic that every person accused of a crime is guaranteed a fair trial. Henley v. State, 576 S.W.2d 66, 69 (Tex. Crim. App. 1978). As the United States Supreme Court and this Honorable Court have noted: "the atmosphere essential to the preservation of a fair trial - the most fundamental of all freedoms - must be maintained at all costs." Estes v. Texas, 381 U.S. 532, 540, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543 (1965); Taylor v. State, 420 S.W.2d 601,607 (Tex. Crim. App. 1967). In this regard, it is the duty of both the trial court and the prosecutors to conduct themselves so that to ensure that an accused receives a fair trial. TEX. CODE CRIM. PROC. ANN. art. 2.03(b) (V.A.C.C.P.).

In addition, a defendant has a federal constitutional right to effective assistance of counsel at trial, including the

punishment phase of a capital murder trial. U.S. CONST., amends. VI & XIV; TEX. CONST. Art. I, § 10; <u>Strickland v. Washington</u>, 466 U.S. 668, 685-686, 104 S.Ct. 2052, 2063-2064, 80 L.Ed.2d 674 (1984). A defendant may be denied the effective assistance of counsel through rulings made by the trial court.

Thus, where a trial judge denies a defendant the right to make a closing argument at trial, the defendant has been denied effective assistance of counsel. <u>Herring v. New York</u>, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975).

In the instant case, the trial court committing reversible error by forbidding Appellant's counsel to timely assert proper objections to the State's improper arguments and by threatening Appellant's counsel with eviction from the courtroom during the punishment phase of Appellant's trial. The trial court's actions effectively "muzzled" Appellant's counsel and deprived Appellant of his constitutional rights to effective assistance of counsel. (See, Motion for New Trial hearing, R.R. 33, pp.; R.R. 34, pp.)

This Court has opined that permissible jury arguments by the State generally fall into one of four categories: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from the evidence in the record; (3) pleas for law enforcement; or (4) responses to arguments made by opposing counsel. <u>Gaddis v. State</u>, 753 S.W.2d 396 (Tex. Crim. App. 1988); <u>Modden v. State</u>, 721 S.W.2d 859 (Tex. Crim. App. 1986). The State's arguments presented during the punishment phase of Appellant's trial, did not fall into any of the four enumerated

124

categories above and were improper.

As a general rule, an impermissible jury argument by the State may be cured if the defense promptly objects, and if the trial court admonishes the jury to disregard the argument. Fuentes v. State, 664 S.W.2d 333 (Tex. Crim. App. 1984); Koller v. State, 518 S.W.2d 373 (Tex. Crim. App. 1975). Generally, counsel is required to pursue an objection to its conclusion (a ruling by the trial court), or else the error is not preserved. TEX. R. EVID. 103(a)(1) (Vernon Pamph. 2000); TEX. R. APP. P. 33.1(a) (Vernon Pamph. 2000); Brooks v. State, 642 S.W.2d 791 (Tex. Crim. App. 1982).

The trial court committing reversible error by forbidding Appellant's counsel to timely assert proper objections to the State's improper arguments during the punishment phase of Appellant's trial. The trial court committing reversible error by depriving Appellant of effective assistance of counsel during the punishment phase of Appellant's trial.

By forbidding Appellant's counsel from raising proper and timely objections, by forbidding Appellant's counsel from seeking rulings on his objections, and by failing to rule upon Appellant's objections, respectively, the trial court also compromised Appellant's rights on appeal by sabotaging the ability of trial counsel to properly preserve error for appellate review.

A motion for new trial is a proper vehicle for raising issues involving the effectiveness of counsel at trial. TEX. R.

A<span>PP</span>. 21.3(h) (Vernon Pamph. 2000); <u>State v. Gonzales</u>, 855 S.W.2d

692 (Tex. Crim. App. 1993); <u>Reyes v. State</u>, 849 S.W.2d 812 (Tex.

Crim. App. 1993). At the conclusion of the motion for new trial

hearing in which Appellant raised this issue before the trial

court, the court overruled Appellant's motion for new trial.

(C.R. III, p. 542; R.R. 34, p. 62). Appellant has properly

preserved this issues for appeal. T<span>EX</span>. R. A<span>PP</span>. 21.3(h) (Vernon

Pamph. 2000).

When a trial court abandons its neutral status and takes up

the role of an advocate, the adversarial system cannot function

and fundamental fairness is lost. See, <u>Bethany v. State</u>, 814

S.W.2d 455, 462 (Tex. App. --Houston [14th Dist.] 1991, pet.

ref'd.). Likewise, where the court and the state interfere with

the ability of the accused' counsel to make independent decisions

about how to conduct the defense, the accused is denied his right

to effective assistance of counsel. <u>Strickland v. Washington</u>,

<u>supra,</u> 466 U.S. at 674. "Under such circumstances, the injury is

suffered not only by the accused, but by society as a whole."

<u>Bethany v. State</u>, 814 S.W.2d at 462.

The trial court committed reversible error by denying

Appellant effective assistance of counsel during the punishment

phase of trial. The trial court committed reversible error by

abandoning its neutral status and forbidding defense counsel the

ability to conduct a proper defense. The trial court committed

reversible error by forbidding Appellant's counsel from seeking

rulings on his objections and by failing to rule upon Appellant's

objections, respectively.  The trial court compromised Appellant's rights on appeal by sabotaging the ability of trial counsel to properly preserve error for appellate review.

The trial court erred in denying Appellant's motion for new trial where the trial court denied Appellant effective assistance of counsel at trial. U.S. CONST., amends. VI & XIV; TEX. CONST. Art. I, § 10. This Court should reverse Appellant's the sentence of death and order a new trial on punishment. TEX. CODE CRIM. PROC. ANN. art. 44.29(c) (V.A.C.C.P.); TEX. R. APP. ANN. 43.2(d); Howard v. State, 941 S.W.2d 102 (Tex. Crim. App. 1997).

### PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Appellant respectfully prays that the Court reverse his conviction and remand for new trial or, in the alternative, that the Court vacate his sentence of death and remand for a new punishment hearing.

Respectfully submitted,

Leora Teicher Kahn
Eleven Greenway Plaza #3010
Houston, Texas   77046
Tel.: (713): 222-1353
Fax:  (713): 621-6933
TBC: 11073100

ATTORNEY FOR APPELLANT
APPOINTED ON APPEAL

127

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of May, 2000, a true and correct copy of the foregoing Appellant's Brief has been delivered to counsel for the State by depositing it in the U.S. Mail, addressed to Hon. John Holmes, Harris County District Attorney, Appellate Division, 1201 Franklin, Houston, Texas.

Leora Teicher Kahn

128