# United States District Court
# Southern District of Texas

## Case Number: H-05-3424

## ATTACHMENT

Description:

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __2__ of _____

☐ Exhibit to: __Vol II__ __—__ __Exh. 6 cont'd__
number(s) / letter(s) _____

Other: __Petition For Writ of__

__Habeas Corpus__

__— Exh.bits in Support of__
__Petition__

aggravating special issue or issues. Instead, the so-called mitigation issue has become the State's favored tool for introducing non-statutory aggravating factors it need not have proved in relation to the other issues, free from any statutorily defined constraints, free from any troublesome jury instructions like those found in "weighing states," telling the jurors what may be considered aggravating or mitigating, free from any burden of proof and free from any possibility of review for sufficiency.

78.     Judge Baird lists, in his *Morris* opinion, other states which provide the meaningful appellate review he maintains the Supreme Court required in *Clemons v. Mississippi*[5] by considering whether the mitigating evidence was outweighed by aggravating evidence: *State v. Breton*, 663 A.2d 1026, 1039 (Conn. 1995); *State v. Richardson*, 462 S.E.2d 492 (N.C. 1995); *Sheridan v. State*, 852 S.W.2d 772 (Ark. 1993); *State v. Hernandez*, 562 N.E.2d 219 (111. App. 2 Dist. 1990); *Lowery v. State*, 547 N.E.2d 1046 (Ind. 1989) and *Fisher v. State*, 736 P.2d 1003 (Okl.Cr. 1987). *Morris*, supra, (slip opinion at 11 of opinion of Baird, J., joined by Overstreet, J., dissenting).

79.     The result of the code's failure to assign a burden of proof and a standard of proof regarding mitigation, even after this Court has assigned a burden of production, with no possibility of review for the defense, is that the death penalty will be applied arbitrarily, inconsistently and without clear preventive measures properly to select the persons who receive the penalty of death. The State escapes the burden it should have:

---

[5]494 U.S. 738,749, 1105 S.Ct. 1441. 108 L.Ed.2d725 (1990).

000040

that of proving the non-statutory aggravating circumstances comprised of "all of the evidence, including the circumstances of the offense" as the mitigation special issue requires, aggravating factors it had not necessarily proved up to that point.

80. The Supreme Court has held that the Eighth Amendment requires the State to prove the existence of aggravating factors during the capital punishment phase. See, e.g., *Walton v. Arizona*, 497 U.S. 639, 650, 111 L.Ed.2d 511 (1990) (State's "method of allocating the burdens of proof" during capital sentencing phase cannot "lessen the State's burden ... to prove the existence of aggravating factors"). In order to understand why *Walton* applies to the statutory "*Penry*" special issue, rather than solely to the aggravating factors under the other special issues, this Court must recognize that this special issue is a conduit for aggravating factors (victim impact evidence for example) as well as mitigating factors. By asking jurors to determine whether there are "sufficient ... mitigating circumstances," Art. 37.071, Sec. 2(e), V.A.C.C.P., the statutory special issue in effect tells jurors to consider any possible aggravating factors present in all the evidence, including the circumstances of the case, that may outweigh the mitigating factors. Although the statute does not explicitly use the term "aggravating circumstance," clearly that is how a reasonable juror would interpret the statute, and that is how the state argues the issue. Cf. *Johnson v. Texas*, 509 U.S. ___, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) (describing jurors' determination of answer to "future dangerousness" special issue to require balancing of aggravating and mitigating circumstances).

81. In *Walton v. Arizona*, supra, four members of the Supreme Court found

29

000041

constitutionally permissible the Arizona scheme that placed upon capital defendants the burden of establishing, by a preponderance of the evidence, the <u>existence</u> of mitigating circumstances <u>sufficiently substantial</u> to call for leniency in spite of the fact that the State had established (by what standard, the opinion did not say) the <u>existence</u> of one or more of ten statutorily defined aggravating factors.[6]

> "So long as a State's method of allocating the burdens of proof does not lessen the State's burden to prove .... the existence of aggravating circumstances, a defendant's constitutional rights are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency."

*Walton*, supra, 497 U.S. 639,650, 111 L.Ed.2d 511,526(1990).

82.    The Texas statutory scheme <u>does</u> lessen the State's burden to prove the existence of aggravating factors that fall outside the scope of the special issues that preceded the mitigation special issue.  (Again, victim impact evidence, which can only pertain to the mitigation special issue, is the most significant aggravating factor.)  If the defendant had to establish mitigating evidence sufficient to overcome or outweigh <u>only</u> the statutorily-defined aggravating circumstances, then the process would be similar to

---

[6]It is clear from a reading of *Walton* and also from this Court's opinions cited below in the brief that the State if it bears any burden at all under the mitigation special issue bears only the burden of proving the <u>existence</u> of facts which it may argue are aggravating (or which are defined by statute as aggravating, under the Arizona scheme) while the defendant bears the burden of producing the <u>existence</u> of facts <u>sufficient to warrant a sentence of life rather than death</u> or to call for leniency in the face of aggravating facts.

In fact this Court held in *McFarland* that the State bears no burden to prove aggravating factors because there <u>is</u> no burden of proof to assign regarding aggravating factors outside the other special issues in the Court's view, ". . . the special issue under Sec. 2(e) <u>does not involve consideration</u> of aggravating factors." *McFarland*, supra. slip opinion at 84.  (Yet a plurality of the Court in *Ford*, infra, found victim impact evidence, which is clearly an aggravating factor, to be relevant to the issue of moral blameworthiness under Sec. 2(e).  These two positions cannot be resolved without correcting one situation or the other.)

000042

Arizona's -and the defendant could obtain review of the question just as the Arizona

defendant did.  The syllabus of the *Walton* opinion states that the Arizona Supreme Court

"in an independent review" concluded not only that the evidence was sufficient to prove

the existence of both aggravating factors found by the trial court but also "agreed that

there were no mitigating factors sufficient to call for leniency..."  *Walton*, supra, Syllabus

at 111 L.Ed.2d 511, 519 (1990); 159 Ariz. 571, 589, 769 P.2d 1017, 1035 (1989).

83.    The Texas defendant, however, as the statute is now interpreted, may obtain

review of the sufficiency of the evidence to prove only the aggravating factors upon

which the State is assigned the burden of proof.  He may not, however, obtain this Court's

review of his proffered mitigation evidence to see if the Court agrees that it was not

sufficient to call for a life sentence.  See, *McFarland*, supra.

84.    The reality is that in Texas, the State submits in argument many aggravating

factors that are not set out in the statute (factors upon which it has no independent burden

of proof at guilt or at punishment) for the jury to weigh against the defense's mitigating

evidence.

85.    The mitigation special issue in Texas, by omitting a burden of proof

entirely, opens up the range of aggravating factors to include whatever the prosecution

wishes to argue from the evidence, yet places no burden of proof on the State with respect

to those factors; it prevents a reviewing court from evaluating the sufficiency of evidence

to prove those extra-statutory aggravating factors[7] and it prevents a rational, meaningful review of the sufficiency of mitigating evidence (even if the sufficiency issue is more precisely a determination whether the jury's answer was against the great weight and preponderance of evidence).

### Impossibility of Reviewing Mitigation under Texas Statute.

86.    To continue the argument he has already begun, Petitioner notes that members of this Court recently expressed the opinion in dictum (and have now specifically held, in *McFarland*, supra) that the mitigation special issues <u>does</u> impose, at least by implication, a burden of proof and a standard of proof on the capital defendant: he must establish sufficient mitigating facts to overcome the jury's prior answers to the special issue or issues by a preponderance of evidence. He may argue on appeal only that the jury's verdict was against the great weight and preponderance of evidence, yet he may not obtain review as to whether he met his burden. Petitioner cites the following excerpts from the dissenting opinion of Judge Clinton, joined by Judge Overstreet, in *Colella v. State*, 915 S.W.2d 834 (Tex.Cr.App. 1995):

> Appellant nakedly contends that the mitigating evidence was so compelling that we should reform his sentence to life imprisonment. Whether this is a "sufficiency" review appellant

---

[7]For instance in deciding that the Arizona "heinous and depraved" aggravating factor was not unconstitutionally vague and overbroad, the Supreme Court noted that the State court had <u>not</u> considered as aggravating the fact that the victim had not died for some time from his head wound, that he had floundered, blind in the desert for days before dying of dehydration, starvation and pneumonia. *Walton v. Arizona*, supra, 497 U.S. at 654 111 L.Ed.2d at 529 (1990).

000044

thus requests, as the majority characterizes it (slip op. at 16), or a claim that the verdict is against the great weight and preponderance of the evidence, depends upon who carries the burden of proof under Article 37.071, §2(e), supra. We have yet to resolve this question.

We came closest in *Barnes v. State,* 876 S.W.2d 316 (Tex.Cr.App. 1994), where we commented on the question in passing. *Barnes* had argued that the trial court erred not to instruct the jury at the punishment phase of his capital murder trial that the State had a burden to negate evidence proffered in mitigation of the death penalty. This Court held that the trial court had not erred because neither the Eighth Amendment, nor any state provision implementing it, had assigned such a burden to the State. In a footnote we remarked:

> "Currently, Article 37.071 mandates that a jury that finds beyond a reasonable doubt, as required by Subsection (c), that the special issues under Subsection (b) should be answered affirmatively must go on pursuant to Subsection (e) to decide whether mitigating circumstances nevertheless warrant a life sentence. However, neither Subsection (c) nor Subsection (e) itself expressly assigns a particular burden of proof on the issue of mitigation. It might be argued, although we certainly have no occasion here to hold, that Subsection (c) implicitly assigns the burden to the beneficiary of a finding of 'sufficient mitigating circumstances to warrant that a sentence of life . . . be imposed. Cf. *Arnold v. State*, 786 S.W.2d 295, at 298 (Tex.Cr.App. 1990) (State has burden of proof to establish harmless error under Tex.R.App.P. 81(b)(2), as beneficiary of the error). That, of course, would be the defendant."

Id., at n.17.

I agree with the *Barnes* footnote that Article 37.071, §2(e) assigns at least a burden of <u>production</u> to the defendant. Before a capital jury can even reach the §2(e) issue, it must have affirmatively found the existence of aggravating facts under Article 37.071, §2(b), for which the State expressly shoulders the burden of proof under §2(c). Once these facts have been established to the jury's satisfaction to a level of confidence beyond a reasonable doubt, the jury proceeds to the §2(e) special issue, <u>viz</u>: "whether.

000045

. . there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment <u>rather than a death sentence</u> be imposed." (Emphasis added.)  If there are <u>not</u> sufficient mitigating circumstances, the default position  is that a sentence of death will be imposed. This means that it is the capital defendant who stands to benefit from the presentation of mitigating evidence.

Because appellant is, thus, the beneficiary of mitigating evidence, the burden of production falls to him. *Arnold v. State*, supra.  Therefore, if the jury verdict is against him, Petitioner can only argue on appeal that the verdict was against the greater weight and preponderance of the evidence. *Cf., Meraz v. State*, 785 S.W.2d 146, 155 (Tex.Cr.App. 1990) (defendant has burden to prove affirmative defense of insanity, and appellate review of a verdict against him inquires whether verdict as against the great weight and preponderance of the evidence); *Bigby v. State*, 892 S.W.2d 864, at 875 (Tex.Cr.App. 1994) (same).   Strictly speaking, the majority errs to characterize Petitioner's contention  as a claim that the evidence is not "sufficient."

In any event the majority is correct that we cannot review the claim on appeal, however we characterize it.  Subsection 2(f)(4) of Article 37.071 defines as mitigating anything "that a juror might regard as reducing the defendant's moral blameworthiness."  (Emphasis added.)  Thus the statute assigns exclusively to the jury the task of evaluating what evidence proffered in mitigation of the death penalty is sufficient and what is not.  We cannot say that evidence was mitigating as a matter of law any more than we can say, in a non-capital case, that the evidence is insufficient to support a twenty year sentence, or that the greater weight and preponderance of the evidence establishes  that the proper sentence would have been  ten years, probated. There is simply no way for an appellate court to review the jury's normative judgment "that the evidence was not sufficient to warrant a sentence of life imprisonment."  Slip op. at 16.  Though it should not have reached this sub-contention in appellant's fifth point of error, the majority correctly disposes of it on the merits.

*Colella v. State*, supra, (Clinton, J., dissenting, joined by Overstreet, J.) (Emphasis in Opinion).

87.   The majority opinion in *Colella* began its answer to the Petitioner's

sufficiency argument on mitigation by stating that no burden of proof exists for either the

34

000046

State or the defendant "to disprove or prove the mitigation evidence." *Colella v. State*, supra, slip opinion at 16. Noting that there is no evidence that is <u>per se</u> mitigating, i.e., that a juror must view as reducing a defendant's moral blameworthiness under the Texas definition of mitigation, the majority declined to review the evidence on that issue to see if it supported the jurors' subjective determination that it did not warrant a life sentence. Id.

88.     Petitioner submits that if a listing of aggravating and mitigating factors, together with an assignment of a burden of proof and a requirement of special findings as to those factors, permits appellate review like the review in *Walton*, supra, and the Texas scheme with its lack of specific factors and its omission of burdens of proof forecloses appellate review, then the Texas procedure is unconstitutional on its face.

89.     Why should the reviewing court simply defer to the jury's conclusion "that the evidence was not sufficient to warrant a life sentence" without at the same time asking whether it is fair for such a state of affairs to exist?  The "our hands are tied" statement in the majority and dissenting opinions in *Colella* should be the beginning of a search for Eighth Amendment fairness -- not the end of the matter.

90.     It is rare, certainly, for the defense to ask for a burden of proof. Nevertheless, if the defense could <u>at the same time</u> require the State to shoulder a burden it should bear (in proving extra-statutory aggravating circumstances it offers in opposition to the mitigating circumstances) and thereby obtain review of the mitigation verdict similar to the kind of review available in Arizona, then he should welcome the burden.

35

He could then obtain review of the State's evidence offered as aggravating on the mitigation special issue as well, just as in *Walton* the reviewing courts assessed and approved the narrow application of the "heinousness" aggravating factor to the facts of the case.

91.     The Texas appellate courts now sit routinely as a "thirteenth juror" on review of factual sufficiency when the Petitioner claims he met his burden of proving some defensive issue; the appellate courts determine whether the verdict was so against the great weight and preponderance of evidence as to be manifestly unjust. E.g., *Meraz v. State*, supra, cited in the *Colella* dissent.

92.     This Court should have no more problem reviewing a mitigation verdict (based upon a properly drawn statute, assigning burdens of proof) than it does sitting as a thirteenth juror in the other cases reviewing the factual sufficiency.

93.     The *Colella* dissenting opinion noted that the Court could not "say that the evidence was mitigating as a matter of law" any more than it could say in a non-capital case that the particular punishment assessed was not supported by the evidence, while another particular punishment should have been assessed. Of course the answer should be, again, to assign a burden of proof to both the State and the defense and to begin the process of analyzing what the Court believes was shown to be, or not to be, sufficiently mitigating in a particular case, to overcome the aggravating factors.

94.     This Court does, after all, review the jury's "subjective" and "normative" judgment that the evidence was sufficient to prove the defendant's future dangerousness.

36

000048

After all, the answer is based upon evidence that any juror "might regard as increasing the likelihood," to the required degree, that the defendant will be a continuing threat. In the face of longstanding defense arguments that such a prediction is too subjective and too abstract to be proven or reviewed, the Court has taken on and performed the task of reviewing the sufficiency of evidence on that issue. The Court has not pronounced any factor as establishing "dangerousness as a matter of law," but it has been able to isolate and list factors to be used in assessing sufficiency. It could do the same for mitigating and aggravating circumstances. Arizona has done it by statute, as have other "weighing" states. This Court could do it by its opinions, as it has on the future dangerousness issue, or it could hold that the present statute as framed does not permit a fair review and is therefore unconstitutional, leaving the Legislature to formulate a structure that will permit review.

95.    This Court's review of "sufficiency" under a preponderance standard would not be similar to the setting aside of a term of years and assigning a different term of years as the dissent stated in *Colella*. Neither the State nor the defense bears any burden of proving the proper term of punishment in a non-capital case. The capital jury's mitigation verdict is "normative" only to the extent that it is informed by subjective analysis of the evidence. Every time this Court affirms or reverses a jury's verdict on future dangerousness, it reviews the jury's normative judgment and does not choose some other punishment it finds appropriate, it substitutes the proper <u>answer</u> to the punishment question and the law assigns the proper punishment to that answer. The same process

37

should apply to the mitigation special issue.

### Statute Requires Sufficiency Review of Mitigation Verdict.

96.     Article 44.251(a) of the Code of Criminal Procedure requires that this Court shall reform a sentence of death to a sentence of life imprisonment if the Court finds there is insufficient evidence to support "a negative answer to an issue submitted to a jury under Section 2(e), Article 37.071 of the Code.  Appellants have argued in the past that the statute mandates a sufficiency review of a negative § 2(e) answer.  This Court has answered by finding, essentially, that the Legislature in adding the mitigation-review was attempting to avoid a loophole by which an appellant who successfully challenged sufficiency under 2(e) could gain an entirely new trial, when in fact the intent of the statute when first passed was to avoid retrial.  By providing this "remedy" for a possible unwarranted mitigation verdict, the Court has held the Legislature did not mean to create any additional scope for review or relief for a capital defendant.  See, e.g., *McFarland*, supra, (concurring opinion of Keller, J.).

97.     Petitioner can hardly argue that the Legislature ever intended to enlarge upon the opportunities for a capital  Petitioner to gain review of any issue that would result in a life sentence where a death sentence had been pronounced.  He does argue that the Legislature having been once burned (by *Penry*) was twice shy, and realistically anticipated that some reviewing court (this Court or the Supreme Court) might one day decide that the Constitution required some kind of sufficiency review of the mitigation

38

special issue.

98.    That day has come, and the purpose of 44.251 may now be fulfilled. The scheme as it is now interpreted and implemented allows the State to offer and use extra-statutory aggravating factors without the traditional controls of a burden of proof or production and without any means of evaluation by review. The result is that rather than an opportunity for the defendant to gain a reprieve from death through an issue that "does not <u>involve</u> consideration of aggravating factors."[8]  The mitigation special issue is wide open for the unfettered introduction and argument of extra-statutory aggravating factors.

99.    Petitioner submits that as a consequence the Court should either reform his sentence to life imprisonment or remand his case for retrial of the punishment issue pursuant to a scheme that permits the proper assignment of the burden of production (if not proof) the proper introduction of evidence pursuant to that scheme followed by the meaningful review of the mitigation answer if it is negative.

---

[8]*McFarland*, supra, 928 S.W.2d at 520.

000051

## CLAIM II

**PETITIONER IS ENTITLED TO RELIEF IN THAT THE TRIAL COURT ERRED BY DENYING PETITIONER'S MOTION RELATING TO INFORMING THE JURY THAT THE FAILURE TO ANSWER A SPECIAL ISSUE WOULD RESULT IN A LIFE SENTENCE, IN VIOLATION OF PETITIONER'S RIGHTS AS PROTECTED BY THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION.**

100.    Petitioner raised this point by written pretrial motion, but it was denied. 2CR. 335-350.    Petitioner offered substantial mitigating testimony from several witnesses concerning his remorse, general good conduct, and good behavior while incarcerated.    He also offered evidence through cross-examination of a state's witness of the means available in the Texas prison system to prevent inmates from inflicting harm on other inmates and prison employees.

A.    Argument and Authorities.

101.    The jury in Petitioner's case was charged in accordance with Art. 37.071, Sec. 2(d)(2), V.A.C.C.P. that they could not answer the future dangerousness special issue "yes" unless they agreed unanimously and could not answer it "no" unless 10 or more of them agreed.    2 CR. 450.    They were also instructed in accordance with the statute, section (f)(2) that they could not answer the mitigation issue "no" except by unanimous agreement and could not answer "yes" unless 10 or more agreed.

102.    In accordance with the statute's prohibition in 37.071 Sec. 2(a), the jurors were never informed that the effect of their failure to agree on a "yes" or "no" answer

000052

under the above guidelines would be the automatic assessment of a life sentence under the mandate of Section 2(g) of the same statute.

103.   The State might suggest that this request is improper under this Court's decision in *Robertson v. State*, 871 S.W.2d 701 (Tex.Cr.App. 1993).  However, in *Robertson* the defendant requested a charge which would allow the jury to answer 'yes,' 'no' or 'we can't decide.'  That is not the request here.  Petitioner's requested charge sought to inform the jury of the effect of their failure to answer -- that Petitioner would receive a life sentence.  This Court in *Robertson* did cite *Nobles v. State*, 843 S.W.2d 503, 510 (Tex.Cr.App. 1992), for the proposition that informing the jurors of the effect of their answers would somehow cause them to "skirt this responsibility by failing to return a vote."

104.   The cases cited above somehow suggest that a vote of 6 'yes' and 6 'no' is not an answer, or is a "skirting of responsibility" by the jury.  Any such suggestion ignores the fact that each juror answers the issue, and a sentence is entered based upon those answers, whatever the combination.  If the answers are any combination other than 12-0 or 10-2, the verdict is one of life.  To contend that a juror should not be informed of the effect of anything less than a "12-0" or "10-2" vote is to continue to hide information from jurors against the great trend of our criminal system.

105.   This Court's consideration of the issue in *Nobles v. State*, 843 S.W.2d 503 (Tex.Cr.App. 1992) Petitioner respectfully submits, misses the point.  The Court equates a split vote with a juror who refuses to vote.  The jury is told what happens at a 12-0 and

41

000053

10-2 vote, and they are told that death cannot be imposed on this verdict unless the death vote is unanimous. They are simply left to wonder what happens to the case after a vote that did not produce a 12-0 or a 10-2 result.

106. Returning to the suspect logic in *Nobles,* at 509, n. 12, the Court notes that the instruction is not necessary anyway because "based upon what is usually told to the panel-members at voir dire, jurors are capable of surmising Article 37.071's mandated outcome", citing *Draughon v. State,* 831 S.W.2d 331, 337-38 (Tex.Cr.App. 1992). Apparently then it is acceptable for a juror to "surmise" something but not to be instructed on the point. With no citation to the record, it is not possible to know how the Court surmises what a juror surmised. Indeed, as argued in the foregoing point of error, it is quite consistent with common sense that a juror might fear there would be a mistrial if anything did not go according to the rules, and that a retrial might be impossible. What does the surmise do then to the fear of a juror skirting his responsibility to vote 12 'yes' or 10 'no'? The Court does not condemn the knowledge, just the instruction. These cases are not defensible on this point. Should those cases stand, they do not defeat Petitioner's simple request that the jury be informed what business it is about. The importance of providing information to the jury as to what each individual's vote means cannot be overemphasized. The foreman of the trial jury has stated that it would probably have made a difference to her if she knew that her vote alone could have secured a life sentence for Appellant. 42 R Exhibit 9a, p. 7

107. The statutory scheme encourages jurors to change their decisions, rationally

42

000054

reached on the basis of the evidence, and return a verdict contrary to their considered judgment, solely in order to satisfy a numerical balance they are led to believe they <u>must</u> satisfy in order to avoid an imagined retrial or even the release of the defendant.  The scheme is inherently flawed, and encourages the arbitrary and wanton imposition of the death penalty, in violation of both federal and state guarantees against cruel and/or unusual punishment. United States Constitution, Eighth Amendment.

108.    Petitioner asks for reversal based upon the unconstitutionality of this statutory scheme, and its unconstitutional application in his case.

43

## CLAIM III

### PETITIONER IS ENTITLED TO RELIEF IN THAT HIS TRIAL COUNSEL FAILED TO PROVIDE HIM WITH EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES CONSTITUTION.

109.    Petitioner was deprived of the effective assistance of counsel during his trial in violation of his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  If he had received effective assistance of counsel, there is a reasonable probability that the outcome of the trial would have been different.

### FACTS

110.    Kent Kincaid was an off-duty Houston police officer traveling with his wife in his personal vehicle, a jeep, on the way to a bar at approximately 11 pm on the evening of May 22, 1998, when his windshield was damaged.  He turned his car around to pursue a pickup truck whose occupants he believed responsible for the damage.  When the truck stopped he exited his vehicle and confronted the driver of the pickup, who remained inside the truck.  Mr. Kincaid said he was a police officer and reached toward the rear side of his waist.  At that point Petitioner fired one shot, killing Kincaid.  23 R 109-146.

111.    At trial, defense counsel objected to the admission of victim impact testimony from Mrs. Kincaid.  The trial court overruled the objection and allowed Mrs. Kincaid to testify concerning the impact her husband's death had on her and her little girls.  29 R 121-130.

44

000056

A.    Argument and Authorities.

### Counsel Prevented Petitioner from Testifying and Presenting the Only Two Possible Defenses Available to Him

112.   Appellant has never denied shooting Mr. Kincaid.  In fact he gave statements to the police in which he admitted the shooting.  25 R 200; 26 R 27. However, he has maintained that he did not know the decedent was a police officer, although he heard Mr. Kincaid say something about police, and the only reason he fired was because he thought that the man who was confronting him, Kincaid, was reaching for a gun.  As Appellant indicates in his affidavit, attached hereto as Attachment A, he was aware that he was the only one who could tell the jury that he fired because he thought, rightly or wrongly, that he was acting in self-defense.  He was the only one who could explain that at the time of the shooting, he did not know Mr. Kincaid was a police officer, although he did hear Kincaid say something to that effect.  He did learn that Mr. Kincaid was an off-duty officer from the television news, after the shooting, but before his arrest and subsequent interrogation.

113.   His lawyers did not attempt to present any evidence that Petitioner was acting in self-defense.  They attempted to show, through argument and cross-examination, that Petitioner might not have known Mr. Kincaid was in fact an officer, but they dissuaded Petitioner, the only one who could explain what was in Petitioner's mind at the time of the shooting, from testifying.

45

000057

114.   Petitioner is entitled to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner understands that he had the right to testify or not, but he decided to place his faith in his attorneys. Petitioner contends that any reasonably competent attorney could not but recognize that Petitioner's only hope of showing the jury that he was not guilty of capital murder was to convince them that he was not sure the decedent was an officer, and to explain to them that he was in fear, justified or not, when he fired.   On advice of counsel, Petitioner abandoned his only chance to tell the jury what really happened. No other defense was possible other than those which only the Petitioner could put forward because both pertained to his own perceptions and state of mind. By advising Petitioner not to testify, trial counsel deprived him of his only defenses and explanations of what happened that night. To advise a defendant not to proceed with his only available defenses in a capital murder case is to provide less than reasonably effective assistance of counsel. Counsel failed to pursue, by the best means possible, the only two defenses which Appellant could offer.

### Counsel Failed to Request a Limiting Instruction in Respect to Victim Impact Evidence Offered at Trial

115.   When the state offered through the decedent's wife's testimony concerning the effect which her husband's killing had upon her and her two young daughters, defense counsel, obviously aware of the powerful effect of such testimony, objected. His objection was overruled, and the testimony was admitted. Counsel was entitled to and

46

subsequently should have requested a limiting instruction to the effect that the victim impact evidence cannot be considered for any special issue other than the mitigation issue. *Johnson v. State*, ___ S.W.2d ___ (Tex. Crim. App. 1997); *Smith v. State*, 919 S.W.2d 96. However, no such limiting instruction was requested, and none was given. Counsel's failure to attempt to limit the damaging effect of this inflammatory testimony falls short of the standard expected of reasonably effective counsel. There can be no sound trial strategy for failing to get the limiting instruction in this instance, therefore, counsel's performance was deficient. *Young v. State*, 991 S.W.2d 835 (Tex. Crim. App. 1999).

116.    Petitioner's sentence should be overturned, and the Court should impose a sentence of life, or, in the alternative, order a new trial on punishment.

000059

## CLAIM IV

**PETITIONER IS ENTITLED TO RELIEF IN THAT HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED BY THE PROSECUTOR'S REPEATED IMPROPER ARGUMENTS TO THE JURY ON PUNISHMENT.**

117.    Upon commencing his final argument on punishment, the prosecutor told the jury that what he had to say to them "comes from the heart." Unnumbered Punishment Vol. at 15. Defense counsel did not object at that juncture. Shortly thereafter, the prosecutor told the jury, "I'll bet you the next time somebody comes or hollers at you to give directions you are going to think about [appellant]." He went on to say, "Before you ever walk up to another car, I know I would." *Id.* at 17. This time the defense objected until he obtained an adverse ruling, thereby preserving error. *Id..* at 17. The prosecutor went on to state, "You know your life will be changed because of this trial." Again the defense objected and preserved error. The court overruled the objection, and the prosecutor asked for more time to argue due to the defense objections. The defense objected to the sidebar, but the court, without ruling on the defense objection, instructed defense counsel to be seated. Counsel asked for a ruling but was told to remain seated lest he be removed from the courtroom. *Id.* at 18-19.

118.    Shortly thereafter, the prosecutor told the jury, "And you and I both know that Kent Kincaid would be alive today if he hadn't uttered those fateful words." *Id.* at 22. This time, mindful of the court's instruction, defense counsel did not object.

48

000060

## Argument and Authorities

119.    Texas law provides that argument is proper if it: 1) Summarizes the evidence at trial; 2) draws reasonable deductions from the evidence; 3) responds to arguments of defense counsel; and, 4) makes a plea for law enforcement. *Cooks v. State*, 844 S.W.2d 697 (Tex. Crim. App. 1992); *Sawyers v. State*, 724 S.W.2d 24 (Tex. Crim. App. 1986).

120.    It is not within the scope of permissible argument for counsel to inject his or her personal opinion about the case into argument. *Baldwin v. State*, 499 S.W.2d 7 (Tex. Crim. App. 1973). It is also improper for the prosecutor to inject personal opinion about the defendant's character. *Thomas v. State*, 693 S.W.2d (Tex. App.–Houston [14th. Dist.] 1985). Pronounced, persistent remarks may have a cumulative effect. *United States v. Hernandez*, 779 F. 2d 456, 460 (8th Cir. 1985). The prosecutions repeated efforts to inject personal opinion and vouch for its case were inflammatory and prejudicial. Petitioner's sentence should be overturned and the Court should impose a sentence of life, or, in the alternative, it should order a new trial on punishment.

49

WHEREFORE PREMISES CONSIDERED, Petitioner prays that this Court:

1. Vacate the Petitioner's conviction;

2. Vacate the Petitioner's sentence;

3. Grant a stay of Petitioner's execution pending final disposition of the petition;

4. Issue a writ of habeas corpus so that Petitioner may be relieved of his illegal restraint of liberty, such restraint being founded upon an unlawful and unconstitutional conviction and sentence;

5. Order and conduct an evidentiary hearing at which proof may be offered as to the allegations of the Petitioner;

6. Permit the Petitioner, who is indigent, to proceed without payment of costs or fees;

7. Compensate Petitioner for expenses incurred in the investigation of this case and in consulting and hiring experts and for other additional services and expenses required for presentation of testimony and evidence;

8. Allow Petitioner a period of time within which to file such amendments to this petition as might be necessary to bring all proper matters before this Court; and

50

000062

9.    Grant such other and further relief as this Court may deem appropriate.

Respectfully submitted by,

_____

DICK WHEELAN
Lyric Centre, Suite 900
440 Louisiana Street
Houston, Texas 77002
PHONE: (888)827-8800
FAX: (281)218-6666
TBN 21252600

51

# IN THE TWO-HUNDRED-SIXTY-THIRD JUDICIAL DISTRICT COURT
# FOR HARRIS COUNTY, TEXAS

*Ex Parte* ANTHONY CARDELL HAYNES §
§
Petitioner §
§
§

Cause No. 783872-A (73685)

## AFFIDAVIT

STATE OF TEXAS §
§
HARRIS COUNTY §

DICK WHEELAN is the Petitioner's counsel in this cause and has stated to me that all the facts contained herein are true and correct. Because of the time limitations and the great distance, Petitioner's counsel has not been able to get an affidavit signed by the Petitioner.

_____
DICK WHEELAN

SUBSCRIBED AND SWORN to before me on this _10_ day of September, 200_1_, to which witness my official hand and seal.

_Louise Steckler_

1-6-03
_____
My Commission Expires:

LOUISE STECKLER
NOTARY PUBLIC, STATE OF TEXAS
MY COMMISSION EXPIRES
JAN. 6, 2003

52

**000064**

**IN THE TWO-HUNDRED-SIXTY-THIRD JUDICIAL DISTRICT COURT
FOR HARRIS COUNTY, TEXAS**

*Ex Parte* ANTHONY CARDELL HAYNES

Petitioner

§
§
§
§
§
§

Cause No. 783872-A (73685)

# ATTACHMENT "A"

## SWORN AFFIDAVIT

I, Anthony Haynes, do solemnly swear that this affidavit is a true account of the event(s) about to be discussed.

My name is Anthony Haynes, and I am currently a Texas Death Row inmate. During my trial (August 16 - September 24 1999) certain things did not go the way I thought they would, and these circumstances are so significant that I feel they need to be gone over and discussed.

During the months preceding my trial I had an attorney named Robert Alton Jones. He had been on my case for over a year, but because of financial difficulties I was forced to get a court appointed attorney. In the end, I had Alvin Nunnery as my first chair attorney, and Robert Jones as second chair. In my mind, from the time Nunnery took over my case, there seemed a conflict of interest and a major difference in legal strategy concerning how to handle my trial. This concerned me greatly, but being not very knowledgable to the laws, I trusted what I was told and led to believe. From the start, I let it be known that I wanted to testify in my own behalf so that the court and jury would get to hear and understand my side of the story. I was not dis- couraged at all at this time. I was told that ▮▮▮▮ the district attorney might try to get me upset and get me to react negatively on the stand. I was then told that the decision was up to me. That was then. In the weeks leading up to vore dire (jury selection), I begin to trust in my attorneys' judgement more and more. They made everything sound like they had things handled properly so I had no reason not to trust them. They were professional, compitent attorneys and I put my future in their hands. I will admit that at times we did not always see eye to eye on certain things, and that there were many things that I did not completely understand, but because of what I thought was legal expertise, I let them convince me that they knew best.

My jury selection begin on August 16, 1999. Before we started to question the potential jurors we had a statement suppression hearing. Since I knew that it was a false and coersed statement, and also that my constitutional rights had been violated I was looking forward to getting on the witness stand and testifying. To me it would serve as a way to tell my side, and also to get me more prepared to testify at the guilty/innocent phase of trial. As I sat there listening to

the state's witness tell lie after horrible lie on me I took notes and mentally got ready to take the stand. In my mind it was already understand that I would testify. Before we got to this point in time, I had asked Mr. Nunnery to have my parents testify during this hearing because they knew of the events of the night inquestion. I thought that they would talk and then I would talk last. When the state rested I realized that Nunnery had no intention on calling my parents to speak so I told him that I was ready to take the stand. At this point he looked at me strangely and told me no. When I inquired as to why all he told me was that if I talked at this part of trial it would really hurt his defense stategy that he planned to use. When I asked about my parents testifying he told me to trust him. As much as I wanted to tell my side I trusted my attorney and let him convince not to say anything. It was not until after the entire trial was over that I realized he was not working in my best interests and that I should had told someone that he would not allow me to testify. It was too late though. This was only the first instance that this happened.

A similar event took place after the state rested in the guilty/innocent part of trial. Everyone who I talked to before trial knew that it was my wish to testify, and all they ever told me was to do my best to keep my cool. I even went as far as to ask my attorneys to let me know the type of questions to expect as not to be surprised by the district attorney. I should have known that something was very wrong because my requests were ignored. After the state rested in this phase of my trial and it was the defense's turn to tell its side my attorney (Nunnery) told me that I did not need to take the witness stand. I asked why not and was given the reason that the state did not prove its case and did not meet its burden of proof. Because of this, he said, I would do more harm than help. I questioned him more and he told me to trust in him. I did as told and then the defense rested.

Now, here I sit on death row, knowing that my testimony could have saved me fromthis fate. I wanted so badly to tell my side of the story to the court and jury. I wanted to let them know what really happened but it seems that it will never happen and that I will go to my grave and the truth will die with me. Because of my trustworthy

page 3

nature and naivety I took the advice of an attorney who did not have my welfare in mind or heart. This is crucial to my appeal and I need to be heard.

These event(s) stated in this sworn affidavit are true and honest.

This is a trustworthy account of everything mentioned.

Anthony Haynes Dec. 12, 200

12-12-2000

Anthony Haynes #999330
Texas Death Row
Terrell Unit
12002 FM 350 South
Livingston TX 77251
USA

0000