# United States District Court
# Southern District of Texas

## Case Number: _H-05- 3424_

## ATTACHMENT

Description:

☐ State Court Record ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part _3_ of _____

☐ Exhibit to: _Vol II - Exh 7, 8, 9,_
 number(s) / letter(s) _____

Other: _Petition For Writ of_

_Habeas Corpus_

_— Exhibits in Support of_
 _Petition_

TAB 7

Cause No. 783872-A

| EX PARTE | § | IN THE 263rd DISTRICT COURT |
| | § | OF |
| ANTHONY CARDELL HAYNES, Applicant | § | HARRIS COUNTY, TEXAS |

## RESPONDENT'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

The Court, having considered the applicant's application for writ of habeas corpus; the Respondent's Original Answer; the affidavits of Robert Jones and Alvin Nunnery; and official court documents and records in cause number 783872 and 783872-A; makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1.      On September 24, 1999, the applicant, Anthony Cardell Haynes, was convicted for the felony offense of capital murder, cause number 783872, in the 263rd District Court of Harris County, Texas. On September 22, 1999, the jury answered in the affirmative to the first special issue and in the negative to the second special issue, and the trial court assessed punishment at death (C.R. at 449, 458-9, 477).

2.      On October 10, 2001, the Court of Criminal Appeals affirmed the applicant's conviction in an unpublished opinion. *Haynes v. State*, No. 73,685 (Tex. Crim. App. October 10, 2001)(not designated for publication).

*First Ground – mitigation special issue*:

3.      The Court finds, based on the trial record, that the trial court overruled the applicant's motion to hold Sections 2(e) and 2(f), TEX. CODE CRIM. PROC. ANN. art. 37.071, unconstitutional on the basis that the statute was not specific regarding the burden of proof; that the jury was given no meaningful guidance in deciding the special

000147

issues; that the death penalty was imposed in a "wanton and freakish manner;" and, that the statue violated U.S. Const. amends. VIII and XIV (C.R. at 150-3; II R.R. at 5-12).

4.      The Court finds, based on the Court of Criminal Appeals direct appeal opinion, that the applicant did not challenge Texas' death penalty sentencing statute on direct appeal on the basis that it violated the Eighth Amendment because it omitted a burden of proof on the mitigation special issue and because it was incapable of meaningful appellate review. *Haynes v. State*, No. 73,685 (Tex. Crim. App. October 10, 2001)(not designated for publication).

5.      The Court finds that the Court of Criminal Appeals has held that a post-conviction writ of habeas corpus should not be used as a substitute for direct appeal. *Ex parte Nelson, Jr.*, No. 74, 818 (Tex. Crim. App. June 23, 2004)(not yet published); *Ex parte Townsend*, No. 74,764 (Tex. Crim. App. June 16, 2004).

6.      The Court finds that the Court of Criminal Appeals has held that the mitigation special issue is not unconstitutional as a violation of the Eighth Amendment because it omits a burden of proof requirement. *Hankins v. State*, 132 S.W.3d 380, 384 (Tex. Crim. App. 2004); 121 S.W.3d 748, 767 (Tex. Crim. App. 2003); *Valle v. State*, 109 S.W.3d 500, 504 (Tex. Crim. App. 2003); *Jackson v. State*, 33 S.W.3d 828, 840-1 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 1068, 121 S.Ct. 2221, 150 L.Ed.2d 213 (2001); *see also Barnes v. State*, 876 S.W.2d 316, 330 (Tex. Crim. App. 1994)(Eighth and Fourteenth Amendments do not require that a burden be placed on the State regarding mitigating evidence).

7.      The Court finds that the Court of Criminal Appeals has also held that the mitigation special issue does not violate the Eighth Amendment on the basis that meaningful appellate review of the jury's determination is impossible. *Resendiz v. State*, 112 S.W.3d 541, 549 (Tex. Crim. App. 2003); *Prystash v. State*, 3 S.W.3d 522, 535-6 (Tex. Crim. App. 1999).

000148

8.    The Court finds that the Court of Criminal Appeals has held that no appellate sufficiency review of the mitigation issue is required under TEX. CODE CRIM. PROC. ANN. art. 44.251. *Tong v. State*, 25 S.W.3d 707 (Tex. Crim. App. 2000); *McFarland v. State*, 928 S.W.2d 482, 498-9 (Tex. Crim. App. 1996).

## Second Ground – jury charge:

9.    The Court finds, based on the trial record, that the applicant did not object at the trial level on the basis that the jury was not instructed that a life sentence would result if the jury was unable to answer a special issue.

10.    The Court finds, based on the trial record, that trial counsel Alvin Nunnery informed the jury of the effect of its failure to agree to the answers to the special issues during punishment argument:

> But the law says, ladies and gentlemen, that you must weigh individually over the evidence and you must make the decision that you individually think is the appropriate one. And to that extent the law talks about unanimity. It takes ten not to do this and ten not to do that. But the bottom line is that the law does not require you to deliberate and deliberate until you get ten or deliberate until you get 12. But what the law requires you to do is to return to court in a manner and in such a way that your position is respected and recognized. I cannot tell you the result of the failure to agree but all I can do is tell you this, even if you don't agree he still either gets life or death. That does not change. There is no retrial. He either gets life or death based upon your finding of guilt in this case.

(XXX R.R. at 32-33).

11.    The Court finds that TEX. CODE CRIM. PRO. ANN. art. 37.071, § 2(a) prohibits the trial court and attorneys from informing a juror or prospective juror of the effect of the jury's failure to agree on a special issue.

12.    The Court finds that the Court of Criminal Appeals has repeatedly held that preventing a jury from knowing the effect of its answers to the punishment issues does not subject a defendant to cruel and unusual punishment under the Eighth Amendment.

000149

*Rousseau v. State*, 855 S.W.2d 666, 687 (Tex. Crim. App. 1993); *see also Davis v. State*, 782 S.W.2d 211, 221 (Tex. Crim. App. 1989), *cert. denied*, 495 U.S. 940 (1990) (informing jury of the effect of its answers would encroach upon the jury's fact-finding function and would be an "open invitation for the jury to avoid its responsibility and to disagree.").

*Third Ground - trial counsel:*

13.    The Court finds, based on the trial record, that the trial court appointed Robert Jones and Alvin Nunnery to represent the applicant in his capital murder trial (I C.R. at 5, 125).

### APPLICANT'S FAILURE TO TESTIFY

14.    The Court finds, based on the trial record, that in the applicant's oral confession to the police regarding the instant offense, the applicant admitted that he shot the complainant and believed the complainant when the complainant identified himself as a police officer (*State's Ex. 1H*; *State's Ex. 2H*).

15.    The Court finds, based on the trial record, that evidence was elicited at the guilt-innocence phase of the applicant's capital murder trial that the complainant, a Houston Police Department ("HPD") officer, was off-duty when the applicant shot out the complainant's windshield; that the complainant identified himself as a police officer and was reaching for a badge when the applicant shot him; that HPD policy requires both on-duty and off-duty police officers to take prompt and effective police action for any violations of the law committed in their presence; that an off-duty officer is considered to be discharging his official duty when he takes such action; that an HPD officer would be duty bound to investigate if he saw someone throw something from a moving vehicle that broke the windshield of another vehicle; and, that the complainant was performing official police action and was considered on duty when he stopped the applicant (XXIII R.R. at 60-8, 118-9; XXV R.R. at 37).

4

16.     The Court finds, based on the credible affidavits of trial counsel Robert Jones and Alvin Nunnery that trial counsel thoroughly advised the applicant of the potential risks and benefits of testifying during his capital murder trial; that trial counsel wanted the applicant to testify during the suppression hearing, but the applicant indicated that he was too nervous to testify; that the applicant's fear of testifying increased after the jury was impaneled; that the applicant decided not to testify during his capital murder trial; that trial counsels' assessment of the instant case lead them to the conclusion that it was best that the applicant not testify during the applicant's capital murder trial; that the applicant agreed with trial counsels' recommendation that it was best that the applicant not testify, and the applicant never suggested that he wished to testify; that trial counsel believed that the facts of the case negated the element of the applicant's knowledge of his victim's status; and, that trial counsel believed that the jury could have concluded that the applicant's self-defense claim was contrived at the last minute because the applicant's alleged defenses were not included in his confession. *Respondent's Original Answer, Exhibits A and B, affidavits of trial counsel Robert Jones and Alvin Nunnery, respectively.*

17.     The Court finds, based on the credible affidavits of trial counsel Robert Jones and Alvin Nunnery, that the applicant decided not to testify during his capital murder trial, and the applicant's decision not to testify was a voluntary and informed decision, intelligently made, with full knowledge of circumstances, options and consequences. *Jackson v. State*, 766 S.W.2d 504, 509 (Tex. Crim. App. 1985).

18.     The Court finds, based on the credible affidavits of trial counsel Robert Jones and Alvin Nunnery, that the applicant agreed to trial counsels' recommendation that the applicant not testify during his capital murder trial.

5

000151

*VICTIM-IMPACT TESTIMONY*

19.      During the punishment phase of trial, the State elicited testimony that the applicant robbed Chris Dicken of his billfold at gunpoint and tried to rob another man of his wallet prior to committing the instant offense; that the applicant assaulted his three-year-old sister and tried to kill the family dog in 1996; that the applicant acted violently and threatened to kill hospital staff at West Oaks Hospital in 1996; and, that the applicant displayed violent behavior at school and threatened to kill a police officer who was summoned to escort the applicant from school (XXVIII R.R. at 17-20, 32-9, 48-54, 116-120, 147).

20.      At punishment, the defense elicited evidence regarding the applicant's spiritualism and church attendance; that the applicant was accepted to Morehouse College; that the applicant was scared and remorseful after the instant offense; that the applicant was amiable and never in conflict with other jail inmates; that the applicant was a moral and model child who obeyed his parents; that the applicant was intelligent and made good grades; that the applicant earned many achievement awards and was never violent; that the applicant's father was active in the applicant's life; that the applicant was in ROTC in high school and received scholarships; that the applicant received therapy and counseling for several weeks at West Oaks Hospital; and, that, after an incident during the applicant's high school senior year when the applicant's father slapped the applicant in the face, the applicant's father found the applicant sitting in the living room holding a nine-millimeter service weapon and crying, "Dad, something bad is happening. I have bad thoughts" (XXVIII R.R. at 160-6; XXIX R.R. at 28, 39, 54, 67, 70-2, 85, 90, 94-5).

21.      On rebuttal at punishment, the complainant's widow, Nancy Kincaid, testified for the State that everyone liked the complainant; that the complainant helped people out;

6

000152

and, that the complainant was very handy.   When the State asked Nancy Kincaid whether the complainant was a kind person, defense counsel objected that the State's question was improper because it pertained to the complainant's character.   The trial court sustained the objection and instructed the jury to disregard the question.   The State then asked Nancy Kincaid about the complainant's relationship with his two daughters and the effect of the complainant's death on his two daughters and witness Nancy Kincaid.  Nancy Kincaid testified that the complainant spent a lot of time with his daughters and helped them with sports; that the complainant's younger daughter cried and had temper tantrums and stomachaches after the complainant's death; that the complainant's older daughter was very close to the complainant and was devastated by his death; that the older daughter cried every night for months; that Nancy Kincaid had depended on the complainant who was the major decision-maker in the family; and, that Nancy Kincaid missed the complainant (XXIX R.R. at 127-130).

22.     The Court finds, based on the trial record, that trial counsel not request that the trial court instruct the jury that victim impact testimony could only be considered with respect to the mitigation special issue.

23.     The Court finds that, in the absence of a request for a limiting instruction, the trial court's action in admitting evidence without limitation shall not be a ground for complaint on appeal. Tex. R. Evid. 105(a).

24.     The Court further finds that a trial court's refusal to give a limiting instruction, upon a proper request, is non-constitutional error subject to a harmless error analysis pursuant to Tex. R. App. P. 44.2(b); *Jones v. State*, 944 S.W.2d 642, 653 (Tex. Crim. App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *see also Ex parte Graves*, 70 S.W.3d 103, 109 (Tex. Crim. App. 2002)(Texas and federal courts have confined the scope of post-conviction writs of habeas corpus to jurisdictional or

7

000153

fundamental defects and constitutional claims); *McCain v. State*, 67 S.W.3d 204, 209 (Tex. Crim. App. 2002)(procedural errors or statutory violations are not fundament or constitutional errors that require relief on a writ of habeas corpus).

25.    The Court finds that the Court of Criminal Appeals has held that "victim impact and victim character evidence are admissible, in the context of the mitigation special issue, to show the uniqueness of the victim, the harm caused by the defendant, and as rebuttal to the defendant's mitigating evidence."  *Mosley v. State*, 983 S.W.2d 249, 262 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999).

26.    The Court further finds that the Court of Criminal Appeals has also held that victim impact evidence consists of evidence "concerning the effect that the victim's death will have on others, particularly the victim's family members." *Mathis v. State*, 67 S.W.3d 918, 928 (Tex. Crim. App. 2002(*quoting Mosley*, 983 S.W.2d at 261)).

27.    The Court finds, based on the applicant's habeas petition, that the applicant fails to cite authority supporting his ground for relief that the applicant was entitled to a limiting instruction that the victim impact evidence could be considered solely with respect to the mitigation special issue and that trial counsel were ineffective for failing to request such instruction.

28.    The Court finds, based on the trial record and the applicant's habeas application, that the applicant fails to demonstrate that he was harmed by trial counsels' failure to request a limiting instruction that the victim impact evidence could be considered solely with respect to the mitigation special issue.

29.    The Court finds that the applicant fails to demonstrate that the jury considered the victim-impact testimony in a context other than the mitigation special issue.

*Fourth Ground – State's punishment argument:*

8

000154

30.     The Court finds, based on the trial record, that evidence was elicited during the applicant's trial that the applicant had approached people under the pretext of asking for directions merely to get close enough to rob them (XXVIII R.R. at 18-19, 35-39).

31.     The Court finds, based on the trial record, that the State argued the following at punishment:

> But let's just look at May the 22nd, 1998, before Sergeant Kincaid was merciless[ly] killed. The defendant goes up. It's his ideal [sic]. He listens to the tape. He wants to get some gas money. Gas money for his truck. He could have asked his mom, he could have asked his dad. He'd rather steal. He'd rather take it from somebody else. He goes to some unknown person in a parking lot at Willowbrook Mall, hey, buddy, can you give me directions to so and so. The guy starts giving him directions. I'll bet the next time somebody comes or hollers at you to give directions you are going to think about him, look at him. He looks so innocent he couldn't hurt anybody. And that is what those three people that night thought.
>       And before you ever walk up to another car – I know I would. I'm not going to walk up. I'm going to step back and maybe I'll tell them the directions but I'm not going –

Trial counsel objected that the State's argument was improper because the prosecutor was giving his opinion. The court sustained the defense's objection, instructed the jury to disregard the State's argument, and denied the defense's motion for a mistrial. The State then argued, "You know your whole life is going to change because of this trial. You know—" Trial counsel objected to the State's argument and requested a ruling on the objection. The trial court judge ordered trial counsel to sit down without ruling on the objection, and the State continued with closing argument (XXX R.R. at 14-19).

32.     The Court finds, based on the trial record, that trial counsel lodged no further objections to the State's punishment argument, including the State's argument that "you and I both know that Kent Kincaid would be alive today if he hadn't uttered those fateful words" (XXX R.R. at 22).

9

000155

33.    The Court finds, based on the trial record, that trial counsel testified during the hearing on the applicant's motion for new trial that he made no further objections to the State's closing punishment argument, and that there was nothing so objectionable in the remainder of the State's argument that it was essential for trial counsel to object (XXXIV R.R. at 43).

34.    The Court finds that, on direct appeal of the instant conviction, the Court of Criminal Appeals overruled the applicant's point of error that the applicant was denied a fair trial based upon the judge silencing trial counsel's objections to the State's punishment arguments by ordering trial counsel to sit down and threatening to have counsel removed from the courtroom.  The Court of Criminal Appeals held that trial counsel was not denied the opportunity to object to allegedly improper arguments because the State made no objectionable arguments following the judge's instruction to trial counsel to sit down.  *Haynes v. State*, No. 73,685, slips op. at 19-22 (Tex. Crim. App. Oct. 10, 2001).

35.    The Court finds that the Court of Criminal Appeals has held that a defendant forfeits his right to complain about jury argument on direct appeal if the defendant fails to object to the allegedly improper argument at the trial level.  *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

36.    The Court finds that the Court of Criminal Appeal has held that there are four permissible areas of jury argument: summation of the evidence, reasonable deductions from the evidence, an answer to an argument by opposing counsel, or a plea for law enforcement. *Hughes v. State*, 878 S.W.2d 142, 157-158 (Tex. Crim. App. 1992) (op. on rehearing), *cert. denied*, 511 U.S. 1152 (1994); *Moody v. State*, 827 S.W.2d 875, 894 (Tex. Crim. App.), *cert. denied*, 506 U.S. 839 (1992).

37.    The Court finds that the Court of Criminal Appeals has held that a prosecutor may argue his opinions concerning issues in the case provided the opinions are based

10

000156

on the evidence in the record and do not constitute unsworn testimony." *McKay v. State*, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986).

000157

## CONCLUSIONS OF LAW

*First Ground – mitigation special issue:*

1.      Because the applicant did not challenge Texas' death penalty sentencing statute on direct appeal on the basis that it violated the Eighth Amendment because it omitted a burden of proof on the mitigation special issue and because it was incapable of meaningful appellate review, the applicant's first ground for relief alleging error on such basis need not be considered in the instant habeas proceeding or any subsequent proceeding. *Ex parte Nelson, Jr.*, No. 74, 818 (Tex. Crim. App. June 23, 2004)(not yet published); *Ex parte Townsend*, No. 74,764 (Tex. Crim. App. June 16, 2004).

2.      Alternatively, the applicant fails to show (a) that his constitutional rights were violated based on the lack of a burden of proof in the mitigation issue; (b) that the lack of such burden of proof prevents meaningful appellate review; (c) and that TEX. CODE CRIM. PROC. ANN. art. 44.251 requires a sufficiency review of a negative answer to the mitigation special issue. *See Jackson v. State,* 33 S.W.3d 828, 840-1 (Tex. Crim. App. 2000)(rejecting claim of alleged statutory infirmity when TEX. CODE CRIM. PROC. ANN. art. 44.251 is considered in conjunction with art. 37.071); *Resendiz v. State,* 112 S.W.3d 541, 549-50 (Tex. Crim. App. 2003)(affirming that mitigation issue is constitutionally sound regardless of lack of burden of proof and rejecting contention that lack of burden of proof in mitigation issue prevents meaningful appellate review statutory prohibition of informing).

*Second Ground – jury charge:*

3.      Based on the applicant's lack of objection to the trial court's failure to instruct the jury that a life sentence would result if the jury was unable to answer a special issue, the applicant is procedurally barred from advancing his habeas ground for relief claiming error on such basis. *Hodge v. State*, 631 S.W.2d 754, 757 (Tex. Crim. App. 1978).

12

000158

4.    In the alternative, the trial court properly did not instruct the jury as to the result of their failure to agree on a special issue. TEX. CODE CRIM. PRO. ANN. art. 37.071, § 2(a).

*Third Ground – trial counsel:*

5.    The applicant fails to show deficient performance, much less harm, with respect to the following allegations: that trial counsel prevented the applicant from testifying and presenting alleged defenses and that trial counsel failed to request a limiting instruction on victim impact evidence. *Strickland v. Washington*, 466 U.S. 668 (1984); s*ee Passmore v. State,* 617 S.W.2d 682, 686 (Tex. Crim. App. 1981)(holding that fact that another attorney might have pursued different strategy will not support finding of ineffectiveness of counsel).

6.    Additionally, trial counsel were not ineffective with respect to the applicant's decision not to testify during his capital murder trial when the applicant's decision was a voluntary and informed decision, intelligently made, with full knowledge of the circumstances, options, and consequences. *Jackson v. State,* 766 S.W.2d 504, 509 (Tex. Crim. App. 1985).

7.    Additionally, trial counsel were not ineffective with respect to the applicant's decision not to testify during the applicant's capital murder trial when trial counsel thoroughly advised the applicant of his right to testify and the applicant agreed with trial counsels' assessment that it was best that the applicant not testify. *See Duncan v. State*, 717 S.W.2d 345, 348 (Tex. Crim. App. 1986)(holding that the reasonableness of counsel's actions may be determined or substantially influenced by the informed strategic choices of a defendant).

8.    Additionally, the applicant fails to demonstrate that he was prejudiced by trial counsels' alleged ineffectiveness with respect to not calling the applicant to testify during the applicant's capital murder trial.

13

9.      Additionally, because the applicant fails to cite authority supporting his ground for relief that the applicant was entitled to a limiting instruction that the victim impact evidence could be considered solely with respect to the mitigation special issue and that trial counsel were ineffective for failing to request such instruction, the applicant's ground for relief is not properly before this Court for review. *Granger v. State*, 850 S.W.2d 513, 515, n.6 (Tex. Crim. App. 1993); *McFarland v. State*, 845 S.W.2d 824, 848-49 (Tex. Crim. App. 1992).

*Fourth Ground – State's punishment argument:*

10.     Because the applicant failed to object at the trial level when the State asserted during jury argument at punishment, "And you and I both know that Kent Kincaid would be alive today if he hadn't uttered those fateful words," the applicant is procedurally barred from advancing his ground for relief. *Hodge v. State*, 631 S.W.2d 754, 757 (Tex. Crim. App. 1978).

11.     Alternatively, because the Court of Criminal Appeals held on direct appeal of the instant cause that there were no objectionable punishment arguments by the State following the trial court's instruction to defense counsel to be seated, the applicant's fourth ground for relief alleging improper punishment argument by the State need not be considered in the instant habeas proceeding or any subsequent proceeding. *Ex parte Acosta*, 672 S.W.2d 470, 472 (Tex. Crim. App. 1984).

12.     Alternatively, the State's punishment argument that "you and I both know that Kent Kincaid would be alive today if he hadn't uttered those fateful words" argument was proper as a reasonable deduction from the evidence and plea for law enforcement. *See Finding of Fact 32*.

13.     Accordingly, it is recommended to the Texas Court of Criminal Appeals that relief be denied.

14

Cause No. 783872-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE 263rd DISTRICT COURT |
| | § | OF |
| ANTHONY CARDELL HAYNES,<br>Applicant | § | HARRIS COUNTY, TEXAS |

## ORDER

THE CLERK IS HEREBY **ORDERED** to prepare a transcript of all papers in cause no. 783872-A and transmit same to the Court of Criminal Appeals, as provided by Article 11.071 of the Texas Code of Criminal Procedure. The transcript shall include certified copies of the following documents:

      1.     all of the applicant's pleadings filed in cause number 783872-A, including his application for writ of habeas corpus;

      2.     all of the Respondent's pleadings filed in cause number 783872-A, including the Respondent's Original Answer;

      3.     this court's findings of fact, conclusions of law and the order in cause number 783872-A;

      4.     any Proposed Findings of Fact and Conclusions of Law submitted by either the applicant or Respondent in cause no. 783872-A;

      5.     all affidavits and exhibits filed in cause no. 783872-A;

      6.     the affidavits of Robert Jones and Alvin Nunnery;

      7.     the indictment, judgment, sentence, docket sheet, and appellate record in cause no. 783872, unless they have been previously forwarded to the Court of Criminal Appeals.

THE CLERK IS FURTHER **ORDERED** to send a copy of the court's findings of fact and conclusions of law, including its order, to applicant's counsel: Dick Wheelan; 440 Louisiana, St. 900; Houston, Texas 77002 and to Respondent: Lynn Hardaway; Harris County District Attorney's Office; 1201 Franklin, Suite 600; Houston, Texas 77002.

15

000161

BY THE FOLLOWING SIGNATURE, THE COURT ADOPTS THE RESPONDENT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW IN CAUSE NO. 783872-A.

SIGNED this _____ day of ___AUG 0 5 2004___, 2004.

_____
Presiding Judge
263rd District Court

16

TAB 8

✉ Send this document to a colleague                                    Close This Window ✖



# IN THE COURT OF CRIMINAL APPEALS

# OF TEXAS

---

NO. 59,929-01

---

EX PARTE ANTHONY CARDELL HAYNES

---

ON APPLICATION FOR WRIT OF HABEAS CORPUS

## FROM HARRIS COUNTY

---

*Per Curiam.*

# **O R D E R**

This is a post conviction application for writ of habeas corpus filed pursuant to the provisions of Article 11.071, Tex. Code Crim. Proc.

On September 24, 1999, applicant was convicted of the offense of capital murder. The jury answered the special issues submitted pursuant to Article 37.071, Tex. Code Crim. Proc., and the trial court, accordingly, set punishment at death. This Court affirmed applicant's conviction and sentence on direct appeal. *Haynes v. State*, No. 73,685 slip op. (Tex. Crim. App. Oct. 10, 2001)(not designated for publication).

Applicant presents four allegations in his application in which he challenges the validity of his conviction and resulting sentence. The trial judge entered findings of fact and conclusions of law, and recommended that relief be denied.

This Court has reviewed the record with respect to the allegations made by applicant. We adopt the trial judge's findings and conclusions, with the exception of Conclusion of Law number 11. Based upon the trial court's findings and conclusions and our own review, the relief sought is denied.

IT IS SO ORDERED THIS THE 6TH DAY OF OCTOBER, 2004.

Do Not Publish

TAB 9

You are instructed that when you deliberate on the questions posed in the special issues, you are to consider all relevant mitigating circumstances, or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed if any, supported by the evidence presented in both phases of the trial, whether presented by the State or the defendant.  A mitigating circumstance may include, but is not limited to, any aspect of the defendant's character, background, the personal moral culpability of the defendant or circumstances of the crime which you believe could make a death sentence inappropriate in this case.  If you find that there is a mitigating circumstance or circumstances that warrants life imprisonment rather a death sentence be imposed in this case, you must decide how much weight it/they deserve, if any, and thereafter, give effect and consideration to it/them in assessing the defendant's personal culpability at the time you answer the special issue.

You are instructed that mitigating evidence, or evidence of circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed if any, may be considered by you in answering either or both of the special issues under consideration.  If you determine, when giving effect to the mitigating evidence, if any, that a life sentence rather than a death sentence is an appropriate response, let your answers to the special issues reflect that.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all the evidence before you and in answering the special issues.

The State must prove Special Issue No. 1 submitted to you beyond a reasonable doubt, and you shall return a Special Verdict of "YES" or "NO" on Special Issue No. 1.

In deliberating on Special Issue No. 1 you shall consider all the evidence admitted at the guilt or innocence stage and the punishment stage of trial, including evidence of the defendant's background, character, the personal moral culpability or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You may not answer Special Issue No. 1 "YES" unless you agree unanimously.

You may not answer Special Issue No. 1 "NO" unless ten (10) or more jurors agree.

Members of the jury need not agree on what particular evidence supports a negative answer to Special Issue No. 1.

You are further instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you and in answering the Special Issue No. 1.

It is not required that the State prove Special Issue No. 1 beyond all possible doubt; it is required that the State's proof excludes all "reasonable doubt" concerning the defendant.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs.

Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

You are instructed that if you return an affirmative finding, that is a "YES" answer, to Special Issue No. 1, and only then, are you to answer Special Issue No. 2.

You are instructed that in answering special Issue No. 2, you

You may not answer Special issue No. 2 "NO" unless you agree unanimously, and you may not answer Special Issue No. 2 "YES" unless ten (10) or more of you agree to do so.

You need not agree on what particular evidence supports an affirmative finding on Special Issue No. 2.

In answering Special Issue No. 2 you shall consider mitigating evidence to be evidence that a juror might regard as reducing the defendant's moral blameworthiness, including evidence of the defendant's background, character, the personal moral culpability or the circumstances of the offense that mitigates against the imposition of the death penalty; or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

You are again instructed that you are not to be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling in considering all of the evidence before you in answering Special Issue No. 2.

you may consider evidence of an extraneous crime or bad act in assessing punishment even if the defendant has not yet been charged with or finally convicted of the crime or act. However, you may consider such evidence only if the extraneous crime or bad act has been shown by the State beyond a reasonable doubt to have been committed by the defendant or is one for which the defendant could be held criminally responsible.

The prosecution does not have to prove an extraneous or bad act beyond all possible doubt. The prosecution's proof must exclude all "reasonable doubt" concerning the extraneous crime or bad act.

A "reasonable doubt" is a doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case. It is the kind of doubt that would make a reasonable person hesitate to act in the most important of his own affairs. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.

Therefore, if you find and believe beyond a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may consider such evidence in assessing the defendant's punishment. However, if you have a reasonable doubt that the defendant committed an extraneous crime or bad act or could be held criminally responsible for an extraneous crime or bad act, then you may not consider such evidence in assessing punishment.

Under the law applicable in this case, the defendant, if sentenced to a term of life imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned on a life sentence might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment in the Institutional Division of the Texas Department of Criminal Justice for life, he will not become eligible for parole until the actual calendar time served equals forty (40) calendar years, without consideration of good conduct time. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment for life, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

You are instructed that the defendant may testify in his own behalf if he chooses to do so, but if he elects not to do so, that fact cannot be taken by you as a circumstance against him nor prejudice him in any way.  The defendant has elected not to testify in this punishment phase of trial, and you are instructed that you cannot and must not refer to or allude to that fact throughout your deliberations or take it into consideration for any purpose whatsoever.

SPECIAL ISSUE NO. 1

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Anthony Cardell Haynes, would commit criminal acts of violence that would constitute a continuing threat to society?

ANSWER

We, the jury, unanimously find and determine beyond a reasonable doubt that the answer to this Special Issue is "YES."

_Sharon Sfcik-Malozzo_
Foreman of the Jury

OR

We, the jury, because at least ten (10) jurors have a reasonable doubt as to the probability that the defendant, Anthony Cardell Haynes, would commit criminal acts of violence that would constitute a continuing threat to society, determine that the answer to this Special Issue is "NO."

_____
Foreman of the Jury

In the event that the jury has answered Special Issue No. 1 in the affirmative, and only then, shall the jury answer Special Issue No. 2 to be found on the following page.

SPECIAL ISSUE NO. 2

Do you find from the evidence, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, Anthony Cardell Haynes, that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed?


ANSWER


We, the jury, unanimously find that the answer to this Special Issue is "NO."


_Sharon Sefcik-Malgassi_
Foreman of the Jury


OR


We, the jury, because at least ten (10) jurors find that there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed, find that the answer to this Special Issue is "YES."


_____
Foreman of the Jury


After the jury has answered each of the Special Issues under the conditions and instructions outlined above, the Foreman

During your deliberations upon the "Special Issues," you must not consider, discuss, nor relate any matters not in evidence before you.  You should not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence.

In arriving at the answers to the "Special Issues" submitted, it will not be proper for you to fix the same by lot, chance, or any other method than by a full, fair and free exchange of the opinion of each individual juror.

After the reading of this charge, you shall not be permitted to separate from each other, nor shall you talk with anyone not of your jury.  After argument of counsel, you will retire and consider your answers to the "Special Issues" submitted to you. It is the duty of your Foreman to preside in the jury room and vote with you on the answers to the "Special Issues" submitted.

You are the exclusive judges of the facts proved and the credibility of the witnesses and the weight to be given to their testimony, but you are bound to receive the law from the Court which has been given you and you are bound thereby.

**F I L E D**
CHARLES BACARISSE
District Clerk

SEP 2 2 1999

Time: _9:38 AM_

Harris County, Texas

By _____
              Deputy

_____
Jim Wallace, Judge
263rd District Court
Harris County, TEXAS