# United States District Court
# Southern District of Texas

## Case Number:  H-05-3424

## ATTACHMENT

Description:

☐ State Court Record        ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __4__ of _____

☐ Exhibit to: __Vol III,  Exh. 34, 35, 36, 37, 38, 39,__
   number(s) / letter(s) __40, 41, 42, 43, 44, 45, 46,__
   __47, 48, 49__

Other: __Petition For Writ of__

__Habeas Corpus__

__— Exhibits in Support of__
   __Petition__

TAB 33

## DECLARATION OF DEBRA SWISHER

My name is Debra Swisher and I am 45 years old. My address is 2007 Hammerwood, Missouri City, Texas 77489.

I was a friend of Anthony Haynes. I used to own a restaurant, RonDee's Diner, in the 2300 block of te Texas Parkway. I closed it in 1998. Before the incident in which Anthony was charged with the killing of the police officer, Anthony would come in to the restaurant and talk to me. I liked him a lot. He was soft-spoken, intelligent, polite, and often gave me a hug when he left.

For a period of about six months, before he graduated from high school, Anthony would come in to the diner about twice a week. He wanted to talk, about school and his fellow students, just general stuff. He would talk about his teachers, his favorites and his not- so-favorites. I never knew him to be disrespectful or violent or to be involved in drugs, and I never saw him in any angry outbursts.  I was always glad to see him come into the restaurant.

I knew Anthony when he was in high school and after he graduated  in 1997. When he was in high school, I was aware he was in ROTC as he would tell me about it.

When I heard about the crime, I was shocked.  I did not attend the trial. Based on what I know about Anthony, I believe he would be a very low risk of committing future acts of violence or acts endangering the safety of others.  This is my belief now and it was my belief at the time of Anthony's trial.

At the time of the trial, I was never contacted by Anthony's defense attorneys or his investigators. Neither of the defense attorneys spoke to me.  If the defense attorneys or the investigator had talked to me at the time of the trial, I would have told them what I have said in this declaration. Had they asked me to be a witness for Anthony at the trial. I would have been willing to do so.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _August 24_, 2005 in _Houston_, Texas.

_Debra H. Swisher_
832- 289- 6277 cell
713 -704- 4033 Office
281- 439- 2321 home

TAB 34

## SHELIA HAYNES

My name is Shelia Harness.  My date of birth is January 8, 1960.  I am the aunt of Anthony Haynes, the younger sister of his father Donald Harness.

I have lived in Houston since 1970.  Anthony was born in 1979.  I lived near Anthony and his father Donald and his mother Patrica.  Donald eventually got custody of Anthony and I had a lot of contact with him as he grew up.  Anthony was very smart and well behaved.  I do not know his friends, but I was aware of his drug use.  Anthony and I were very close before this incident.  I think that the problems started when Anthony began to hang around with the wrong crowd.

My opinion is that Anthony is at very low risk of committing future dangerous acts.  I thought that at the time of his trial and is my opinion now.

At the time of his trial I was talked to by Anthony's attorney.  I relayed to him the opinion stated above.  I would have been willing to be a witness at his trial if I had been asked.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on
July 30_____, 2005 in ___Houston___, Texas.


_Anthony Hayne_ _____

TAB 35

## SGT. ALLEN HARRIS

My name is Sgt. Allen Harris. I am 59 years old. I live at 3810 Watershoal Lane, Missouri City, Texas 77459. I am the deputy director of the ROTC program at Dulles High School.

I first met Anthony when he came into the ROTC program as a freshman. He loved ROTC. He saw it as a way to make a mark. He once said that one of the things he was interested in was flying. He was aiming at attending the Naval Academy.

In the ROTC program, Anthony was on the drill team and eventually became an officer in the program. There are about 125 students in the program. In freshman year, the emphasis is on doing what you are asked to do. There is also a summer leadership school, which Anthony completed. In the second year, there are more leadership responsibilities. Only 50 of the 125 students go to the summer leadership program.

Of the 125 students in the program, about 25 to 30 become officers. Anthony came through well and he was made an officer. He had some problems but I always had a good student-teacher relationship with him. Anthony loved the structure of ROTC and loved the program because of its consistency. I saw Anthony grow up and mature in the program.

I remember one day in November of 1996 when Anthony got into a shouting match with my boss, Col. Davis. I got between them and I asked Anthony, "What are you doing?" I then took him aside. Anthony said "You're right." I came at him a different way than Col. Davis, because I wanted him to be successful. Anthony then went to the administration office voluntarily. This is the only incident I saw when Anthony was not well behaved. After that, Col. Davis saw Anthony differently. It made him see Anthony negatively. Col. Davis handled the incident differently than I would have.

I am aware that after this incident, the kids were setting up a military ball and Col. Davis said he was going to exclude Anthony from it. We worked it out so that Anthony's grandmother and his mother Pat would accompany him to the Military Ball, as he wanted to attend very much.

Anthony would hang out mainly with other ROTC cadets. On the whole, Anthony did very well in the Dulles High ROTC program. He became an officer, and he had good honors. Out of all the students in ROTC, at the time he graduated, Anthony was fourth best in the program.

The BOOST program is a program to enable minorities to become officers in the Navy, to get them ready. BOOST is a pre-academy program. I did not want Anthony to go into the BOOST program, but Anthony wanted to attend the Naval Academy. Anthony needed a little help to get his grades up, and I thought a learning center would have been better. In the BOOST program, if a person doesn't do everything right, they are out. Anthony tried to make a good decision.

I saw Anthony the week he came back from the BOOST program. He told me he did not make it in the program. But he said he had another option of attending Prairie View A & M which had a Navy program. His goal was to go to Prairie View and prove himself.

I spoke with both of Anthony's defense attorneys on the phone and told them

essentially what I have said in this declaration. I also talked with two persons who were probably from the prosecution, as they told me "We have Col. Davis." Since they had Col. Davis, they said they would not call me as a witness at the trial. I think it was a prosecution investigator that called me first, then a prosecutor. No one asked me to be a witness for Anthony, but I would have been willing to be a witness if I had been asked. At the time of the trial, my feeling was that the act that he was charged with, the killing of the police officer, was totally out of character from the Anthony I knew. I did not see anything like what he was charged with in his character. At the time of the trial, it was my opinion that Anthony was a very low risk for committing future violent acts, and that is my opinion now. I would have told this to the jury at Anthony's trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on 27 June, 2005 in Missouri City, Texas.

Allan J Harris

TAB 36

## EARL WASHINGTON, SR.

My name is Earl Washington, Sr. I am 50 years old. I live at 9811 Bent Spur Lane, Houston, Texas 77064.

I am a firefighter in the Houston Fire Department, where I have been for 27 years. I have known Anthony Haynes since he was born, right up until the incident when he was charged with killing the police officer. Anthony's father and I used to work in the same department.

Anthony's father, Donald Haynes helped me get a job in the Department, and we have been good friends since. My son is 20 years old, and his name is Earl Washington, Jr. He is 4 or 5 years younger than Anthony. I have known Donald since before Anthony was born, and I also know Patrika, Anthony's mother. I used to live in Missouri City, and we were in the same neighborhood.

I treated Anthony like my own son, and I was like a second father to him. My son and Anthony played T-ball together, and I would take them to games. Anthony was very interested in sports, such as flag football. We would have birthday parties and go on out-of-town trips, such as a visit to 6 Flags Amusement Park.

We all went to church together, to New Faith Baptist Church. Anthony would regularly attend church with his father. Anthony attended Sunday school and was in the youth ministry, an after-church program. Instead of hanging around, he was in various programs. When I moved from Missouri City, I did not change churches, so I kept in contact with Anthony and his dad.

At school, Anthony joined the ROTC, and he spoke well of it. His aim was to obtain a navy scholarship. Anthony did tell me of a blow-up at school. I met Col. Davis after the incident, and in court. He spoke highly of Anthony at the court. He said he had been trying to persuade Anthony to pursue higher degrees and extend his scholarship. Col. Davis said he could not believe what happened in regard to the killing of the police officer. At court, Col. Davis' opinion of Anthony was twisted around.

I think Anthony became involved with the wrong people. I saw his friends but I did not talk with them. I assumed they were good kids. Anthony played football at Dulles High School. He was in the BOOST program later.

Anthony was a good kid. He was respectful to adults, and would always say "Yes sir" or "No sir." He would cooperate.

I did attend two days of the trial. I saw some officers in uniform, 2 or 3. There were also some out of uniform when I attended, 2 or 3 or 4. I knew their faces. The judge seemed to favor the prosecution.

I had seen Anthony shortly before the incident, at church. He was acting normally. I did not see any indication anything was out of the ordinary. I never knew Anthony to use drugs. Anthony was taking Ritalin. It seemed OK since Anthony was doing well in school on it.

I don't think the defense attorneys were sufficiently on the offensive. It did not look like they were giving it their all. They really did not get down to defending Anthony. While

When I first ~~lear~~ that Anthony was involved in a criminal act, I could not believe it because that was not his character. I learned of the offense from the newspaper and television news report. ~~I knew Anthony had done the crime,~~ I did not think the punishment was appropriate, as it was his first time in trouble with the law.

Anthony's defense attorneys and investigators never talked to me. Donald Haynes had a list of people to whom the defense attorneys started to talk, and I was on that list. However, they never contacted me, and I was surprised at this. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _8/9/05_, 2005 in _Houston_, Texas.


_Earl Washington Sr._
EARL WASHINGTON Sr.

TAB 37

## DECLARATION OF BONITA DENYSE THIERRY

My name is Bonita Denyse Thierry and I am over the age of eighteen and competent to give this declaration. My address is 405 Main Street, Ste. 300, Houston, Texas 71002. My phone number is 713-223-0400 (-0434 for FAX). I am an attorney in solo practice and also work for the NAACP.

I was a sorority sister with Anthony's mother Patrika. We were instantly friends. I have known her since 1996.

Anthony is a great kid. He was well behaved and I never saw him acting out. He never got into fights. I never had the impression he was violent, and this was my feeling at the time of his trial. Therefore, I would have told the jury that I thought his potential risk for committing future dangerous or violent acts was very low.

Anthony was interested in joining the Navy and when he was back east in Rhode Island at the training program, he would send souvenirs. I can't believe that he is on death row. I still have his picture hanging on my wall.

Anthony's defense attorneys and investigators never contacted me. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _September 11_, 2005 in _Houston_, Texas.


_Bonita Denyse Thierry_
BONITA DENYSE THIERRY

TAB 3B

## DECLARATION OF LEON TOUSANT

My name is Leon Tousant. I am over the age of eighteen and am competent to make this declaration. My address is 1916 Woodland Hills Drive, Missouri City, Texas 77489. My phone number is 281-499-3662. I am a substitute teacher for the Fort Bend Independent School District on a as-needed basis.

Anthony and I had a friendship in high school. It centered around football and we were both on the Dulles High School team. I played running back as did Anthony. I first met Anthony in the tenth grade.

Anthony was not a violent kid. He enjoyed being in ROTC and had his eye on a military career. In his earlier grades, he did well in school. I never knew him to be a trouble-maker. He was not a quitter, but instead was a hard worker. Anthony would always try to do the best he could. He was very sociable and got along with people. Anthony was usually neat and clean and correct.

Anthony only got into one fight that I knew about, but it was not serious. Someone was messing with him and Anthony did not start it. All in all, Anthony was a pretty straight-laced guy. In my presence, he had respect for others, was kind, and didn't have an attitude.

When I heard about this, I was shocked. I never thought something like this could happen to him. After it happened, we did not have contact.

I was not contacted by Anthony's defense attorneys or investigators. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on __October 2__, 2005 in __Missouri City__, Texas.

_Leon Toussant_
LEON TOUSANT

signed, with express permission, by
A. Richard Ellis
on 10/2/05, mill Valley, CA
_A. Richard Ellis_

TAB 39

## DECLARATION OF BARBARA TAVERAS

My name is Barbara Taveras. I am over the age of eighteen and am competent to make this declaration. My address is 1835 Grand Park, Missouri City, Texas 77489. My phone number is 281-208-1334. I work for UPS.

I knew Anthony at Dulles High School. I first met him in the seventh or eighth grade, and also knew him outside of school. We were in ROTC together. Col. Davis was the highest ranking officer in that program, and he was tough. Although he was higher ranking than Sgt. Harris, Sgt. Harris was more in touch with the kids. Although Col. Davis would sometimes instruct, often he was not there, and Harris ran the program more than Davis.

Anthony was into his school work and he was interested in a military career, and he tried hard in ROTC. A certain number of the kids were offered a chance to attend boot camp and Anthony was one of them. This was summer camp in San Antonio, Texas and Anthony attended this.

Anthony was respectful of his parents. I did not see him getting into fights and never saw any hostility in him. I never saw him use drugs. Anthony would hang around outside school. He would do his homework and chores. Most of our friends had single parents who were strict disciplinarians.

I couldn't believe it when we heard the news of Anthony's arrest. I followed the crime and visited Anthony in jail.

I was not contacted by Anthony's defense attorneys or investigators. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on ___October 2___, 2005 in __Missouri City__ Texas.

_Barbara Taveras_
BARBARA TAVERAS

Signed with Express permission
by R Richard Ellis
10/2/05
Mill Valley, CA 94941
_R. neal ellis_

## DECLARATION OF RON ROYAL

TAB 40

# DECLARATION OF RON ROYAL

My name is Ron Royal. I am over the age of eighteen and competent to make this declaration. My address is 2430 Ridgemont Drive, Missouri City, Texas 77489. My phone number is 832-654-5315. My occupation is a customer service representative for Vertrue Corporation.

I knew Anthony Haynes at Dulles High School. I met him in freshman year. I was on the football team with him. I played outside line-back. We hung around a lot. Anthony was laid back and he liked to chill out. Anthony wanted a career in the military and was interested in football. He would generally like to keep busy, with ROTC and sports. I did not know Anthony's family.

I had a couple of classes with Anthony. He got along well with the teachers, and he was a little shy. He took pride in his ROTC and said that if he didn't get a military scholarship, he would still go into the military. My opinion is that he went into the ROTC program so that he could be like his dad.

I heard out about Anthony's arrest when a mutual friend called. I was shocked. This was totally out of character for Anthony. I had never known Anthony to get into fights, he was just not the kind of person to get into altercations. Anthony was very laid back and he knew when to be calm.

At the time of his trial, my opinion was that Anthony was not and is not now a high risk of committing future dangerous acts or acts of violence. I would say he was a Anthony wanted to fit in and be around his friends. He was well-liked. He never did anything to anybody. He always spoke well of his father.

I was not contacted by Anthony's defense attorneys or investigators. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _the month of August_ 2005 in _Houston_ , Texas.

_Ron Royal_
RON ROYAL

TAB 41

## DECLARATION OF DEBRA ELAINE HAYNES

My name is Debra Elaine Haynes.  I am over the age of eighteen and am capable of making this declaration. I am Anthony Haynes's aunt, married to his uncle Eric Haynes. My address is 11803 Dellfern Court, Houston, Texas 77035. My phone number is 713-721-6885. My occupation is an early childhood teacher at JCC Bertha Alyce.

I have known Anthony since he was a little boy. He was a good boy, obedient and he did not cause problems and was well behaved. Anthony was interested in football, basketball and ROTC, as well as church activities. Anthony was not violent. It was a real shock when he was arrested, because the crime was so out of character for him.  I had a hard time believing that he had done this.  It was a real shock to the entire family.

I never talked to Anthony's trial attorneys and they never called me.  I would have been willing to be a witness at Anthony's trial.  At the time of his trial, I thought Anthony was a low risk of committing future dangerous acts and would have told this to the jury if I had been a witness. If Anthony's attorneys had talked to me, I would have told them this and the other things I have stated in this declaration.

This act was very out of character for Anthony, and I believe now as I did then that there is a very low risk of his ever committing an act like this again. Anthony had never been in trouble before he was arrested for this crime.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _____, 2005 in _____, Texas.


_Debra E. Haynes_
DEBRA ELAINE HAYNES

TAB 42

## DECLARATION OF RICHARD HAYNES

My name is Richard Haynes. I am over the age of eighteen and am competent to make this declaration. My address is 5303 Newkirk Lane, Houston, Texas 77021. My phone number is 832-239-0291. I am a surgical technologist at prime Staff Surgical Services.

I am Donald Haynes's brother and Anthony Haynes's uncle. I have known Anthony ever since he was born. I have lived in Houston all my life except for four years of military service. I was in the U.S. Air Force, and my father had also been in the military. For me, it was a good way to obtain an education and skills.

When Anthony was born I was in the military. We did a lot together when Anthony was between four and ten years old. I knew Patrika also. Anthony was very intelligent and had a strong religious background. Anthony would travel with his mother and this broadened his social skills. We would attend soccer games together and for awhile I had a lot of contact with Anthony. Sometimes he was withdrawn, but he was not violent. During his teenage years he would sometimes not want to go to family functions, but he was normally very well behaved. He would do a lot of night fishing in Galveston. I never knew him to use drugs. And this did not come to my attention until his arrest.

I approved his orientation toward a military career and he program he was in, BOOST, would have put him in line for a military scholarship.

When I heard Anthony had been arrested, I was shocked. Donald told us about it. I do not believe that he has a propensity toward violence and I did not believe he did at the time of his trial. I never talked to Anthony's two trial attorneys, but I met them once, at the first day of the trial.

I sat through the trial and only missed one or two days. I did not think Anthony's character was presented to the jury. Mr. Nunnery was stifled by the judge and one time the judge told him to sit down and shut up. There were a lot of police officers in uniform with weapons at the trial. At least eight were there every day, surrounding the victim's widow. Other officers were standing along the wall.

I was surprised there were not more witnesses at the penalty phase. The jury never received an adequate picture of Anthony's character. I volunteered to be a character witness for Anthony, but the attorneys said they had certain people they would use. They said they were going to do a brief character presentation.

There is a history of off-duty officers acting as if they are on-duty in Houston.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on ___9/8/05___, 2005 in ___Houston___, Texas.


_____
RICHARD HAYNES

TAB 43

## DECLARATION OF SHARON DAVIS McELROY

My name is Sharon Davis McElroy. I am over the age of eighteen and am competent to make this declaration. I live at 6422 Nunn, Houston, Texas 77087. My phone number is 713-640-2089. I am a federal investigator for the EEOC (Equal Employment Opportunity Commission), and have been such since 1985.

I have known Anthony since he was a baby. I knew Anthony's father Donald Haynes at college, at the University of Houston, through the fraternity and sorority system.

As Anthony grew up, I kept in contact with him. I would see him occasionally. My daughter is Anthony's age and we would meet eight to ten times per year. Anthony was very quiet and obedient. Donald was very strict with Anthony and had him under a lot of restrictions. Donald had a lot of rules and he was very strict with Anthony and kept him under a lot of restrictions. I never saw Anthony talk back, and he was very obedient. He was never violent or out of control.

When I heard he had been arrested for murder, it was a real shock for me. At first, I thought it was someone with the same name. Later, I still could not believe it was the same person.

I had contact with Anthony until about one year before he was arrested. I never saw him use drugs or even suspected that he might be using them. Anthony was a nice kid, not the usual self-centered only child. My daughter enjoyed hanging around with him. I was stunned when I heard about the crime because Anthony did not seem violent to me.

Anthony's attorneys never talked to me. Mr. Jones, one of Anthony's attorneys, had been one of my instructors at the University. I had some reservations about his representation. I never heard about the other kids involved in this and was concerned that they were having their charges reduced in return for testifying against Anthony. I also had reservations about Mr. Jones handling the defense.

I tried to keep up with the defense but I did not know their strategy. I was not contacted by Anthony's defense attorneys or investigators. If I had been contacted by them, I would have told them what I have said in this declaration. If they had asked me to be a witness on behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _September 2_, 2005 in _Houston_, Texas.

_Sharon Davis McElroy_
SHARON DAVIS McELROY

**Sharon McElroy**

Federal Investigator
EEOC
1919 Smith
Houston, Texas 77002
(713) 209-3440
Fax: (713) 209-3381

August 24, 2005

To Whom it May Concern:

My name is Sharon Davis McElroy. I am a Federal Investigator with the Equal Employment
Opportunity Commission. I have been employed in Federal Service for 27 years. I am 53 years old,
divorced with a 22 year old daughter and a 1 ½ year old granddaughter.

I came to know Anthony Haynes through my long friendship with his father, Donald. Donald and I were
college classmates and friends. We both attended the University of Houston and became close friends
through our sorority and fraternity. Don and I remained friends after college and stayed in close contact
with each other. I always admired the fact that Donald was a single father and that he was very
involved in Anthony's life. Don was strict on his son and as a result, I never knew Anthony to be
involved in any delinquent activity. Don often scolded me for being a little lenient with my own child.

When I heard that Anthony had been accused of this incident, I was shocked. The entire week, I though
it was just someone with the same name. I only realized that it was in fact "our" Anthony Haynes, when
I saw him on television. During the trial, I never believed that he would be convicted. The story just
didn't make sense. Something seemed to be missing from the whole chain of events. Needless to say, I
was devastated to learn that he had in fact been convicted and sentenced to death. I know that a life was
lost and I feel badly for the officer and his family. I had hoped and prayed that the court would be
merciful, given Anthony's background and the fact that he had never been in trouble before. I hoped
that Anthony's lawyers had presented the best case possible, but I out of respect for Donald, I did not ask
if he was satisfied with the defense. I was not called to speak up for Anthony and his family for
whatever reason. If called, I can assure you that I would have. I hope this information will be of help in
Anthony's appeal. I am available for interview if needed.

Sincerely,

Sharon McElroy

TAB 44

TAB 45

# DECLARATION OF ~~SHEILA~~ WATERS

My name is ~~Sheila~~ Waters. I am over the age of 18 and competent to give this declaration. My residence is at 16335 Quail Hunt, Missouri City, Texas 77489.

I am friends with Donald Haynes, Anthony Haynes' father and have known Anthony for 8 or 9 years. I first met him in 1996 or 1997. He was a junior at Dulles High School. He seemed well raised to me, and he got along well with his father. Donald took Anthony to bible classes on Wednesdays and to church on Sundays. I would also attend that church.

I never met Anthony's friends. When I was at Donald's house, I would mostly sit around and play Scrabble. I went to a play with Anthony once. I did not feel that Anthony's father was too strict, and Donald told me he was trying to do what was right for Anthony. Anthony said he loved his dad.

I was not aware of Anthony's drug use. Donald and I were dating for awhile, and when I was at Donald's house, Anthony was almost always there. At that time, Anthony went to his mother's house on the weekends.

Anthony told me his goal was to go into the armed services. Mostly, when I came into contact with him, he would be clowning around and playing board games. Anthony had chores to perform and Donald was a strict disciplinarian. Donald was strict about how Anthony would dress, and he would not let Anthony dress like a gangster. Anthony had a curfew and I know he adhered to it. Anthony and his father seemed to get along well.

After Anthony entered the BOOST program, I did not see him. When I heard about what he was charged with, I was shocked. It was such a shock because I did not think that Anthony was a violent person and I thought he would be one of the least likely to commit an act like this. This is also my opinion now, that he is essentially not a person prone to violence.

The defense attorneys for Anthony never talked to me. If they had, I would have told them what I have said in this declaration. If they had asked, I would have been willing to be a witness at Anthony's trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _July 23_____, 2005 in _Missouri City_, Texas.

TAB 46

## Declaration of Socorro Herda

1. My name is Socorro Herda. My address is 1250 Lincoln Road #209, Miami Beach, Florida, 33139. I am 25 years old.

2. I first met Anthony Haynes in 1997 when I attended the BOOST Program in Newport Rhode Island. BOOST stands for "Broadened Opportunity for Officer Selection and Training." It is a program for students who are excellent candidates for ROTC scholarships. Successful completion of the BOOST program guaranteed a student a full Navy ROTC scholarship at any university that offered the program (granted, acceptance from the university admissions was received). BOOST primarily enabled prior enlisted personnel to bolster their academic qualifications before entering a university environment. This program also enabled a limited number of civilians who had shown an aptitude or interest in a military career the opportunity to pursue a ROTC scholarship as well. The program in Newport, Rhode Island involved students who were aimed at careers in the Navy and the Marine Corps. The program lasted ten months, from August 1997 to May 1998.

3. I grew up in San Luis Obispo, California and St. George, Utah, but enlisted in the U.S. Navy and departed directly to the BOOST program from Seattle. I arrived a couple days late to the program, and the other students were already there. This was in 1997. The first weeks of the BOOST program involved only the entering civilian students who were title "Track II's." These initial weeks involved demanding physical training, somewhat like a boot camp program. Focus during this time was indoctrinating these civilians; who were without any prior fleet experience, standard military and Navy protocol, courtesies, traditions, etc. After these first two weeks, the "Track I's" arrived who were the prior enlisted personnel. After an additional week of indoctrination into the BOOST program for the entire class, academics commenced. Academics took priority and the program was rigorous.

4. Anthony and I were both "Track II" enrollees, of a group of 27 other students who had come directly from high school. Because we were such a small population and had spent a couple weeks together in such intense training most "Track II's" bonded quickly. Soon after I had arrived, Anthony sent me a note and we quickly became friends. Once the "Track I's" arrived, numbering close to 300 enrollees, the "Track II's" were dispersed among them. Anthony was one of just a handful of "Track II's" that resided in the company adjacent to mine which was another reason we became such good friends. I would have daily contact with him over the course of the program, until he left it early, sometime in 1998.

5. It is hard to judge a person in a military environment, where much of daily life is routine and regulated. BOOST was initially like this, especially at the beginning of the program. But once classes started and the discipline became more relaxed, I could get a much better sense of Anthony Haynes as a person. I trusted him immediately.

6. I still think he is one of the most sincere and honest people I have ever known. Anthony did tell me about things he had dome in Houston, such as joyriding, and using marijuana, but he seemed determined to change his life around. Anthony became one of the few people I considered a real friend, and still do. Although we did not date or go out, we were so close that other students would kid me that he was my boyfriend.

7. Toward the end of his attendance at BOOST, Anthony seemed to undergo a change in personality. He became fervently involved in a church group and I recall him chiding me on my lifestyle, that it was wrong to go to clubs and being around drinkers. I didn't appreciate his advice, and I let it affect our friendship. He threw out his rap CDs and said he was going to change his life. I expressed to him my concern that it was a little extreme to have such a big change so fast.

8. Anthony had to leave the BOOST program because of grades, and after that I did not have contact with him. After he left, someone from the program showed me an article from the internet about Anthony killing someone. I could not believe it and thought it was a cruel joke.

9. Anthony was not a violent person, and this crime was not in character for him. He was not aggressive with other people. Once he got into a fracas at a nightclub, in which he was defending himself, but I never saw him resorting to violence. I still cannot see him resorting to violence. Anthony is very verbal and strong-willed and will not hesitate to tell you if he doesn't agree with you that people have tended to misconstrue his body language and even manner of speech as aggressive. I do not know him as a violent man.

10. I was not aware of the trial. I could have been contacted by Anthony's attorneys, but no one ever contacted me. If they had, I would have told them what I have stated in this declaration and I would have been willing to be a witness for Anthony at the trial.

11. As I have stated here, I believe Anthony would be a very low risk of committing future violent or dangerous acts, and I would have told that to his jury if I had been given the opportunity. My opinion is that the risk of Anthony's repeating such an act is extremely low, based on my knowledge of him.

12. Had the defense attorneys or investigators talked to me in detail, I would have told them what I have said here in this declaration. I would have been willing to be a witness, but I was never called upon to do so by the attorneys or investigators for Anthony at the time of his trial.

13. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on   July 17,

2005 in Miami Beach, Florida

SOCORRO HERDA

TAB 47

August 24, 2005


Attorney Richard Ellis

Re:  Anthony Haynes


Dear Mr. Ellis,

My name is Renee Lewis and I am a long time friend of both Donald Haynes and his son
Anthony Haynes and am writing to you today on their behalf.  First of all my address is
11543 Sagecreek Dr., Houston, Texas 77089.  My home phone number is 281-484-2380.
I am employed at Kinder Morgan, Inc. in Houston, Texas for 20 years as an Account
Representative.

For approximately 25 years I have been friends with Donald Haynes and I have known
Anthony Haynes since about the age of 8 or 9 months old.  I have to say to you that I was
completely shocked to learn of this tragic event involving Anthony Haynes because,
given the type of kid Anthony is, this behavior does not fit with his personality.
Anthony's character and disposition has always been one of politeness, as well as very
smart and bright.  This incident is totally uncharacteristic of Anthony's demeanor.

After following the case, I was shocked to see that Anthony was given the death penalty
instead of a second chance.  Our society seems to be very unforgiving and has come to a
place of not yielding second chances to young adults.  Yet we release child molesters and
rapists back into society and allow numerous chances at rehabilitation, while first time
child offenders are alienated from society permanently.  There is something very wrong
with our justice system.

I was not notified by Anthony's prior attorneys, but if I had been called I would have
been able to be a character witness for Anthony.  My feelings are that Anthony will not
be a threat to society if given the chance at a release.  Anthony was so young and
obviously got caught up in a one time situation that does not warrant the taking of his life.
Two wrongs will not right this situation.  Anthony is a good person and I am sure that
rehabilitation is a possibility for Anthony if given the chance.

Sincerely,

Renee Lewis
A Friend

TAB 48

## Declaration of Renita Royal

My name is Renita Royal and my date of birth is August 18, 1955 and I reside at 19746 Plantation Road Trial Katy, TX. 77449 and my phone number is 281-685-6248.
*Grove Trail*

1. I have known Anthony Haynes since he was about four years old, and Anthony always had a very joyful spirit, and was very arstistic.

2. I sat in during opening arguments and I attended two days of the trial, and on each day I observed six to eight police uniforms with black tape on their badges.

3. Anthony was a very typical young man that was very respectul, and I am not aware of any abuse.

4. Anthony did not appear to be very close to his biological mother.

5. I was not asked to testify and if I had I would have clearly stated that Anthony would not have been a future danger to society.

6. It appeared that Anthony was judged before he ever went to trial.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was execution on *August 3,* ,2005 in *Houston* ,TX.

Renita Royal

TAB 49

## Declaration of Yolando Gaines

NAME:                           Yolando Gaines              DOB: 3-3-61
ADDRESS:                        10706 Chimney Rock Rd., Houston, Tx 77096
PHONE:                          Home: 713-721-5945  Cell: 832-771-1288
RELATIONSHIP TO ANTHONY:   Best friend of Anthony's mother.

I knew Anthony growing up. I am a family friend. Defense never talked to me. I would have spoken to them and would have testified. I have known Anthony all his life. I met Patrica in 1981 when Anthony was 2 years old. He was bright, intelligent, good manners, respected authority. He was how she wanted her child to act in front of her. He was energetic. Made eye contact. He had no behavioral problems. I saw him several times a week. In high school he seemed more mature. He had spiritual values. He was never angry or belligerent. I was devastated when I heard the news of the murder. I cried and thought it couldn't have happened. It was hard to believe they were talking about Anthony. I thought they had to have the wrong person. My niece would have told me if Anthony was on drugs. I last saw Anthony about a month or two after he got home from military school. He went out with my niece for 1 ½ hrs. There was no sign of concern for him. He never drank alcohol around me. I recognized he had ADHD, he was very hyper. I didn't notice any mood swings and he never seemed depressed. I wasn't present at the trial. My niece last saw Anthony in March or April. He had a passion for the military. He was disciplined.

I declare under the penalty of pergury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on _July 5_ ,2005 in _Houston_ ,TX.

Yolando Gaines