# United States District Court
# Southern District of Texas

## Case Number: ___H-05-3424___

## ATTACHMENT

Description:

☐ State Court Record          ☐ State Court Record Continued

☐ Administrative Record

☐ Document continued - Part __5__ of _____

☐ Exhibit to: ___Vol III   Exhs. 50,51,52,53,54,55,56___
number(s) / letter(s) ___57,58,59,60,61,62,63___
___64,65,66___

Other: ___Petition For Writ of___

___Habeas Corpus___

___— Exhibits in Support of___
___Petition___

TAB 50

### Declaration of Debbie Lucas Moerbe

1.    My name is Debbie Lucas Moerbe. My address is 15414 Flemington Ave., Houston, TX 77084. My date of birth is 12-9-1958 and I am 46 years old. I am currently a full-time student at Cy-Fair College, and I have a daughter named Ladera Lucas.

2.    I first met the Haynes family about 2 days after I moved in and Patrika, Anthony's mother, came by and introduced herself. We became friends as she lived about 4 houses away from mine. This was in January of 1992. I have known both Anthony and his mother since then, right up to the time of the incident for which he received the death penalty.

3.    At the time we met, my daughter was 12 years old, a little younger than Anthony, and they became friends. I would see Anthony every day when he lived with his mother, and when he lived with his father in Missouri City, I would typically see him on weekends.

4.    I liked Anthony from the minute I met him. Anthony is honest and open, and he has never lied or tried to deceive me. He talked to me all the time.

5.    As she grew older, at age 16 or 17, my daughter became rebellious. Anthony was a mediator between us. He would talk to her and then try to reassure me that she would turn out fine. Anthony was a voice of reason to her and he acted very maturely for his age.

6.    Once, I was confronted with a snake in my house, and became hysterical. Anthony came over and killed the snake for me. He was a person you could rely upon and who would do anything you asked of him.

7.    I trusted Anthony completely. I would let him take my car. He was often in my house

-1-

at night. Even when he was living with his father, he would stop by or say hello if I saw him in the neighborhood.

8.      I remember Anthony talking about the Naval Academy, which he was eager to attend. He also did volunteer work at a local hospital. It looked like he was an orderly, as he wore white clothes. He took this hospital volunteer work very seriously.

9.      Anthony would also do spur-of-the-moment good deeds. Once I took in a Rottweiler dog to help a homeless person. The dog needed veterinarian attention, and it was too expensive, so Anthony helped me take the dog over to a Rottweiler dog rescue organization in Missouri City who were able to have the work done more inexpensively.

10.     When Anthony's mother married a man named Courtney Davis, Anthony accepted him and they became close. They had a good relationship. Anthony never had a disagreement with Courtney Davis. The step-father- child relationship was very good, better than a subsequent relationship with my daughter and husband.

11.     Courtney Davis had two children: the boy's name was Courtney Jr. and the girl was named Christie. Anthony also had a good relationship with them. Courtney was about four years younger than Anthony and Christie was about eight years younger than him. Anthony would take care of them. Courtney and Patrika had a child together whose name was Ally, and Anthony baby-sat her.

12.     My daughter did know Timothy Reese. He was very untrustworthy and basically a bad seed. My daughter told me he broke windows and he was known to have taken guns to

-2-

parties. Mr. Reese's reputation in the neighborhood was very bad.

13.     I was in contact with Anthony right before this incident occurred. He had returned from the Naval Academy training program. At first, he acted as if it was not a big thing, and then he said he would try again and not all was lost.

14.     When I heard of the incident of the shooting of the police officer, I was very distraught. I could not believe Anthony had done it. It was as if I had lost a loved one. I told people it was out of character and not something that he would have been likely to do.

15.     Before the trial, someone called me on the phone and we spoke for about 15 minutes. I think it must have been a defense investigator, as it was not the prosecution. They merely wanted to know my opinion on some things, but nothing concrete was asked. I told them I wanted to be a witness for Anthony.

16.     I attended part of the trial, and was present at most of the guilt/innocence phase. The day the verdict was read, I remember that there was many uniformed police officers in the courtroom, somewhere between 12 and 25. The other days, they were also there, but not as many. At the trial, the defense attorneys did not speak to me or attempt to interview me.

17.     Based on what I know about Anthony, he would be a very low risk of committing future violent or dangerous acts. I don't think he would be a high risk of abusing drugs and in his normal state of mind he would not have considered doing these acts or any acts of violence. His risk of repeating such an act is extremely low, based on my knowledge of him. I have never seen anything that resembled anger or violence from him.

18.    Had the defense attorneys or investigators talked to me in detail, I would have told them what I have said here in this declaration.  I was willing to be a witness, and had even told the person I talked to that I wanted  to be one, but I was never called upon to do so by the attorneys or investigators for Anthony at the time of his trial.

19.    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on *June 15*, 2005 in *Houston, Harris County*, Texas.


DEBBY LUCAS MOERBE

TAB 51

## Declaration of Lawrence Aaron Tate

NAME:                             Lawrence Aaron Tate        DOB:10-3-78
ADDRESS:                    7730 Chaseview Drive, Missouri City, TX 77489
PHONE:                       Home: 281-835-3913  Cell: 832-338-6596
RELATIONSHIP TO ANTHONY:  High school friend

Anthony and I were friends in ROTC and ran track together. I am now a preacher. No one from the defense contacted me. I would have testified. I first met Anthony in the 10th grade. Anthony was a leader in ROTC. He wanted to go to the Air Force Academy. Anthony was vocal and outgoing. They called him "Sunshine." He was very popular. Anthony had a disagreement with Col. Davis. He never saw any explosiveness, never saw him angry. I introduced him to his girlfriend. We did community service together at the VA hospital. We would feed, bath the patients. We went out once a month. We collected food and clothing. Anthony worked closely with the school administration. We had fun with community service. ROTC was a cohesive group. Anthony always got along with people. The girls called him pretty boy. It was rumored Anthony used pot, but nothing else. He drank alcohol but didn't have a problem. I haven't seen Anthony since graduation. I heard Anthony went to military school. Anthony called me and told me he was back in town. I remember Anthony as always happy, always smiling. He liked to joke. He was nice and popular. I never noticed any mood swings. Hyperactivity would fit. He made good grades. I never noticed Anthony being paranoid. That would have been unusual. No one in ROTC was asked to testify. My date and I sat with Anthony and LaToya at the ROTC ball. I knew about Anthony's dad but there was no abuse. I was totally shocked when he heard about the murder. At no time did I ever think that Anthony would be a future danger to society.


I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on _8/10/_____,2005 in _Houston_____, TX.


_L. Aaron Tate_

Lawrene Arron Tate


Change of Address: 2602 Lakeside Village
Missouri City Tx. 77459
Home 832-230-5128

THB52

## DECLARATION OF RYAN BRAUD

My name is Ryan Braud. I am 25 years old. My residence is at 2048 Hickory Glen, Missouri City, Texas 77489. My occupation is an artist.

I knew Anthony at Missouri City Middle School and at Dulles High School. We played football together and were good friends. Anthony was one of my best friends. Anthony was very outgoing, when he was comfortable. Generally, he was laid-back and not aggressive. Anthony was picked on a lot, by his peers and by adults, because he was light-skinned. He could be intimidated by people, and often I had to reassure him. I knew that he was into drugs.

Anthony was really into the ROTC. Col. Davis, who ran the program, did not give him a promotion. He later attended the BOOST program and something happened to Anthony when he was away at that program. He may have gone into the program as a way of not having to deal with his dad's strict discipline. Anthony was a good kid, and was interested in a lot of things such as football.

When he got back from the BOOST program, when he was trying to get into the Naval Academy, he called me.

The day after the shooting of the policeman, he came to my house. Anthony said, "Ryan, I need to talk to you." He was acting fidgety, and was agitated more than normal. He had been staying at motels he said. There was some marijuana on the table that was his. Anthony was very nervous that day. He said he had been without sleep for a long time and had not been to his mother's house. I could tell that something was not right. But we never got a chance to talk about it because my brother, who was from out of town, and I were going somewhere.

Anthony was never violent and I was surprised when I found out he was charged with the killing of a policeman. I do not think he is likely to be violent in the future.

I did not attend the trial. The defense attorneys or investigators never talked to me. If they had, I would have told them what is in this affidavit. If they had asked me to be a witness for Anthony at his trial, I would have been willing to do that.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on *Aug. 5*, 2005 in *Houston*, Texas.


*Ryan Braud*
RYAN BRAUD

TAB 53

## DECLARATION OF CHERRIE McGLORY

My name is Cherrie McGlory. My date of birth is January 12, 1954. I live at 5715 Mason Oaks, Houston, Texas 77085. I work for the Baylor College of Medicine as a program administrator for the graduate school.

I came to know Anthony through his father Donald Haynes. I knew Anthony for 19 years, since he was small. I got to know him through church attendance with his father, at the New Faith Baptist Church. Anthony attended regularly with his father.

Anthony was a well-mannered and polite kid. He was always very respectful, and a good student, never in trouble. I did not have a lot of contact with him when he was in high school, but saw him periodically over the years. My son, Cory McGlory, is a year older than Anthony. I was not aware of Anthony's friends or any drug use on his part. I knew he wanted to go into the navy.

The last time I saw Anthony was shortly before he graduated from high school. I was shocked when I heard about the incident regarding the killing of the policeman.

Anthony is not a high risk for committing future acts of violence. I think he just got caught up in a situation. I would never have seen him as a person who would have been involved in a criminal act, because of how he was raised. He is not a high risk of future acts of violence at all. This was my opinion at the time of the trial and it is my opinion now.

I did not attend Anthony's trial. I was never talked to by the defense attorneys or investigators. If they had contacted me, I would have told them what is in this declaration. If they had asked me to be a witness for Anthony at his trial, I would have been willing to be one.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _July 11_, 2005 in _Houston_, Texas.

_Cherrie Mc Glory_
CHERRIE McGLORY

TAB 54

## DECLARATION OF IVORY JACKSON

My name is Ivory Jackson and I am over the eighteen years old and competent to make this declaration. My address is 1507 Arrowhead Dr. Patego, TX. 76013 and my telephone number is 817-801-6996. I am currently retired.

I have known Anthony Haynes all of his life. He is my great-nephew. I lived in New York until approximately four years ago, however I made weekend trips to Texas to visit my family.

Anthony was always a very well mannered person and very respectful. Anthony had a good support system through his entire family and was well liked by all. I never saw Anthony upset as a matter of fact he was always smiling.

When I heard about this tragic incident I was in shock as it was totally out of character for Anthony. I was never contacted by Anthony's attorneys or investigators. At the time of his trial, my opinion was that Anthony was not and is not now a high risk of comitting future dangerous acts or acts of violence. If I had been contacted by anyone regarding this matter I would have been willing to testify, and would have told the jury what I have stated in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and this declaration was executed on _09/07_ . 2005 in _PANTEGO_ , Texas. _76013_

_Ivory Jackson_  9/07/05
_____
IVORY JACKSON

TAB 55

# DECLARATION OF MELVIN BROCK

My name is Melvin Brock and I am over the age of eighteen and competent to make this declaration. My address is 2440 Lynwood Dr. Beaumont, TX. 77703 and my telephone number is 409-838-6647. I work in the oil refineries.

I have known Anthony Haynes since his birth. Anthony is a fine young man with no problems Although I did not live near the Haynes family I was a good friend of Donald Haynes and saw the Haynes family several times a year. Anthony was a very polite, well adjusted young man.

When I heard about this tragic incident I was in shock as it was totally out of character for Anthony. I was never contacted by Anthony's attorneys or investigators. At the time of his trial, my opinion was that Anthony was not and is not now a high risk of comitting future dangerous acts or acts of violence. If I had been contacted by anyone regarding this matter I would have been willing to testify, and would have told the jury what I have stated in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and this declaration was executed on *September 8* . 2005 in _____*Beaumont*_____ , Texas.


*Melvin Brock*
MELVIN BROCK

TAB 56

## DECLARATION OF PORTIA ROSE

My name is Portia Rose. I am over the age of 18 and am capable of making this declaration. My residence is at 3158 LaQuinta Drive, Missouri City, Texas 77459. I am currently employed as an attorney for the Internal Revenue Service.

I have a son a year younger than Anthony. I was friends with Anthony's father Donald Haynes. We were at the University of Houston together. I was a freshman and he was a senior. We also lived in the same neighborhood, and would do things together. Donald and I would coach our son's teams.

I got to know Anthony through sports activities and when Don was at my house. Don was a good parent. Anthony was a pretty good kid. Don was a strict disciplinarian, and Anthony was respectful. Don took Anthony to church. Anthony was also in ROTC in high school. Don had modified his life to make it conducive to raising his son. Anthony seemed like a good student, and I never knew that he used drugs. I did not know Anthony's friends.

The last time I saw Anthony was when a friend had a Christmas party and Don picked Anthony up at the airport. Anthony told us about the BOOST program he was in. He spoke well about the program and he was animated.

I heard about the incident in which Anthony was accused of killing a policeman when my son was watching television and he said that Anthony killed someone. It showed his mother Pat's house. I was shocked because Anthony did not seem to be a violent person. This was my belief at the time of Anthony's trial and it is still my belief today.

Anthony's defense attorneys never talked to me at the time of his trial. I did not attend the trial. If the defense attorneys or investigators had talked to me, I would have told them what I have said in this declaration. If they had asked, I would have been willing to be a witness for Anthony at his trial.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _9/5/05_, 2005 in _Missouri City_, Texas.


_Portia N. Rose_

TAB 57

## DECLARATION OF DARRYL SMITH

My name is Darryl Smith. I am over the age of eighteen and competent to make this declaration. My address is 1835 Wood Orchard Dr. Missouri City, TX. 77489, and my telephone number is 713-854-8943. I am currently employed as a Police Officer with the Missouri City Police Department.

I have known Anthony Haynes since he was a child. He lived in the same neighborhood, and played with my son Darryl Smith Jr. Anthony was always displayed good manners and was very polite and respectful. Anthony and my son played football together, fished and did normal activities. In my opinion Anthony was a all around good kid.

I was never contacted by Anthony's attorneys or investigators Had I been contacted I would have said exactly what I am stating in this declaration. At the time of his trial, my opinion was and still is that Anthony is not at a high risk for committing future dangerous acts, or acts of violence. Anthony was a very well liked person and well respected.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and this declaration was executed on _Sept  11_. 2005 in _Missouri City_, Texas.

_Darryl L. Smith_
DARRYL SMITH

TAB 58

**Ms. Bonita D. Padmore**
Kellogg Brown and Root
Camp Cedar II, Iraq
APO, AE 09331
281-669-2455 Houston Office Line
E-mail: Bonita.Padmore@Halliburton.Com

## Declaration of Bonita D. Padmore

My name is Ms. Bonita D. Padmore, and residing in Cedar, Iraq. My permanent residence is 9421 Kappa Drive, Houston, Texas 77051, 713-731-9612, where I resided for over 20 years. I am 40 year of African American female. I am employed with Kellogg Brown and Root and I have work oversees in Kuwait and Iraq for over 14 months. Prior to my employment at Kellogg Brown and Root, I was employed in the Public School System for 16 years including Houston ISD, Dallas ISD and Wilmer-Hutchins ISD.

I became acquainted with Anthony Haynes, when he was 8 years old, through my friendship with his father Mr. Donald Haynes. Mr. Haynes has always been a big brother to me since 1984. Anthony grew up in a loving home with his father Mr. Donald Haynes and never wanted for anything. He (Anthony) was a very mannerly person and showed much respect for me. In the year of 1991, I decided to marry Mr. George L. Padmore and Anthony was a Junior Groomsmen in my wedding. As Anthony grew older and we communicated more we begin to talk about his future plans. Anthony was an excellent student and always had Military plans for his future. When Anthony was accepted into the BOOST Military Program he was honored and excited.

When I found out that Anthony was involved in this tread incident I was devastated. It is just not in Anthony's character to commit such a crime. Today, I am still puzzled by the incident, because I know that the whole truth was not brought out in his trail. I am abreast of the news trail and more of the news coverage. I was upset with the negative way that the news Media portrayed Anthony and his family. The defense Attorney never contacted me and requested a statement or my appearance in court. I would have appeared and testified in court if I would have been asked by Anthony's Attorney. I would have gladly taken off from work on my own time to testify on Anthony's behalf.

I have read newspapers, listen to the news and there have been numerous of cases in Houston, Texas where individuals have illegally posed as Police Officer in the past. Some have even use Police Officer uniforms and false badges. I always though that off duty Police Officers had to properly identify themselves, especially when they are out of uniform and differently before making a traffic stop.

In Anthony's case it is my opinion that the off duty Officer Kincaid should had taken down Anthony's truck license plates number and reported it to the Police Department. The fact that Officer Kincaid had just come from a party where he had been drinking

alcohols beverages and was in his own personal vehicle with his wife, should have been reason enough to report to report the incident to the Police.  Since Officer Kincaid followed Anthony in his personal vehicle for five to ten minutes he (Kincaid) had plenty of time to gather his badge and personal identification in order to properly identify himself as a Police Officer.  Mr. Kincaid and his wife were the only people that know the Kincaid was and Police Officer when the incident occurred.

I believe that Anthony Haynes was trailed, convicted and sentenced unjustly.  I do not believe that Anthony would be a threat to suscity whether out or in the free world.  This is a perfect example of how the Death Penalty is unjustly Administrator in Harris County Texas.

I declare under penalty of perjury of the foregoing is true and correct to the best of my ability and that this Declaration was Administrator in Cedar, Iraq.


Bonita D. Padmore

TAB 59

## DECLARATION OF DEVLIN JACKSON

My names is Devlin Jackson. I am over the age of eighteen and competent to make this declaration. My address is 2994 Amarillo St.Beaumont, TX. 77701. I am currently employed as a Correctional Officer.

I have known Anthony Haynes all of his life. Anthony has always been very polite and well mannered. I lived with Donald Haynes and Anthony Haynes from 1984 until 1986 while I was a Correctional Officer at the Darrington Unit Rosharon, TX. Anthony at that time was approximately five years old, however I visited the family frequently and had first hand knowledge of Anthony and his character which has always been very good.

I found about the tragedy while at work. I saw a man that looked so familiar, however I was not paying that much attention to the news, and it was later that my Aunt called me and advised me that it was Donald that I had seen on television. I was shocked then as I am today, because Anthony has never displayed any type of violence.

I was never contacted by the defense attorney, nor any investigator. If I had been contacted by them, I would have told them what I have stated in this declaration. If I had been asked to be a witness of behalf of Anthony, I would have been willing to testify, and I would have told the jury what I have said here in this declaration. I would have also stated during my testimony that Anthony Haynes was not and is not now a high risk of committing future dangerous acts of violence.

I declare under the penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on September 9th, 2005 in Beaumont , Texas.


Devlin Jackson

TAB 60

## DECLARATION OF NEZDRA JOHNSON WARD

My name is Nezdra Johnson Ward and I am over the age of eighteen and competent to make this declaration. My address is 12806 Fawnway Drive Houston, TX. 77048 and my telephone number is 713-991-3300 and I am currently employed as a tax auditor.

I have known Anthony Hanyes since he was about 12 years old. Anthony associated with my son Corey Joseph. I am a friend of Anthony's father Donald Haynes and they would visit my home, or I would visit their home. Although Anthony and my son did not attend the same school they were friends and wiuld run track together. Anthony was always well behaved, and had good manners and was very respectful.

When I heard about this tragic incident I was in shock as it was totally out of character for Anthony. I was never contacted by Anthony's attorneys or investigators. At the time of his trial, my opinion was that Anthony was not and is not now a high risk of comitting future dangerous acts or acts of violence. If I had been contacted by anyone regarding this matter I would have been willing to testify, and would have told the jury what I have stated in this declaration.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and this declaration was executed on _9/13/_____. 2005 in _Houston_____, Texas.

NEZDRA JOHNSON WARD

TAB 61

## Declaration of Toya Terry

Name:          Toya Terry
Address:       5634 Willowbend, Houston, TX 77096
Phone:         Home: 713-724-2077   Cell: 713-724-2077
Relationship to Anthony:  Friend

My name is Toya Terry and I live in Houston, TX.  I graduated from Grinnell
College in Grinnell, IA in May of 2002 with a degree in General Science/Biology.  I
currently work at the Texas Heart Institute in the Department of Gene Therapy as a
Research Associate and have done so for 3 years.  I am an active member of The
Fountain of Praise Church located in southwest Houston where Rev. Remus Wright
serves as my pastor.

I have known and been friends with Anthony Haynes since 1994.  It was my
freshman year at DeBakey High School for Health Professions.  I met him through a
mutual church friend while volunteering at Southwest Memorial Hospital.  He and I both
were apart of their Medical Explorer Junior Volunteer program.  We spent many days
after school and weekends assisting the staff with various duties involving the hospital
and its patients.  It was my first experience working in a medical setting and it helped me
throughout high school and beyond.  It was a program that Anthony and I both enjoyed
very much and found to be enriching, even at such a young age.  Anthony had such a way
with many of the patients and became a favorite among many of the nurses.  It was not
long until our friendship turned into a relationship and we began to date.  We dated for
about three years but remained friends until present.

My relationship with Anthony was one of the best things to happen to me.  He
was very gentle, compassionate, and sensitive.  But at the same time strong-minded and
assertive in what he wanted.  He strove to be a good student and accomplished great
achievements in the ROTC at Dulles High School.  He loved my family, my friends, and
me and did his best to please us all.  I never felt, nor did anyone close to me, as though
Anthony was a danger or would cause harm at any point in our relationship.  He always
showed respect towards my loved ones and me.

At the time of the incident at hand, he and I were close friends, in a sense best
friends.  We shared many things with each other and came to each other for advice and
support.  Anthony at times felt like he couldn't relate with his parents, as do most
teenagers, and so many times we found comfort and solace in each other.  Neither of us
grew tired of the other and appreciated the friendship we cultivated over the years.  I state
this because it is important that I stress that I have been there for Anthony in many
stressful situations, whether it involved school, home or work.  And I was there for
Anthony during the time of the incident with officer Kincaid on May 22, 1998.  This was
one of the most distressing moments of Anthony's life and I was there to offer all the
help I could.  He contacted me by phone shortly after the incident occurred and clearly
demonstrated signs of distress, anxiety and fear.  I had never before heard such strong
feelings in Anthony's voice as I heard that night.  I spoke to him for about 3 hours that
night until the early morning.  I spoke to him again on the next day by phone and in
person at my home.  He appeared very shaken and regretful for what had occurred the

night before. I tried my best as a friend to console him but what can you really say to ease someone in such a dire situation. We both were very young and had little idea of what to do or who to go to and were both very scared. It was just two days later that Anthony was arrested and charged.

In regards to his trial, I think it was judged unfairly and his legal representation was mediocre and poor. They dropped the ball in many instances regarding his case and treated the case with apathy and neglect. I was only able to follow the case first hand a short while due to my departure to college in Iowa in August of 1998. My mother, letters from Anthony, and the media (via internet) kept me abreast thereafter. It saddened me to watch such a young man with such potential be represented in such a way. Despite my closeness with Anthony and his family, his lawyers never once contacted me. During the actual trial I was on a school break at home in Houston and could have been summoned to court. I would have willingly spoken on Anthony's behalf whether I was in school or not. My testimony along with other key people might have aided his defense and character portrayal. I did not agree with the outcome of the trial and felt many facts were not made lucid to the jury or the media. I know Anthony would not to be a threat in jail (general population) nor to society at large.

I felt that the charge and the way they depicted Anthony in the media was skewed and partial. They played him out to be a common thug with no direction and no goals, someone who was out looking to be a nuisance to society and a troublemaker. Anthony was none of these. He worked hard and cared about his family and friends and would never intentionally jeopardize his well being or those whom he was associated. The media, expectedly, ignored his positive characteristics and played completely on hearsay and opinion. I know that many people might say that their loved ones were good people and the like after the fact but I know Anthony to be an individual of good standing and he always has been. I believe Anthony's actions were a result of him feeling threatened and vulnerable. If he had factually known the details of the situation I don't believe he would have reacted in such a manner.

Ultimately, I just want Anthony to have due justice as promised to him by our country's founding principles. I don't believe he received his day in court and think that he should at least be afforded such a basic right, to be treated fairly.

I declare under the penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief and that this declaration was executed on _____September    8_____, 2005 in _____Houston_____, TX.

Toya Terry

TAB 62

### Declaration of Cleophis Lewis

1. My name is Cleoplhis Lewis and my date of birth is 12/24/1961, and I am currently employed and reside at 1313 Starlight Bay Street, Pearland, TX.

2. I met Anthony Haynes in 1988 or 1989.

3. I did not attend the trial but would have testified had I been asked by the defense.

4. Anthony lived with his father and was a very responsible young man.

5. I was the youngest single person on the block and Anthony and I used to play basketball or watch sports on televison

6. I have never known Anthony to use any kind of drugs or alcohol. There had been some rumors in the neighborhood that Anthony may have smoked pot, however I did not have first hand knowledge of this.

7. I would have also testified during Anthony's trial that I do not believe that he would have been a future threat to society.


I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on _SEPTEMBER 8_, 2005 in _HOUSTON_, Texas



Mr. Cleophis Lewis

TAB 63

## Declaration of Courtney Erwin Davis

NAME:                       Courtney Erwin Davis       DOB: 6-11-53
ADDRESS:           2727 2020 Elmside #312, Houston, Tx 77042
PHONE:               Home: 713-787-0957 Cell: 281-687-6552
RELATIONSHIP TO ANTHONY:  Stepfather

 Attorney's didn't make a case for **not** capital murder. The prosecutor talked to me after the trial. He cried and said, "I'm so sorry." He had asked them to take a plea. I was told that the victim chased them. They made out like it was a dangerous situation. They never asked if he was on duty or off duty, if he was drinking or not. The defense talked to them in groups. The investigator talked to me. They didn't ask me to testify, and I would have. Tthe defense attorney talked about black slaves and the judge told him to shut up, no more. The 1st chair defense attorney didn't show up for sentencing. The jury couldn't come up with a verdict. The judge threatened to sequester them and they came back with guilty in 10 minutes. There were jurors who walked out with tears in their eyes. The front seats were roped off for the victim's family. The room was surrounded with blue (cops). They didn't save room for Tony's family. The judge said his one regret was that the 18 years Tony had lived was not worth the victim's life. Tony's friend gave a letter between LaToya and Tony where Tony said he was "gonna get off." The defense didn't ask to read the letter before it was read in court. The defense didn't speak to the jury. Anthony was twelve when he lived with Patrica and I.. There were no problems. I wasn't his dad – but his friend. I talked with Anthony a lot. Talked about his mom and dad, girls. In 1996 he came home "on something". We talked and he calmed down. At 17 Anthony started smoking. Patrica never smelled the smoke smell on him. I knew about the boys Anthony was with the night of the murder but didn't "know" them. The cops sat in the front of my house after the trial to intimidate me and Pat for a few weeks. The officers changed, some HPD, constables, sheriff's deputies. They didn't intimidate them at the trial.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on
7/8        ,2005 in   Houston      ,TX.

*Courtney Erwin Davis*

Courtney Erwin Davis

TAB 64

## DECLARATION OF ANGELA G. MALCOLM

My name is Angela Glover Malcolm. My date of birth is July 7, 1961. My address is 2523 Lower Valley, Houston, TX 77067. I have lived at this address for 10 years. I am employed by Houston Texas Firefighters Federal Credit Union since February 1984. My current position is North Branch Manager.

I met Anthony at a very young age, when his father would bring him to the credit union. I was a Member Service Representative at the time. He was always very courteous and respectful. Through the years his father and I became good friends. He would always keep me abreast of Anthony's challenges and accomplishments.

I was shocked and very saddened to learn of the tragic incident and the events that took place during the trial. I was not in attendance during the court proceedings, but I kept up with the trial via news media and newspapers. I don't feel that Anthony was adequately represented by his attorneys. The news media's portrayal of Anthony and his family was very unfair and negative. I have always known Anthony and his family to be well respected and of good moral character. I was never contacted by the defense attorney to testify as a character witness, and I would have gladly done so.

The death sentence that Anthony received was extremely excessive for the crime that was committed. I do not believe that Anthony actually knew that Mr. Kincaid was an off duty police officer. Being that his father (Mr. Haynes) is also a Peace Officer, he respected that type of authority. I believe that Anthony acted as he did because be felt threatened by the way Kincaid approached him. Kincaid was in his personal car, wearing civilian clothes, and with a female passenger.

It is a known fact that many African American males have been unjustly given the death penalty in Harris County Texas. Because of Anthony's inadequate legal representation, the jury was not completely aware of all the facts of this case. I do not feel that Anthony Haynes would be a threat to society.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on September 18, 2005 in Houston, TX.

TAB 65

# DECLARATION OF TIOMBE DAVIS

My name is Tiombe Davis. I am 26 years old. My residence is at 4206 Blue Water Drive, Missouri City, Texas 77459.

I knew Anthony Haynes from when I started as a freshman with him at Dulles High School. I was in his grade all four years. In the ROTC, I was the commander and Anthony was the assistant commander. We were in ROTC activities after school, and we hung around together a lot, after school and on Saturdays and Sundays. There was drill team after school and color guard. Anthony also helped the instructors and on weekends there was parade practice and drills.

I went to leadership school with Anthony for one week at the end of the freshman year. It was in San Antonio.

The ROTC program at Dulles High School was actually run by Sgt. Harris and not by Col. Davis. Col. Davis was an angry old man who mainly stayed in his office or went golfing. If it was sunny, Col. Davis was usually golfing. He did yell at the cadets sometimes. Col. Davis was there mainly for the military structure, but Sgt. Harris gave most of the lectures, took roll call and told us what we had to do.

I remember an incident once when Col. Davis was teaching a class and Sgt. Harris was talking to a group of us in the office. Col. Davis came in after yelling at Anthony. Col. Davis had not liked Anthony's response to something, and said that Anthony did not have leadership skills. Anthony did go to the principal's office because of this incident, but it was not a big deal because he did not get a write-up over it. Col. Davis decided to punish Anthony by denying him permission to attend the Military Ball. Other than this incident, I never saw Anthony in trouble and never saw him blow up in class. I had never known him to be violent and I was very surprised and shocked when I learned about the crime he was accused of doing. It was not in his character to do something like that.

Anthony was quiet and would always smile. We called him "Sunshine." Anthony would always do a lot more than he had to. He would volunteer to run errands for Sgt. Harris, to get trophies, etc. Anthony would also give people a ride home often.

After Anthony returned from the BOOST program, I did not see him, and I only saw him once or twice after graduation. We did not date. When I was a freshman at Florida A and M, he wrote once and said he liked the program.

The defense attorneys or investigators never talked with me. If they had, I would have told them what I have said in this declaration. If I had been asked to be a witness at Anthony's trial, I would have been willing to do so.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on _____ _____, 2005 in _____, Texas.

X _____
Tiombe K. M. Davis

TAB 66

Declaration of Larry Britt

1. My name is Larry Britt and my date of birth is July 11, 1954. I reside at 1706 S. Medico River Circle Sugarland, TX. 77478 and my telephone number is 713-494-5490.

2. I have known Donald Haynes for approximately 20 years and Anthony since Anthony was approximately ~~10~~ years old.
    *15 years*

3. I did testify at Anthony's trial, and at no time have I ever thought that Anthony would be a further future threat to society.

4. While I testified I did observe at least 4 officers in uniform.

5, On the day of sentencing I observed approximately 20 badges with black ribbons arross the badge on uniformed officers.

6. Anthony Hanyes was always a good person that showd respect.

7. I was aware that Anthony was involved in community service and was a volunteer in his church.

I declare under the penalty of purjury that the foregoing is true and correct to the best of my knowledge and belief and that this declaration was executed on *Aug 8,* ,2005 in *Houston* , TX.


*Larry E. Britt*

Larry Britt